1  J. Kevin Snyder, SBN: 107509
   *ksnyder@dykema.com*
2  Brian H. Newman, SBN: 205373
   *bnewman@dykema.com*
3  Vivian I. Kim, SBN: 272185
   *vkim@dykema.com*
4  **DYKEMA GOSSETT LLP**
   333 South Grand Avenue
5  Suite 2100
   Los Angeles, California 90071
6  Telephone: (213) 457-1800
   Facsimile: (213) 457-1850
7
8  Attorneys for Defendants,
   ONEWEST BANK GROUP, LLC, AND ONEWEST BANK, FSB

9

**FILED**
CLERK, U.S. DISTRICT COURT
MAY 1 3 2011
CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

10            UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12                   WESTERN DIVISION

13  ANTONIO MARQUETTE, an            Case No. CV11-4115 (VBKx)
    individual; MARIA G. ANZALDO, an
14  individual; GUILLERMO ANZALDO,   **NOTICE OF REMOVAL BY**
    an individual; ARTEMO B. ROQUE,  **ONEWEST BANK GROUP LLC**
15  JR., an individual; PEDRO        **AND ONEWEST BANK, FSB**
    HERNANDEZ, an individual;
16  GABRIELA HERNANDEZ, an           **Removed from Los Angeles Superior**
    individual; JERRY HERNANDEZ, an  **Court, Case No. BC452266**
17  individual; DAT THANH NGO, an
    individual; ZAVEN ZARDARAYAN, an
18  individual; DANA HORIIA, an
    individual; KEVIN R. WESTOVER, an
19  individual; KATHERINE WESTOVER,
    an individual; ANNE SIMINUK, an
20  individual; JOSEPH FRANKOWIAK, an
    individual; RICHARD STEVENS, an
21  individual; GLENN GERARD, an
    individual; ROBERT MEDEROS, an
22  individual; SEGUNDO TACOAMAN,
    an individual; CHRISTINA HAYS, an
23  individual; ANDREW MASSINGILL,
    an individual; GEORGE MARTINEZ, an
24  individual; ZACHARY ENGLEDOW,
25
26
27
28

*(vertical left margin text)*
DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

an individual; LENIN PATINO, an
individual; YUREK SIEMIATOWSKI,
an individual; ROBERT WHITMORE,
an individual; FIONA WHITMORE, an
individual; DAVID DRAGANOVSKI,
an individual; GUADALUPE
VALENZUELA, and individual;
MARISA TAME, an individual; CSABA
KISS, an individual; HASSAN
ALAEDDINE, an individual; KEVIN
MOORE, an individual; CAROL
SEVERANCE, an individual; CARLOS
GRIFFITH, an individual; HANNAH
HEART, an individual; DENIS
HERNANDEZ, an individual; MARK
PITTSENBARGER, an individual;
DOUG RICH, an individual;
HARTSELL D. THOMAS, an
individual; JUDITH IMONTELEONE,
an individual; SH1RLISA •EDWARDS,
an individual; ALAN BURCIA, an
individual; KARA DUFFY, an
individual; ·MOISES SANCHEZ, an
individual; WILLIAM SULLIVAN, an
individual; MERY MARBUN, an
individual; VENDORA HAWKINS, an
individual; JOAQUIN HAWKINS, an
individual; STEVE BARRAZA, an
individual; CLAUDELLE FAUSTIN, an
individual; DARRYL HUNT, an
individual; GEORGE MARTINEZ, an
individual; ANTONIO TAME, an
individual; SIMON MORZIANO, an
individual; MAYRA CAZARES, an
individual; SONCERIA MORRIS, an
individual; MICHELLE MACDONALD,
an individual; MARIO JIMINEZ, an
individual; MARGARlTO PEREZ, an
individual; HUGH M. COLLINS, an
individual; CANDIDA SANTANA, an
individual; GERMAN TORRES, an

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

NOTICE OF REMOVAL

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1  individual; MAHAMALAGE
2  FERNANDO, an individual; ROSE
   JACQUES, an individual; GARY
3  RIMARCIK, an individual; EDUARDO
4  CRUZ, an individual; VICTOR LOPEZ,
   an individual; TURKER ERGUN, ian
5  individual; ERNEST MAYS, an
6  individual; MIGUEL JUAREZ, an
   individual; LELAND LYNK, an
7  individual; FILBERTO PEREZ, an
8  individual; LAURA CAMPOS, an
   individual; MARIALEVIN, an
9  individual; DAVID IOVINO, an
10 individual; ROBERT STERNER, an
   individual; ALBERT MORA, an
11 individual; SERGIO BECERRA, an
12 individual; LISA MCKAY, an
   individual; WILLIAM KILLHEFFER,
13 an individual; THOMAS JARRETT, an
14 individual; MIGNON WARREN, an
   individual; THOMAS TRIBBLE, an
15 individual; JOHNNY VILELA, an
16 individual; FAZANEH FATA, an
   individual; PABLO RESENDIZ, an
17 individual; THERON COOK, an
18 individual; JACOB HARLOW, an
   individual; GERARD OGNIBENE, an
19 individual; GREGORY CANNAN, an
20 individual; JOSE MONTES, an
   individual; AGUILAR ADOLFO, an
21 individual; GILBERTO CALDERON, an
22 ·individual; ERIC JOHNSON, an
   individual; CARL POLIZZI, an
23 individual; LOISE MUTHONI KAGIRI,
24 an individual; ANNETTE GOMEZ, an
   individual; ROSELINE D'HATI, an
25 individual; DAWN HARRIS-
26 DEPAOLO, an individual; JULIA
   ADAMS, an individual; RONALD
27 IWEAKLY. an individual; THOMAS .
28 PROUT, an individual; WALLACE

3

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1  BUTLER, an individual; AIDA
2  MCARTHUR, an individual; JULIA
   ADAMS, an individual; ANDREA
3  CHANCELLOR, an individual; JOHN
4  BOWERS, an individual; MICHELE ST
   PIERRE, an individual; JEFFREY
5  EVANS, an individual; ARCHIBALD
6  SMITH, an individual; JOSE SILVA, an
   individual; JASBINDER BRAR, an
7  individual; VIOLA HENRY, an
8  individual; PAMELA HARRJSON, an
   individual; DOMINICK COVIELLO, an
9  individual; MELBA FORD, an
10 individual; ERROL LAWRENCE, an
   individual; GEORGE HERBST an
11 individual; ROBERT HALE, an
12 individual; RONNIE TAYLOR, an
   individual; JET VILLAVICENCIO, an
13 individual; LARA POWERS, an
14 individual; FAD! AWED, an individual;
   KALUNGI ASKLA, an individual;
15 CLIFFORD GEWAKE, an individual;
16 CHERYL SILVEIRA, an individual;
   JUDITH MUSSELMAN, an individual;
17 STEVE GUZZETTA, an individual;
18 CRAIG KOROTKO, an individual;
   MONIQUE MCCLOSKEY, an
19 individual; LUIS TERRJQUEZ, an
20 individual; CARL REYNOLDS, an
   individual; KRISTEN CLASSENS, an
21 individual; SHARON SCHAEFFER, an .
22 individual; MICHAEL LINDER, an
   individual; IRMINIA FLORES, an
23 individual; JOHN GRAZLANO, an
24 individual; and others similarly situated
   named herein as ROES I through 10,000,
25 inclusive,

26         Plaintiffs,
27     vs.
28 ONEWEST BANK GROUP, LLC, a
   limited liability company; ONEWEST

4

1  BANK, FSB, a Delaware corporation,
   SCOTT VAN DELLEN, an individual
2  RICHARD KOON, an individual, NDEX
   WEST LLC, a Limited Liability
3  Company LPS DEFAULT & TITLE
   CLOSING, a business entity, form
4  unknown, PRIORITY POSTING &
   PUBLICATION and DOES 1 through
5  100, inclusive

6                    Defendants.

7

8

9        TO THE CLERK OF THE ABOVE-ENTITLED COURT AND ALL

10  PARTIES AND THEIR COUNSEL OF RECORD HEREIN:

11        PLEASE TAKE NOTICE that defendants OneWest Bank Group LLC and

12  OneWest Bank, FSB (collectively herein "OneWest") by its attorneys, Dykema

13  Gossett LLP, hereby removes the above-captioned action from the Superior Court of

14  California, County of Los Angeles, to the United States District Court for the Central

15  District of California, Western Division.  Removal is based on 28 U.S.C. §§ 1441 and

16  1331.  In support of this Notice of Removal, OneWest states as follows:

17        1.     The Plaintiffs in this action are 136 individuals who allege to have

18  borrowed money from the Defendants, including OneWest, and whose loans are

19  secured by real property pursuant to deeds of trust.   First Amended Complaint

20  ("FAC") at pp. 2-25, pp. 4-140.

21        2.     The initial complaint ("Complaint") in this case was filed on or about

22  December 30, 2010 by many of the same individuals in the current action in the Los

23  Angeles Superior Court as Case No. BC 452266.  The Complaint was never served

24  on OneWest and is attached hereto as **Exhibit 1.**

25        3.     Plaintiffs filed their FAC on or about March 11, 2011.  The FAC was

26  also never served on OneWest and is attached hereto as **Exhibit 2**.  All of the

27  pleadings and papers filed in the State Court Action are attached hereto as **Exhibit 3**.

28

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    4.    The FAC purports to assert six causes of action for fraudulent

2 concealment, intentional misrepresentation, negligent misrepresentation, violation of

3 California Civil Code section 2923.5, violation of California's Unfair Competition

4 Law ("UCL"), Business & Professions Code §§ 17200, et seq, and breach of contract.

5 *Id.*, p. 1. Plaintiffs' seek relief in the form of damages, declaratory judgment that

6 Plaintiffs' notes and mortgages are void, injunctive relief, "statutory relief" and

7 restitution pursuant to Civil Code section 2923.5, attorney's fees, costs, and pre- and

8 post judgment interest. FAC, at p. 62-63 (Prayer for Relief).

9    5.    As explained more fully below, this Court has subject matter jurisdiction

10 over this action under 28 U.S.C. section 1441 and 1331. A Case may be removed to

11 a federal court if it could have been brought in that federal court originally. 28

12 U.S.C. § 1441(b); *Rivet v Regions Bank of Louisiana*, 522 U.S. 470, 474 (1998). As

13 set forth more fully herein, this Court has jurisdiction over this matter because (a)

14 plaintiffs' sixth cause of action for Breach of Contract arise under the laws of the

15 United States (b) plaintiffs' fifth cause of action for Unfair Competition necessarily

16 depends upon resolution of substantial questions of federal law, and (c) plaintiffs'

17 fourth cause of action for Violation of Cal. Civ. Code § 2923.5 and claims based on

18 the alleged improper disclosure of loan terms are completely preempted by The

19 Home Owners' Loan Act, 12 U.S.C. § 1461 *et seq.* ("HOLA"). Accordingly,

20 OneWest may remove this matter pursuant to 28 U.S.C. § 1441.

21    **This Case Arises Under The Laws Of The United States**

22    6.    Plaintiffs' sixth claim for relief for breach of contract is expressly based

23 on allegations that OneWest violated the Troubled Asset Relief Program, 12 U.S.C. §

24 5201 *et. seq* ("TARP"). *See* FAC ¶ 218-223. In particular, plaintiffs allege that

25 "Defendants' acceptance of TARP money created an obligation to modify loans

26 outstanding on Plaintiffs' real estate to the extent Defendants were pronouncing

27 rights thereto, to assist borrowers, and to otherwise use the TARP funds for the

28 benefit of, among others, the Plaintiffs herein." FAC. ¶ 219. Plaintiffs further allege

NOTICE OF REMOVAL

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1  that they are third party beneficiaries of "the contracts between the United States

2  Government, certain intermediaries and the Defendants." FAC. ¶ 220. And plaintiffs

3  allege that the Defendants "breached their contractual obligations to Plaintiffs" under

4  those contracts. FAC. ¶ 222.

5         7.    TARP is a federal statute codified at 12 U.S.C. § 5201 *et. seq.* Plaintiffs'

6  claims for violations of TARP therefore arise under the laws of the United States, and

7  this Court has original jurisdiction. *See* 28 U.S.C. § 1331 ("The district courts shall

8  have original jurisdiction of all civil actions arising under the Constitution, laws, or

9  treaties of the United States.").

10                  **Substantial Federal Question**

11         8.    Plaintiffs' claims raise substantial federal questions. Federal courts have

12  jurisdiction to hear, originally or by removal, cases where a plaintiff's right to relief

13  necessarily depends on the resolution of a substantial question of federal law. *See*

14  *Franchise Tax Bd. v. Const. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983). As the

15  Supreme Court has explained, federal question jurisdiction exists where state law

16  claims "necessarily raise a stated federal issue, actually disputed and substantial,

17  which [the district court] may entertain without disturbing any congressionally

18  approved balance of federal and state judicial responsibilities." *Grable & Sons Metal*

19  *Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

20         9.    Plaintiffs' fifth cause of action for Unfair Competition asserts that

21  OneWest violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* and the

22  Patriot Act. FAC. ¶ 323 and 340. In addition, plaintiffs allege that OneWest violated

23  "numerous state *and federal* laws forming a reality that the violations are a basis for

24  liability under § 17200 of the Business and Professions Code." FAC. ¶ 328. In order

25  to resolve these claims, the Court will need to address substantial disputed questions

26  of federal law. Therefore, and despite plaintiffs' decision to label their claims as

27  being brought under California's Unfair Competition Law, this Court has subject-

28  matter jurisdiction over this action, and removal is proper. *See Morales v.*

NOTICE OF REMOVAL

1   *Countrywide Home Loans, Inc.*, 531 F. Supp. 2d 1225, 1226 (C.D. Cal. 2008) ("This

2   case was removed under federal question jurisdiction because the unlawful prong of

3   Plaintiff's [Unfair Competition] claim necessarily turns on the construction of

4   RESPA and Regulation X.").

5                           **Complete Preemption**

6          10.    This Court has also original jurisdiction because plaintiffs' fourth cause

7   of action for Violation of Cal. Civ. Code § 2923.5 and plaintiffs' claims that

8   OneWest is liable for the alleged failure to make required disclosures in connection

9   with the origination of plaintiffs' loans, are completely preempted by The Home

10  Owners' Loan Act, 12 U.S.C. § 1461 *et seq.* ("HOLA").

11         11.    Removal is proper based upon federal question jurisdiction "when a

12  federal statute wholly displaces [a] state law cause of action through complete

13  preemption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *see also*

14  *Catepillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (When Congress enacts a

15  statute that completely preempts state law, "any claim purportedly based upon that

16  preempted state law is considered, form its inception, a federal claim, and therefore

17  arises under federal law.").

18         12.    OneWest is a federal savings bank subject to the supervision of the

19  Office of Thrift Supervision ("OTS"). HOLA is a federal statute setting forth the

20  powers of federal savings banks. Pursuant to HOLA, the OTS has promulgated

21  extensive regulations, including those codified at 12 C.F.R. §§ 545.2 and 560.2, that

22  preempt state laws that would regulate the operations of a federal savings bank.

23  Included among those preempted actions are state law claims affecting "terms of

24  credit," "disclosure," "processing," "origination," "servicing," "sale or purchase of,

25  or investment or participation in, mortgages." 12 C.F.R. 560.2(b). Thus, as the Ninth

26  Circuit has explained, the OTS preempts the entire field of federal savings bank

27  regulations. *See Bank of Am. v City and County of San Francisco*, 309 F.3d 551, 560

28  (9th Cir. 2002) ("[T]he regulation of federal savings associations by the OTS is so

*DYKEMA GOSSETT LLP*
*333 SOUTH GRAND AVENUE*
*SUITE 2100*
*LOS ANGELES, CALIFORNIA 90071*

1  pervasive as to leave no room for state regulatory control.") (citation and quotations

2  omitted); *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008)

3  (state laws falling within the category of regulations listed in 12 C.F.R 560.2(b) are

4  preempted).

5      13.    Plaintiffs' claims here are based upon allegations that proper disclosures

6  were not made to them during the loan-origination process and the subsequent

7  servicing of their loans.  In the very first paragraph of their complaint, plaintiffs

8  allege that their lawsuit arises from "the deception in inducing Plaintiffs to enter into

9  and continue paying money and considering [sic] on loans and mortgages from

10  approximately 2003 through 2007 and which were acquired or are serviced by

11  Defendants."  FAC. ¶ 1.  Plaintiffs go on to allege that OneWest "was bound and

12  obligated to fully and accurately disclose" a number of items at origination, including

13  "Who the true lender and mortgagee were," "that to induce a Plaintiff to enter into the

14  mortgage, the enterprise caused the appraised value of Plaintiffs' home to be

15  overstated," "that to induce a Plaintiff to enter into a mortgage, the enterprise

16  disregarded its underwriting requirements, and that it "specifically planned and

17  intended to [sell and securitize their mortgages] as to virtually all mortgages at

18  highly-inflated and unsustainable values."  FAC. ¶ 197.  And plaintiffs allege that

19  "the enterprise had covertly offered Plaintiffs and others loans at a loan-to-value ratio

20  that was unsustainable and without income verifications."  FAC. ¶ 208.

21      14.    Each of these allegations relates to the "terms of credit," "disclosure,"

22  "processing," "origination," "servicing," "sale or purchase of, or investment or

23  participation in, mortgages."  12 C.F.R. § 560.2(b).  Plaintiffs' claims are therefore

24  completely preempted by HOLA and its implementing regulations, and removal is

25  proper.

26      15.    Plaintiffs have also alleged that OneWest violated Cal. Civ. Code §

27  2923.5 in some unspecified way.  This statute requires a mortgage servicer to contact

28  a borrower to discuss potential alternatives to foreclosure before initiating foreclosure

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

NOTICE OF REMOVAL

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   proceedings.  Cal. Civ. Code. § 2923.5.  Because section 2923.5 directly pertains to
2   mortgage "servicing," federal district courts have repeatedly held that HOLA
3   preempts claims brought against federal savings banks under section 2923.5.  *Beall v.*
4   *Quality Loan Svc. Corp.*, No. 10-CV-1900, 2011 WL 1044148 (S.D. Cal. 2011);
5   *Nguyen v. Wells Fargo Bank*, No. C-10-4081, 2010 WL 4348127 (N.D. Cal. 2010);
6   *Pinales v. Quality Loan Service Corp.*, No. 09-cv-1884, 2010 WL 3749427 (S.D. Cal.
7   2010); *Gonzalez v. Alliance Bancorp*, No. C 10-00805, WL 1575963 (N.D. Cal.
8   2010); *Parcray v. Shea Mortg. Inc.*, No. CV-F-09-1942, WL 1659369 (E.D. Cal.
9   2010); *Taguinod v. World Sav. Bank, F.S.B.,* No. CV 10-7864, 2010 WL 5185845, 7
10  (C.D. Cal., 2010); *Murillo v. Aurora Loan Services, LLC*, No. C 09-00503, WL
11  2160579 (N.D. Cal. 2009).  Thus, plaintiffs' allegations that OneWest did not comply
12  with Cal. Civ. Code § 2923.5 are completely preempted.

13      16.    Finally, removal is proper pursuant to the "artful pleading doctrine,"
14  which prevents plaintiffs from avoiding federal jurisdiction 'by artfully casting their
15  essentially federal law claims as state-law claims." *Federated Dep't Stores, Inc. v.*
16  *Moitie*, 452 U.S. 394, 397 n.2 (1981).  That is exactly what plaintiffs have attempted
17  here — bringing purported state law claims that are in reality federal claims.  Because
18  Plaintiffs' claims are really federal claims, however, this Court has jurisdiction, and
19  removal is appropriate.

### CONCLUSION

21      17.    This removal is timely because OneWest has not yet been served with
22  the Summons and Amended Complaint.  Further, OneWest's counsel has contacted
23  counsel for all of the Defendants that have been served to date, and all of them
24  consent to removal.

25      18.    The Superior Court of the State of California, County of Los Angeles is
26  located within the United States District Court for the Central District of California,
27  Western Division.  *See* 28 U.S.C. § 1441(a).

28

1    19.    A Notice of Filing of Notice of Removal to Federal Court and a copy of

2  this Notice of Removal of Civil Action are being concurrently sent to the Superior

3  Court of the State of California, County of Los Angeles, as required by 28 U.S.C. §

4  1446(d), and copies of the same have been served upon Plaintiffs, as verified by the

5  attached proof of service.

6    20.    Based upon the foregoing, OneWest is entitled to remove this action to

7  this Court under 28 U.S.C. § 1331 and § 1441.

8    WHEREFORE, OneWest serves this Notice that this action has been removed

9  to the United States District Court, Central District of California, Western Division.

11  Dated: May 12, 2011                    DYKEMA GOSSETT LLP

13                                         By: _____
                                               J. Kevin Snyder
14                                             Attorney for Defendants
                                               ONEWEST BANK GROUP, LLC AND
                                               ONEWEST BANK, FSB

16  PAS01\203982.1
17  ID\JKS - 105636/0116

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

11

# EXHIBIT 1

1  Philip A. Kramer   SBN # 113969
   KRAMER & KASLOW
2  23901 Calabasas Road, Suite 2013
   Calabasas, CA  91302
3  Tel: (818) 224-3900
   Fax: (818) 224-3911
4
   Attorneys for Plaintiffs  D62 Michael Stern

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

DEC 30 2010

John A. Clarke, Executive Officer/Clerk
By_____ Deputy
AMBER LAFLEUR-CLAYTON

5            SUPERIOR COURT OF THE STATE OF CALIFORNIA

6                        COUNTY OF LOS ANGELES

7
8  ANTONIO MARQUETTE, an individual;
   MARIA G. ANZALDO, an individual;
9  GUILLERMO ANZALDO, an individual;
   ARTEMO B. ROQUE, JR., an individual;
10 PEDRO HERNANDEZ, an individual;
   GABRIELA HERNANDEZ, an individual;
11 MARGARITO PEREZ, an individual;
   JERRY HERNANDEZ, an individual;
12 DAT THANH NGO, an individual;
   ZAVEN ZARDARAYAN, an individual;
13 DANA HORITA, an individual;
   KEVIN R. WESTOVER, an individual;
14 KATHERINE WESTOVER, an individual;
   and others similarly situated named herein as
15 ROES 1 through 10,000, inclusive,

16                     Plaintiffs,

17       vs.

18 ONEWEST BANK GROUP LLC, a limited
   liability company;ONEWEST BANK, FSB,
19 a Delaware corporation; SCOTT VAN
   DELLEN, an individual; RICHARD KOON,
20 an individual; NDEX WEST, LLC, a Limited
   Liabilty Company; LPS DEFAULT & TITLE
21 CLOSING, a business entity, form unknown;
   PRIORITY POSTING & PUBLICATION, a
22 california corporation; and DOES 1 through
   1000, inclusive,
23
24                     Defendants

Case No.

**COMPLAINT FOR:** B C 4 5 2 2 6 6

7.  **FRAUDULENT
    CONCEALMENT
    [VIOLATION OF CAL. CIV.
    CODE §§ 1572, 1709 AND
    1710] (INCLUDING
    DECLARATORY AND
    INJUNCTIVE RELIEF TO
    VOID MORTGAGE);**
8.  **INTENTIONAL
    MISREPRESENTATION
    [VIOLATION OF CAL. CIV.
    CODE §§ 1572, 1709 AND
    1710] (INCLUDING
    DECLARATORY AND
    INJUNCTIVE RELIEF TO
    VOID MORTGAGE);**
9.  **NEGLIGENT
    MISREPRESENTATION
    [VIOLATION OF CAL. CIV.
    CODE §§ 1572, 1709 AND
    1710] (INCLUDING
    DECLARATORY AND
    INJUNCTIVE RELIEF TO
    VOID MORTGAGE);**
10. **VIOLATION OF CAL. CIVIL
    CODE § 2923.5;**
11. **UNFAIR COMPETITION
    [VIOLATIONS OF CAL. BUS.
    & PROF. CODE § 17200 ET
    SEQ.] (INCLUDING
    INJUNCTIVE RELIEF TO
    VOID MORTGAGE)**

- 1 -

COMPLAINT

| | 12.    **BREACH OF CONTRACT** |
|---|---|
| | [JURY TRIAL DEMANDED] |

Plaintiffs, and each of them, hereby demand a jury trial and allege as follows:

## INTRODUCTION

1.This lawsuit arises from, among other things: (i) the deception in inducing Plaintiffs to enter into and continue paying money and considering on loans and mortgages[1] from approximately 2003 through 2007 and which were acquired or are serviced by Defendants; (ii) the fraudulent and illegal use of MERS in connection with those loans and mortgages; (iii) Defendants' failure to perform their obligations required pursuant to accepting TARP funds; (iv) Defendants' breach of Plaintiffs' statutorily protected rights; (v) Defendants' breach and willful violation of numerous consumer and homeowner protection statutes, and willful violations of unfair business practices statues, by, among other things, processing money from unknown sources, in contravention of numerous lawst; (vi) accepting money, transferring alleged assets and foreclosing upon alleged assets in instances where the alleged assets do not exist, and which these Defendants have no right, title, or interest upon which they can act;  and (vii) Defendants' continuing tortuous conduct intended to deprive Plaintiffs of their rights and remedies for the foregoing acts, described below.  Defendants, among other things, violated laws, breached contracts, and repeatedly and intentionally failed to honor its agreements with borrowers.

---

[1] This Complaint uses "mortgage" and "deed of trust" interchangeably.  Depending upon the state and other factors, a loan may be secured by either form of security instrument, the deed of trust being the customary instrument in California.

- 2 -

COMPLAINT

2.    Moreover, Defendants, and each of them, wrongfuly acted and continue to act as if they are either the owner, beneficiary, successor, assignee, servicer, or have some right, title, or interest in Plaintiffs' notes, mortgages, or deeds of trust. In reality, the Defendants, and each of them, are commiting and continuing a fraud, by utilizing and foreclosing upon assets that do not exist.

3. This action seeks, among other things, remedies for the foregoing improper activities, including a massive fraud perpetrated upon Plaintiffs and other borrowers by the Defendants' business that devastated the values of their residences, in most cases resulting in Plaintiffs' loss of all or substantially all of their net worths.

**PARTIES**

4. Plaintiff ANTONIO MARQUETTE is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

5. Plaintiff MARIA G. ANZALDO is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

6. Plaintiff GUILLERMO ANZALDO is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

- 3 -

COMPLAINT

7. Plaintiff ARTEMO B. ROQUE, JR. is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

8. Plaintiff PEDRO HERNANDEZ is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

9. Plaintiff GABRIELA HERNANDEZ is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

10. Plaintiff MARGARITO PEREZ is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

11. Plaintiff JERRY HERNANDEZ is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

- 4 -

COMPLAINT

12.   Plaintiff DAT THANH NGO is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

13.   Plaintiff ZAVEN ZARDARAYAN is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

14.   Plaintiff DANA HORITA is an individual residing in the State of Washington, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

15.   Plaintiff KEVIN R. WESTOVER is an individual residing in the State of Arizona, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

16.   Plaintiff KATHERINE WESTOVER is an individual residing in the State of Arizona, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

- 5 -

COMPLAINT

17.     The other Plaintiffs, named as ROES 1 through 10,000, are similarly situated to Plaintiffs identified above in that they too borrowed money from the Defendants (as defined below) between the dates beginning on January 1, 2003 and ending on December 31, 2007, secured by deeds of trust on their California realty.  Further, at all times material hereto, Defendants have acted as servicer or in another capacity with respect to loan processing.  All of the foregoing secured real estate loans made to Plaintiffs were wrongfully and fraudulently handled and processed by Defendants, resulting in damages.

18.     Plaintiffs' counsel is aware of and has provided services to unnamed Roe plaintiffs, each of whom has sustained actual injury.  The unnamed Roes sue under their names fictitiously because they either wish to maintain their privacy or because Plaintiffs' counsel have not completed the due diligence necessary to properly plead their claims as of the filing of this Complaint.  From time-to-time, upon conducting the due diligence and learning the information sufficient to add remaining Roe Plaintiffs to this action, Plaintiffs shall seek leave of Court to amend this Complaint to name these additional Roe Plaintiffs, or will follow such other process as is prescribed by the Court.

19.     An additional large number of persons has contacted counsel or their staffs pertaining to the matters complained of herein.  In the event Plaintiffs believe it is in furtherance of judicial economy and justice to add all or any of these additional persons to this Complaint, Plaintiffs shall bring a noticed motion to add such parties to this action.  In the event Plaintiffs file a separate lawsuit appertaining to all or any of these unnamed persons, or such further number as may exist in view of future developments, Plaintiffs shall file all appropriate Notices of Related Cases in accordance with California law, or as otherwise directed by the Court.

20.     Defendant ONEWEST BANK, FSB ("ONEWEST") is a mortgage lender with its primary headquarters located in Pasadena, California.

21.     Defendant ONEWEST BANK GROUP LLC ("ONEWEST GROUP") is a holding company formed for the purpose of owning and controlling ONEWEST.

22.    Defendants ONE WEST and ONE WEST GROUP acquired certain assets more than 18-months ago which resulted in these defendants claiming to have an interest in, or right to make demands about, the realty of Plaintiffs. Plaintiffs had and have no such right. In furtherance of this scheme to defraud and take money and property, these Defendants ONE WEST and ONE WEST GROUP have acted in concert with, in conspiracy with and in conjunction with the approval of all other Defendants named in this action as set forth in this Complaint. Additionally, ONE WEST and ONE WEST GROUP dominates and controls the affairs of each of the other Defendants such that there is no separateness between any of these Defendants and the ONE WEST defendants with regard to Plaintiffs and their realty and money. Accordingly, hereinafter, all Defendants shall collectively be referred to as "ONE WEST.".

23.    It is axiomatic that the ONEWEST Defendants have no greater rights in the assets or money of Plaintiffs than any lawful predecessor of ONEWEST. And, no transfer of mortgages or notes and no intervening party can make mortgages out of assets that were not mortgages in the first place.

24.    The Defendants' business as it relates to this action, commenced in 2001 with $5.1 billion in total assets and eight retail branch offices. The Defendants' business is the origination of residential loans for sale, securitization, and for investment. Residential mortgage lending and mortgage bank activity was its primary focus and remains a principal focus of ONE WEST to this date.

25.    The Defendants' mortgage lending business grew to the point where in 2008 the business had become the seventh largest savings association and ninth largest servicer of mortgages in the Unites States. From June 2005 to March 2008, the business had grown from approximately $18.3 billion to $32 billion in assets. Growth was due largely to an aggressive growth strategy that was relentlessly pursued. The business operated in all fifty States in the United States of America.

26.    At its peak in 2008, the business had 32 retail branches located and operated in

- 7 -

COMPLAINT

Southern California and 182 loan production offices throughout the United States of America.

27. Between 2000 and 2006, the Defendants' business of loan production increased from approximately $10 billion to almost $92 billion.

28. On July 11, 2008, the savings bank that constituted a core of the Defendants' business was closed. The business was then acquired by the Defendants in March 2009.

29. Defendant SCOTT VAN DELLEN ("VAN DELLEN") is a resident of the State of California, in the County of Los Angeles. VAN DELLEN joined the business acquired by ONEWEST in 2001 and served as the President and Chief Executive Officer of one or more of its lending divisions from 2002 until the seizure of the business on July 11, 2008. VAN DELLEN acted outside the course and scope of any employment or agency in furthering the schemes set forth herein.

30. Defendant RICHARD KOON ("KOON") is a resident of the State of California, in the County of Los Angeles. KOON joined the business acquired by ONEWEST in 2001 and served as the Chief Lending Officer of one or more of its lending divisions from 2001 until January 2008. KOON acted outside the course and scope of any employment or agency in furthering the schemes set forth herein.

31. Defendant NDEX WEST, LLC("NDEx") is a Limited Liabilty Company, acting on behalf of other Defendants as a debt collector, alleged trustee, alleged substituted trustee, alleged agent for trustee, alleged aghent for the beneficiary, and the alleged servicer of the mortgage, and doing business in the County of Los Angeles, State of California.

32. Defendant PRIORITY POSTING & PUBLICATION is a California corporation, with its principal place of business in Tustin, California. The tortious conduct set forth herein was done in the County of Los Angeles, State of California and also statewide.

33. Defendant LPS DEFAULT TITLE & CLOSING is a business entity, form unknown, operating in, among other places, the County of Los Angeles, State of California.

34. At all times material hereto, the business of Defendants was operated through a common plan and scheme designed to conceal the material facts set forth below from Plaintiffs, from the California public and from regulators, either directly or as successors-in-interest to the

- 8 -

COMPLAINT

business acquired from others.

35.     The concealment was completed, ratified and/or confirmed by each Defendant herein directly or as a successor-in-interest as the acquirer of an entire business, and each Defendant performed or has sought to benefit from the tortious acts set forth herein for its own monetary gain and as a part of a common plan developed and carried out with the other Defendants or as a successor-in-interest to the business that did the foregoing.

36.     The true names and capacities of the Defendants listed herein as DOES 1 through 1,000 are unknown to Plaintiffs who therefore sue these Defendants by such fictitious names.  Each of the DOE Defendants was the agent of each of the other Defendants herein, named or unnamed, and thereby participated in all of the wrongdoing set forth herein.

37.     On information and belief, each such Defendant is responsible for the acts, events and concealment set forth herein and is sued for that reason.  Upon learning the true names and capacities of the DOE Defendants, Plaintiffs shall amend this Complaint accordingly.

38.     Plaintiffs believe and thereon allege that the agents and co-conspirators through which the named Defendants operated included, without limitation, financial institutions and other firms that originated loans on behalf of the enterprise acquired by the ONEWEST Defendants and the ONEWEST Defendants.

39.     These institutions acted at the behest and direction of the enterprise and the ONEWEST Defendants, or agreed to participate — knowingly or unknowingly - in the fraudulent scheme described in this Complaint.

40.     Those firms originating loans that knowingly participated in the scheme are jointly and severally liable with the Defendants for their acts in devising, directing, knowingly benefitting from and ratifring the wrongful acts of the knowing participants.

41.     Upon learning the true name of such knowing participants, Plaintiffs shall amend this Complaint to identify such knowing participants as Doe Defendants.

- 9 -
COMPLAINT

42.    For avoidance of doubt, such knowing participants include, without limitation, legal and natural persons owned in whole or in part by the enterprise or Defendants or affiliates thereof legal and natural persons owning directly or through affiliates financial interests in the enterprise or Defendants; legal and natural persons directly or through affiliates acting pursuant to contracts to share in the benefits of the wrongdoing alleged in this Complaint and knowing to at least some degree committing acts and omissions in support thereof; and legal and natural persons knowing to at least some degree acting in concert with the enterprise or the Defendants..

43.    As to those legal and natural persons acting in concert without an express legal relationship with Defendants or their affiliates, on information and belief, the Defendants knowingly induced and encouraged the parallel acts, created circumstances permitting and authorizing the parallel acts and omissions, benefited therefrom and ratified the improper behavior, becoming jointly and severally liable therefor.

44.    As to those legal an natural persons whose acts in support of the loan scheme were unwitting, Plaintiffs will consider whether and on what basis such persons might be liable for their acts; however, on information and belief, the Defendants knowingly induced and encouraged the acts and omissions, created circumstances permitting and authorizing the parallel acts and omissions, benefited therefrom and ratified the improper behavior, becoming liable therefor.

45.    Defendants' own public disclosures make clear that ONEWEST and ONEWEST GROUP are a common enterprise operating as a greater whole and that ONEWEST and ONEWEST GROUP are the successors-in-interest to the tainted mortgage lending business formerly operated by IndyMac Bank.

46.    Indeed, ONEWEST and ONEWEST GROUP were formed for the specific purpose of succeeding to this mortgage lending business and the assets comprising that

- 10 -

COMPLAINT

1    business, including the loans made to Plaintiffs.

2

3

4         47.    Plaintiffs are informed and believe, and thereon allege, that: (i) ONEWEST

5    GROUP, ONEWEST and their wholly-owned and controlled subsidiaries are liable (to the

6    extent provided in this Complaint) for all wrongful acts relating to their acquired business prior

7    to the date thereof as the successor-in-interest to various other parties, (ii) Defendants directly

8    and through its subsidiaries and other agents sued herein as Does have continued the unlawful

9    mortgage lending and collection practices, including, without limitation thereof, writing

10   fraudulent mortgages as set forth above and concealing wrongful acts that occurred in whole or

11   in part prior thereto, and (iii) Defendants and their subsidiaries are jointly and severally liable

12   as alter egos and as a single, greater unified whole.

13        48.    Hand-in-hand with its fraudulently-obtained mortgages, the Defendants'

14   mortgage lending business implemented a plan to "pool" the foregoing mortgages and sell the

15   pools for inflated value.

16        49.    Rapidly, these two intertwined schemes grew into a brazen plan to disregard

17   underwriting standards and fraudulently inflate property values – county-by-county, city-by-

18   city, person-by-person – in order to take business from legitimate mortgage-providers, and

19   moved on to massive securities fraud hand-in-hand with concealment from, and deception of,

20   Plaintiffs and other mortgagees on an unprecedented scale.

21        50.    From as early as 2004, the senior management of Defendants' mortgage lending

22   business knew the scheme would cause a liquidity crisis that would devastate Plaintiffs' home

23   values and net worths. But, they didn't care, because their plan was based on insider trading –

24   pumping for as long as they could and then dumping before the truth came out and Plaintiffs'

25   losses were locked in.

26

27

28

51.    At the very least, at the time of entering into the notes and deeds of trust referenced herein with respect to each Plaintiff, the Defendants' business, each Defendant originating or participating in the origination of a mortgage, each Defendant in the chain of title of the foregoing mortgages and each Defendant servicing the foregoing mortgages and the successors to each of the foregoing (collectively, the "Defendants") was bound and obligated to fully and accurately disclose to each borrower, including each Plaintiff herein, that the mortgage being offered to the Plaintiff was, in fact, part of a massive fraud that Defendants or their business principals knew would result in the loss of the equity invested by Plaintiff in their homes and in severe impairment to Plaintiffs' credit ratings.

52.    It is now all too clear that this was the ultimate high-stakes fraudulent investment scheme of the last decade. Couched in banking and securities jargon, the deceptive gamble with consumers' primary assets – their homes – was nothing more than a financial fraud perpetrated by Defendants' mortgage lending enterprise and others on a scale never before seen. This scheme led directly to a mortgage meltdown in California that was substantially worse than any economic problems facing the rest of the United States.

53.    From 2008 to the present, Californians' home values decreased by considerably more than most other areas in the United States as a direct and proximate result of the Defendants' enterprise scheme set forth herein. Defendants' enterprise systematically destroyed California home values county-by-county, then State-wide, and ultimately across the entire Country.

54.    The business premise of the enterprise the ONEWEST Defendants' acquired was to leave the borrowers, including Plaintiffs, holding the bag once Defendants and their executives had cashed in reaping huge salaries and bonuses and selling securities based on their inside information, while investors were still buying the increasingly overpriced mortgage pools and before the inevitable dénouement. This massive fraudulent scheme was a disaster

- 12 -

COMPLAINT

1  | both foreseen by Defendants' business and waiting to happen. The operators of Defendants'

2  | business knew it, and yet still induced the Plaintiffs into their scheme without telling them.

3  |     55.    Almost to add further insult to injury, ONEWEST GROUP and ONEWEST,

4  | knowing of this massive fraud, like Civil War carpetbaggers, sought to swoop in and profiteer

5  | from the carnage that had been wreaked on Plaintiffs. The ONEWEST Defendants sought to

6  | ignore the responsibility for the results of the massive fraud in the mortgage assets and tainted

7  | business they were acquiring by aggressively enforcing the mortgages purchased or serviced.

8  | The ONEWEST Defendants did this with calculation and deliberation after over eighteen

9  | months had elapsed from the failure of the business and in full recognition of the patent frauds

10 | that had been perpetrated on Plaintiffs in connection with the mortgages.

11 |     56.    As a result of all of these actions of Defendants, Plaintiffs lost their equity in

12 | their homes, their credit ratings and histories were damaged or destroyed, and Plaintiffs

13 | incurred material other costs and expenses, described herein. At the same time, Defendants

14 | took from Plaintiffs and other borrowers billions of dollars in interest payments and fees and

15 | generated billions of dollars in profits by selling their loans at inflated values.

16 |     57.    With government loss-protection in their hip pocket, the ONEWEST

17 | Defendants, with a voraciousness that has been chastised by numerous courts, sought to

18 | obliterate the last vestiges of value held by Plaintiffs, lock in government fill-up money and flip

19 | distressed assets for a profit. On the heels of an already bad disaster, Defendants piled on after

20 | March 2009 to systematically continue the destruction of California home values.

21 |     58.    Defendants' improper acts are numerous, including, inter alia: (i) issuing Notices

22 | of Default in violation of Cal. Civil Code §2923.5; (ii) misrepresenting their intention to

23 | arrange loan modifications for Plaintiffs, while in fact creating abusive roadblocks to deprive

24 | Plaintiffs of their legal rights; and (iii) and by refusing to respond, in any way, to Plaintiffs'

25 | communications.

26 |     59.    These acts continue to this day with hardball tactics and deception that continue

27 | to threaten Plaintiffs' rights and financial security, as well as the economic future of the State of

28 | California and the entire United States of America.

- 13 -

COMPLAINT

60.     The carpetbagger business plan of the ONEWEST Defendants is no mystery. It
is evident in their very formation to acquire the mortgage assets to which this action relates.
What the Defendants had hoped was that helpless homeowners would not be able to stand up to
the Defendants as they eviscerated the Plaintiffs' life's savings, chasing a hoped-for gold rush
of government bail-out money to make the Defendants rich in the process, while at the same
time positioning the Defendants as vultures to pick on the government-paid-for carcass that
would be left over. Though they were careful not to reveal overtly the piranha-like nature of
their business plan, the Defendants' formation for the sole purpose seeking to obtain an
enormous portfolio of tainted mortgages, enforce them as if they were not tainted, crush the
homeowners in the process to profit from government money, and then flipping the "cleansed"
portfolio is patently evident. In this action, Plaintiffs seek to stop this behavior and obtain the
redress they are due.

## GENERAL FACTS

61.     The common facts herein include those facts set forth above in the prior sections
of this Complaint.

62.     There has been considerable press attention, litigation and pending governmental
investigations establishing, among other things, that in many instances the Defendants herein
do not have in their possession, custody or control the original or an authentic copy of the
promissory notes or other indicia of realty rights regarding Plaintiffs. Based thereon, on
information and belief, Plaintiffs hereby allege that Defendants have made demand for payment
on the Plaintiffs with respect to Plaintiffs' properties at a time when Defendants are incapable
of establishing (and do not have any credible knowledge regarding) who owns the promissory
notes Defendants are purportedly servicing.

63.     Many of the promissory notes referenced above are secured or controlled by a
beneficiary known as Mortgage Electronic Registration Systems, Inc. (MERS). MERS is
sometimes named as the "nominee" or "beneficiary" for unknown lenders representing

1  unsourced money advanced by persons in violation of law. When a loan is transferred among
2  MERS members, MERS purports to simplify the process by avoiding the requirement to re-
3  record the liens and pay county recorder fees.

4       64.    For the substantial majority of the Plaintiffs herein, MERS claims to be the
5  owner of the security interest indicated by the mortgages transferred by lenders, investors and
6  their loan servicers in the county land records. MERS claims its process eliminates the need to
7  file assignments in the county land records which lowers costs for lenders and consumers by
8  reducing county recording costs from real estate transfers and provides a central source of
9  information and tracking for mortgage loans.

10      65.    Based upon published reports, including the MERS website as of the date of this
11 Complaint, on information and belief, MERS does not: (1) take applications for, underwrite or
12 negotiate mortgage loans; (2) make or originate mortgage loans to consumers; (3) extend credit
13 to consumers; (4) service mortgage loans; or (5) invest in mortgage loans.

14      66.    MERS has been, and continues to be, used to facilitate the unlawful transfers of
15 mortgages, unlawful pooling of mortgages and the injection into the United States banking
16 industry of unsourced (i.e., unknown) funds, including, without limitation, improper off-shore
17 funds. Plaintiffs are informed and believe and thereon allege that MERS has been listed as
18 beneficial owner of more than half the mortgages in the United States.

19      67.    In 2001, Congress found that "money laundering, and the defects in financial
20 transparency on which money launderers rely, are critical to the financing of global terrorism
21 and the provision of funds for terrorist attacks." Congress specifically found that "money
22 launderers subvert legitimate financial mechanisms and banking relationships by using them as
23 protective covering for the movement of criminal proceeds and the financing of crime and
24 terrorism . . ."

25      68.    On information and belief, during periods relevant to the other acts complained
26 of herein, Defendants and each of them did not and persist in failing to (1) establish due
27 diligence policies, procedures and controls reasonably designed to detect and report instances
28 of money laundering, (2) establish procedures to take reasonable and practicable measures to

- 15 -
COMPLAINT

1  verify the identity of those applying for an account with the institution and maintain records of

2  the information used to verify a person's identity, including name, address, and other

3  identifying information, (3) determine and report the sources of funds used for the mortgages

4  they originate and service, as well as the sources of funds used to acquire any mortgages, or (4)

5  disclose to Plaintiffs the identities, address and telephone numbers of transferees of their

6  mortgages.

7      69.    Upon completion of suffcient discovery, Plaintiffs will seek leave to amend the

8  complaint to supplement the foregoing allegations with respect to additional violations

9  pertaining to the Plaintiffs and additional patterns supporting Plaintiffs' claims herein including

10  its claim of Unfair Competition, *infra*.

11     70.    Under California Civil Code § 1709 it is unlawful to willfully deceive another

12  "with intent to induce him to alter his position to his injury or risk."

13     71.    Under California Civil Code § 1710, it a "deceit" to do any one or more of the

14  following: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it

15  to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable

16  ground for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose

17  it, or who gives information of other facts which are likely to mislead for want of

18  communication of that fact; or, (4) a promise, made without any intention of performing it.

19     72.    Under California Civil Code § 1572, the party to a contract further engages in

20  fraud by committing "any other act fitted to deceive."

21     73.    At the time of entering into the notes and deeds of trust referenced herein with

22  respect to each Plaintiff, the enterprise acquired by the ONEWEST Defendants, was bound and

23  obligated to fully and accurately disclose:

24        a.   Who the true lender and mortgagee were.

25        b.   That to induce a Plaintiff to enter into the mortgage, the enterprise caused the

26             appraised value of Plaintiff's home to be overstated.

27        c.   That to disguise the inflated value of Plaintiff's home, the enterprise was

28             orchestrating the over-valuation of homes throughout Plaintiff's community.

- 16 -

COMPLAINT

d.  That to induce a Plaintiff to enter into a mortgage, the enterprise disregarded its underwriting requirements, thereby causing Plaintiff to falsely believe that Plaintiff was financially capable of performing Plaintiff's obligations under the mortgage, when the enterprise knew that was untrue.

e.  That the enterprise not only had the right to securitize and sell Plaintiff's mortgage to third-party investors, but that it specifically planned and intended to do so as to virtually all mortgages at highly-inflated and unsustainable values.

f.  That as to the intended sales:

    i.  The sales would include sales to nominees who were not authorized under law at the time to own a mortgage, including, among others, Mortgage Electronic Registration Systems Inc., a/k/a MERSCORP, Inc. ("MERS"), which according to its website was created by mortgage banking industry participants to be only a front or nominee to "streamline" the mortgage re-sale and securitization process;

    ii.  Plaintiff's true financial condition and the true value of Plaintiff's home and mortgage would not be disclosed to investors to whom the mortgage would be sold;

    iii.  The enterprise intended to sell the mortgage together with other mortgages as to which it also intended not to disclose the true financial condition of the borrowers or the true value of their homes or mortgages;

    iv.  The consideration to be sought from investors would be greater than the actual value of the said notes and deeds of trust; and

    v.  The consideration to be sought from investors would be greater than the income stream that could be generated from the instruments even assuming a 0% default rate thereon;

g.  That the mortgage would thereby be used as part of a scheme by which the enterprise would bilk investors by selling collateralized mortgage pools at an

- 17 -

COMPLAINT

1        inflated value.

2        h.  That, at the time they did the foregoing, the enterprise knew the foregoing

3            would lead to a liquidity crisis and the likely collapse of the enterprise;

4        i.  That the enterprise also knew the foregoing would lead to grave damage to each

5            Plaintiff's property value and thereby result in the Plaintiff's loss of the equity

6            Plaintiff invested in the Plaintiffs' house, as well as damaging the Plaintiff's

7            credit rating, thereby causing the Plaintiff additional severe financial damage;

8            and

9        j.  That the enterprise knew at the time of making each loan, but did not disclose to

10          Plaintiffs, that entire communities would become "ghost-town-foreclosure-

11          communities" after a domino effect of foreclosures hit them.

12     74.    When property values started falling – just as the enterprise knew would occur –

13 the enterprise could no longer continue the pretense, concealment and affirmative

14 misrepresentations.  Plaintiffs through their losses, and then also the ultimate banker, the U.S.

15 taxpayer, have footed the bill through TARP and other programs.

16     75.    The ONEWEST Defendants not only continue to ratify the scheme, but they

17 aggressively seek to profiteer from it.

18     76.    With specific aim, ONEWEST GROUP and ONEWEST, knowing of the

19 massive fraud perpetrated by the enterprise they sought to acquire, swooped in to profiteer.

20 Like Civil War carpetbaggers, the ONEWEST Defendants sought to conceal the fraud of which

21 they were aware and which gave legitimate defenses to borrowers and to ramrod through

22 foreclosures.

23     77.    This was all done while the ONEWEST Defendants have put window dressing

24 on their business strategy, seeking to obfuscate their actions by press releases of diametrically

25 opposite actions.  This conspiracy has all been to further crush values, realize losses and collect

26 government bail-out money, and then to take their foot off the neck of the California

27 homeowner market and profiteer from rises in portfolio asset values.

28     78.    However, the ONEWEST Defendants can not improve their position in the

mortgages and must stand in the shoes of their predecessor. As a result, they are subject to the shortcomings of the assets they purchased, and not only those the ONEWEST Defendants can control for their profit. They are also subject to all defenses to the mortgages.

79.    The ONEWEST Defendants' high-pressure and aggressive foreclosure tactics have been designed to push this fraud through and avoid these defenses by sheer weight of a well-financed financial group against individual homeowners. However, they must accept the burdens as well as the benefits of the mortgage assets contained in the tainted business they acquired.

80.    The ONEWEST Defendants have hatched their scheme with calm deliberation, including carefully investigating the assets they were acquiring, interviewing executives of the enterprise, and forming their own vehicles to ratify and execute the fraudulent plan. After over eighteen months had elapsed from the failure of the enterprise, after the emergence of government bail-outs and support, including privately negotiated help and TARP assistance, and in full recognition of the patent frauds that had been perpetrated on Plaintiffs in connection with the mortgages, the ONEWEST Defendants stepped into those dirty shoes.

81.    As a result of all of these actions of Defendants, Plaintiffs lost their equity in their homes, their credit ratings and histories were damaged or destroyed, and Plaintiffs incurred material other costs and expenses, described herein. At the same time, Defendants took from Plaintiffs and other borrowers billions of dollars in interest payments and fees and generated billions of dollars in profits by selling their loans at inflated values.

82.    With government loss-protection in their hip pocket, the ONEWEST Defendants, with a voraciousness that has been chastised by numerous courts, have sought to obliterate the last vestiges of value held by Plaintiffs, lock in government fill-up money and flip distressed assets for a profit. On the heels of an already bad disaster, Defendants piled on after 2008 to systematically continue the destruction of California home values.

83.    Defendants cannot aver that the market would have worked its way out of the fraud, because they knew of the liquidity crisis and devastation that the fraud had already created. Notwithstanding this knowledge, the ONEWEST Defendants embarked on a massive

1  campaign to crush the values of homes to feed their profiteering scheme.

2       84.    The ONEWEST Defendants knew through their investigation that, in violation

3  of their own underwriting guidelines, the enterprise had covertly offered Plaintiffs and others

4  loans at a loan-to-value ratio that was unsustainable and without income verification. The

5  ONEWEST Defendants knew that the enterprise knew this, but concealed from Plaintiffs that

6  they knew, Plaintiffs would soon be unable to afford the loans once introductory discount

7  interest rates ended, and variable interest and balloon payments kicked in. Indeed, the

8  ONEWEST Defendants saw this fraud and the disjoint it had created in the market, and their

9  ability to act fast and profiteer from the U.S. taxpayer, as key to their own scheme.

10      85.    As had their enterprise, the ONEWEST Defendants knew that when interest

11  payments increased and balloon payments became due, if not before, Plaintiffs and others

12  would begin defaulting on their mortgages and would suffer grievous losses from mortgages

13  for which they were not qualified. Indeed, at the time of their acquisition of the tainted assets,

14  this was going on.

15      86.    It was a pivotal confluence of events that the ONEWEST Defendants sought to

16  exploit for gain. Given the inflated appraised values of their residences, even without a decline

17  in property values, few Plaintiffs would be able to refinance or sell their homes without

18  suffering a significant loss.

19      87.    The Defendants knew that the scale of the lending – based on inflated property

20  values, without income verification and in violation of numerous underwriting guidelines –

21  would lead to widespread declines in property values, thereby putting Plaintiffs and others into

22  extremis through which they would lose the equity invested in their homes and have no means

23  of refinancing or selling, other than at a complete loss. That is precisely what happened to

24  Plaintiffs herein.

25      88.    The enterprise did not just make misrepresentations and conceal material facts

26  from investors. First, each of the foregoing misrepresentations was made in public documents

27  or forums given wide communication to the public, including Plaintiffs herein. Second, the

28  identical affirmative misrepresentations and concealment pertained to the Plaintiffs, and other

- 20 -

COMPLAINT

borrowers.

89.    The enterprise had perpetuated its lies by affirmative misrepresentations and by concealing the truth from Plaintiffs and other borrowers because to do otherwise would mean: (a) immediate wash-back into their investor fraud since Plaintiffs and other borrowers are part of the investor public receiving all other investor communications, and (b) decapitation of the source of the supply of mortgages needed for the scheme. The ONEWEST Defendants knew this when they acquired the tainted assets and then ratified and profited from it in the manner alleged herein.

90.    The concealment of the scheme from borrowers was absolutely essential because the enterprise knew it would soon be delivering Plaintiffs' notes and deeds of trust to investors and their representatives at intentionally inflated values as collateral for Defendants' fraudulent securitized pools. The ONEWEST Defendants knew this when they acquired the tainted assets.

91.    By not disclosing the truth of the inflated appraisals, lax lending standards, deficient loan portfolio, shaky secondary market collateralized securities, and overall scheme to its borrowers, as set forth above, the enterprise not only made them unwitting accomplices, but put them into a no win situation in which the price of taking a mortgage from the enterprise would be – and has been – cascading defaults and foreclosures that have wiped out billions of dollars in equity value, including the equity invested in their homes by Plaintiffs. The ONEWEST Defendants knew this when they acquired the tainted assets and intended at the time, and have in fact, profited from it in violation of law and in a manner of unfair competition toward Plaintiffs.

92.    The ONEWEST Defendants exacerbated this situation by setting off cascading foreclosures in entire cities and counties in California, leading to unemployment and economic turmoil. All Plaintiffs have been damaged by the foregoing.

93.    Despite billions of dollars of taxpayer-funded relief programs, property values continue to fall and unemployment and underemployment remain terribly high. However, this is all key to the ONEWEST Defendants' profiteering scheme. The bigger the carnage now, the more government relief they get, and the more upside that remains in the assets they have

- 21 -

COMPLAINT

1  confiscated from homeowners.

2      94.    As defaults increased, the Defendants used it as an opportunity to increase their

3  fees and to punish Plaintiffs and other borrowers.

4      95.    The enterprise first and later the ONEWEST Defendants concealed and did not

5  accurately or fully disclose to any Plaintiff herein any of the foregoing facts.  Further, neither

6  the enterprise nor Defendants disclosed or explained their schemes to Plaintiffs at any time.

7      96.    They did the foregoing with the intent to deceive Plaintiffs, the investing public

8  and the U.S. taxpayer.  Plaintiffs did not know the massive scheme the enterprise had started

9  and that the ONEWEST Defendants diabolically enhanced and accelerated.

10     97.    To the contrary, the enterprise affirmatively misrepresented its underwriting

11 processes, the value of its mortgages and the fundamental nature of its business model in its

12 press releases, annual report and securities filings, all of which were widely distributed to the

13 public, including Plaintiffs.  The ONEWEST Defendants knew this as they hatched their own

14 new chapter to the scheme.

15     98.    The enterprise intended the public, including Plaintiffs, to rely upon its

16 misrepresentations and made those misrepresentations to create false confidence in the

17 enterprise and to further its fraud on borrowers and investors.  The ONEWEST Defendants are

18 now playing on this same theme, but they are getting caught in their own creation.

19     99.    Plaintiffs would never have done business with the enterprise or entered into the

20 mortgages or continued to interact with ONE WEST if the scheme had ever been disclosed to

21 them.  Had the Plaintiffs known the facts concealed from them, Plaintiffs would have never

22 entered into bogus and predatory transactions creating the tainted assets acquired by the

23 ONEWEST Defendants, designed only to line the pockets of the lenders and their executives

24 and not to actually and justifiably create value and generate capital from the Plaintiffs' equity

25 investments in their primary residences, and now designed to line the pockets of the

26 ONEWEST Defendants directly through their carpetbagging and through their sucking at the

27 TARP and other government money troughs.

28     100.   If the Plaintiffs had later learned the truth, each Plaintiff would have either (a)

- 22 -

COMPLAINT

1  rescinded the loan transaction under applicable law and/or (b) refinanced the loan transaction

2  with a reputable institution prior to the decline in mortgage values in late 2008.

3      101.    Instead, each Plaintiff reasonably relied on the deceptions of the enterprise in

4  originating their loans and forbearing from exercising their rights to rescind or refinance their

5  loans.  The ONEWEST Defendants knew of this massive fraud and step into all the infirmities

6  of these mortgages.

7      102.    After entering into the transactions with each Plaintiff herein as alleged herein,

8  the enterprise sold in securities transactions the notes and deeds of trust pertaining to Plaintiffs'

9  properties.  The sales:

    a.  Included sales to nominees who were not authorized under law at the time to
        own a mortgage, including, among others, MERS;

    b.  Involved misrepresentations by the enterprise to investors and concealment from
        investors of Plaintiff's true financial condition and the true value of Plaintiff's
        home and mortgage;

    c.  Involved misrepresentations by the enterprise to investors and concealment from
        investors of the true financial condition of other borrowers and the true value of
        their homes and mortgages also included in the pools;

    d.  Were for consideration greater than the actual value of the said notes and deeds
        of trust;

    e.  Were for consideration greater than the income stream that could be generated
        from the instruments even assuming a 0% default rate thereon; and

    f.  Were part of a scheme by which the enterprise bilked investors by selling
        collateralized mortgage pools at an inflated value.

    g.  The ONEWEST Defendants knew all of this when they acquired the tainted
        assets.

    103.    The enterprise hid from Plaintiffs that Defendants were engaged in an effort to
increase market share and sustain revenue generation through unprecedented expansions of its
underwriting guidelines, taking on ever-increasing credit risk.  The ONEWEST Defendants

- 23 -

COMPLAINT

1  knew all of this when they acquired the tainted assets, as it was a critical component of their

2  own scheme to further victimize the Plaintiffs.

3      104.   When first the enterprise induced Plaintiffs to enter into mortgages, the

4  enterprise knew their scheme would lead to a liquidity crisis and grave damage to each

5  Plaintiff's property value and thereby result in each Plaintiff's loss of the equity such Plaintiff

6  invested in his house, as well as damaging the Plaintiff's credit rating, thereby causing the

7  Plaintiff additional severe financial damage consisting of the foregoing damages and damages

8  described elsewhere in this Complaint. The enterprise concealed the foregoing from, among

9  others, Plaintiffs, California consumers and regulators. The ONEWEST Defendants' tainted

10  assets have all the imperfections resulting from these fraudulent actions, and the ONEWEST

11  Defendants knew this when they embarked on their campaign to profiteer off of the mortgage

12  carnage and government bail-out money.

13      105.   Based upon the enterprise's position as a leading financial institution and the

14  public statements made by representatives of the enterprise, including in its securities or other

15  public filings, the Plaintiffs reasonably relied upon the statements made by the foregoing and

16  reasonably relied that no material information necessary to their decisions would be withheld

17  or incompletely, inaccurately or otherwise improperly disclosed. In so relying, the Plaintiffs

18  were gravely damaged as described herein.

19      106.   The enterprise initially acted willfully with the intention to conceal and deceive

20  in order to benefit therefrom at the expense of the Plaintiffs. The ONEWEST Defendants

21  thereafter acted deliberately in a massive scheme to crush the last vestiges of wealth from the

22  Plaintiffs, all in a mission to profiteer from the fraud the ONEWEST Defendants had

23  purchased.

24      107.   The other Defendants followed each other's direction because they are either

25  subsidiaries of each other, directly or indirectly owned, controlled and dominated by each

26  other, or because they are in an unequal economic and/or legal relationship with each other by

27  which they are beholden to each other and are thereby controlled and dominated by each other.

28      108.   As a proximate and foreseeable result of the sale of the notes and deeds of trust

regarding Plaintiffs' properties and others similarly situated for more than the actual value of such instruments, securitization pools lacked the cash flow necessary to maintain the securitization pools in accordance with their indentures.

109.    The unraveling of the fraudulent scheme has materially depressed the price of real estate throughout California, and the entire Country, including the real estate owned by Plaintiffs, resulting in the losses to Plaintiffs described herein. It is precisely this loss of value on which the ONEWEST Defendants now seek to capitalize. They would transfer a material portion of that wealth to themselves or those in collusion with them. This scheme includes acquiring the real property at reduced values, collecting U.S. government money for paper losses, and harvesting the future increase on the value of these artificially depressed homes.

110.    There has been considerable press attention and litigation in the United States Bankruptcy Courts and state courts establishing, inter alia, that in many instances the Defendants herein do not have in their possession the original or an authentic copy of the promissory notes with respect to the loans they originated and/or purport to service. Based thereon, based on other litigation of which counsel to Plaintiffs are aware, and based upon Plaintiffs interactions with Defendants, on information and belief, Plaintiffs hereby allege that Defendants have made demand for payment on the Plaintiffs with respect to Plaintiffs' properties at a time when Defendants are incapable of establishing (and do not have any credible knowledge regarding) who owns the promissory notes Defendants are purportedly servicing.

111.    MERS operates an electronic registry designed to track servicing rights and the 20 ownership of mortgages. MERS is sometimes named as the "nominee" for lenders, and at other times MERS is named as the "beneficiary" of the deed of trust on behalf of unknown persons. When a loan is transferred among MERS members, MERS purports to simplif,r the process by avoiding the requirement to re-record liens and pay county recorder filing fees.

112.    For the substantial majority of the Plaintiffs herein, MERS claims to be the owner of the security interest indicated by the mortgages transferred by lenders, investors and their loan servicers in the county land records. MERS claims its process eliminates the need to

- 25 -

COMPLAINT

file assignments in the county land records which lowers costs for lenders and consumers by reducing county recording revenues from real estate transfers and provides a central source of information and tracking for mortgage loans.

113.   Based upon published reports, including the MERS website, on information and belief, MERS does not: (1) take applications for, underwrite or negotiate mortgage loans; (2) make or originate mortgage loans to consumers; (3) extend credit to consumers; (4) service mortgage loans; or (5) invest in mortgage loans.

114.   MERS has been used to facilitate the unlawful transfers of mortgages, unlawful pooling of mortgages and the injection into the United States banking industry of un-sourced (i.e., unknown) funds, including, without limitation, improper off-shore funds.

115.   Plaintiffs are informed and thereon believe that MERS has been listed as beneficial owner of more than half the mortgages in the United States.

116.   In 2001, Congress found that "money laundering, and the defects in financial transparency on which money launderers rely, are critical to the financing of global terrorism and the provision of funds for terrorist attacks." Congress specifically found that "money launderers subvert legitimate financial mechanisms and banking relationships by using them as protective covering for the movement of criminal proceeds and the financing of crime and terrorism..."

117.   On information and belief, during periods relevant to the other acts complained of in this Complaint, Defendants did not: (1) establish due diligence policies, procedures and controls reasonably designed to detect and report instances of money laundering, (2) establish procedures to take reasonable and practicable measures to verify the identity of those applying for an account with the institution and maintain records of the information used to verify a person's identity, including name, address, and other identifying information, (3) determine and report the sources of funds used for the mortgages they originate and service, as well as the source of funds used to acquire any mortgages, or (4) disclose to Plaintiffs the identities, address and telephone numbers of transferees of their mortgages.

118.   At the same time, Defendants continue to issue notices of default in violation of

- 26 -

COMPLAINT

Cal. Civil Code § 2923.5 and despite assurances that the failures will be remedied, corrective

action is dilatory, at best.

      119.    The foregoing is indicative of the Defendants' bad acts. Those bad acts include,

but are not limited to:

      a.   The intentional efforts to frustrate Plaintiffs and other borrowers seeking

            information about their mortgages and loan modifications.

      b.   Wanton violations of laws designed to keep unsourced money out of the United

            States real estate market.

      c.   Intentional violation of Cal. Civil Code § 2923.5 and dilatory steps to remedy

            those failures, even when notified thereof.

      120.    By the foregoing acts, Defendants are intentionally making it difficult or

impossible for victims of Defendants' massive mortgage fraud and statutory violations to

enforce their rights. This is all in furtherance of Defendants' scheme to profit from the misery

of the Plaintiffs.

      121.    By the foregoing acts, Defendants are intentionally making it difficult or

impossible for victims of Defendants' massive mortgage fraud and statutory violations to

enforce their rights. This is all in furtherance of Defendants' scheme to profit from the misery

of the Plaintiffs. In addition to the foregoing allegations, venue is proper in this County in

accordance with Section 395(a) of the California Code of Civil Procedure because, on

information and belief, some or all of the Defendants working in California to achieve the

unlawful and tortuous objectives set forth herein, reside in and/or do business in this County

and committed the torts and unlawful acts alleged herein in this County. This Court has

jurisdiction over this action under the California Constitution, Article V, Section 10, because

this case is not a cause given by statute to other trial courts. This Court has jurisdiction over

the defendants because a substantial portion of the wrongdoing alleged in this Complaint took

place in California, the Defendants are authorized to do business here, the Defendants have

sufficient minimum contacts with California and/or otherwise intentionally avail themselves of

the markets in California through the promotion, marketing, sale, maintenance . . . and now

1   wrongful exercise of real property rights and foreclosure rights – with respect to realty in

2   California, to render the exercise of jurisdiction by California courts permissible under

3   traditional notions of fair play and substantial justice.

### FIRST CAUSE OF ACTION

**(By All Plaintiffs – Fraudulent Concealment – Against the ONEWEST Defendants)**

6   122.    Paragraphs 1 through 121 are hereby incorporated by reference as though fully

7   set forth herein.

8   123.    The enterprise purchased by the ONEWEST Defendants had exclusive

9   knowledge not accessible to Plaintiffs of material facts pertaining to its mortgage lending

10  activities that it did not disclose to Plaintiffs at the time it was entering into contracts with

11  Plaintiffs. As more fully alleged herein, these facts included false appraisals, violation of

12  underwriting guidelines, the intent to sell Plaintiffs' mortgages above their actual values to bilk

13  investors and knowledge that the scheme would result in a liquidity crisis that would gravely

14  damage Plaintiffs.

15  124.    Further, in connection with entering into contracts with Plaintiffs, the enterprise

16  purchased by the ONEWEST Defendants made partial (though materially misleading)

17  statements and other disclosures as to their prominence and underwriting standards in the

18  public releases, on their web site, in their literature and at their branch offices. However, the

19  enterprise purchased by the ONEWEST Defendants suppressed material facts relating thereto

20  as set forth above. The enterprise purchased by the ONEWEST Defendants knew that the

21  mortgages would be "pooled," and "securitized sale."

22  125.    The enterprise purchased by the ONEWEST Defendants also knew that within a

23  foreseeable period, its investors would discover that the enterprise's mortgagors could not

24  afford their loans and the result would be foreclosures and economic devastation. It was the

25  movie The Sting in real life, with real lives and with people whose homes were often times

26  their only asset.

27  126.    The enterprise purchased by the ONEWEST Defendants was more dependent

28  than many of their competitors on selling loans it originated into the secondary mortgage

- 28 -

COMPLAINT

1  market, an important fact it disclosed to investors. The enterprise expected that the

2  deteriorating quality of the loans that the enterprise was writing, and the poor performance over

3  time of those loans, would ultimately curtail the enterprise's ability to sell those loans in the

4  secondary mortgage market.

5      127.    The enterprise purchased by the ONEWEST Defendants misled borrowers,

6  potential borrowers and investors by failing to disclose substantial negative information

7  regarding the enterprise's loan products, including:

8        a.   The increasingly lax underwriting guidelines used by the enterprise in

9             originating loans;

10        b.   The enterprise's pursuit of a "matching strategy" in which it matched the terms

11             of any loan being offered in the market, even loans offered by primarily

12             subprime originators;

13        c.   The high percentage of loans it originated that were outside its own already

14             widened underwriting guidelines due to loans made as exceptions to guidelines;

15        d.   The enterprise's definition of "prime" loans included loans made to borrowers

16             with FICO scores well below any industry standard definition of prime credit

17             quality;

18        e.   The high percentage of the enterprise's subprime originations that had a loan to

19             value ratio of 100%; and

20        f.   The enterprise's subprime loans had significant additional risk factors, beyond

21             the subprime credit history of the borrower, associated with increased default

22             rates, including reduced documentation, stated income, piggyback second liens,

23             and LTVs in excess of 95%.

24      128.    The enterprise knew this negative information from numerous reports they

25  regularly received and from emails and presentations prepared by the enterprise's chief credit

26  risk officer. The enterprise nevertheless hid this negative information from the Plaintiffs.

27      129.    Plaintiffs did not know the concealed facts, but advanced money to Defendants

28  at the demand of Defendants throughout all periods up to and including the date of this

1  Complaint.

2       130.    The enterprise intended to deceive Plaintiffs. As described herein, that deception

3  was essential to their overall plan to bilk investors, trade on inside information and otherwise

4  pump the value of the enterprise's stock.

5       131.    The enterprise was one of the nation's leading providers of mortgages. It was

6  highly regarded and by dint of its campaign of deception through securities filings, press

7  releases, web site and branch offices, the enterprise had acquired a reputation for performance

8  and quality underwriting. As a result, Plaintiffs reasonably relied upon the deception of the

9  enterprise.

10      132.    As a proximate result of the foregoing concealment by the enterprise, California

11  property values have precipitously declined and continue to decline, gravely damaging

12  Plaintiffs by materially reducing the value of their primary residences, depriving them of access

13  to equity lines, second mortgages and other financings previously available based upon

14  ownership of a primary residence in California, in numerous instances leading to payments in

15  excess of the value of their properties, thereby resulting in payments with no consideration and

16  often subjecting them to reduced credit scores (increasing credit card and other borrowing

17  costs) and reduced credit availability.

18      133.    In fact, property values across the United States of America precipitously

19  declined prior to the ONEWEST Defendants acquiring the tainted mortgage assets and the

20  property values continue to decline, gravely damaging Plaintiffs by materially reducing the

21  value of their primary residences, depriving them of access to equity lines, second mortgages

22  and other financings previously available based upon ownership of their primary residences, in

23  numerous instances leading to payments in excess of the value of their properties, thereby

24  resulting in payments with no consideration and often subjecting them to reduced credit scores

25  (increasing credit card and other borrowing costs) and reduced credit availability

26      134.    The ONEWEST Defendants acquired the mortgages or rights related thereto

27  with knowledge of the fraudulent operations of the enterprise.

28      135.    The ONEWEST Defendants can have no more rights in the mortgage assets than

- 30 -

COMPLAINT

1   their predecessors.

2          136.    Without limiting the damages as described elsewhere in this Complaint,

3   Plaintiffs damages arising from this Cause of Action also include loss of equity in their houses,

4   costs and expenses related to protecting themselves, reduced credit scores, unavailability of

5   credit, increased costs of credit, reduced availability of goods and services tied to credit ratings,

6   increased costs of those services, as well as fees and costs, including, without limitation,

7   attorneys' fees and costs.

8          137.    To this day, the ONEWEST Defendants profess willingness to modify Plaintiffs'

9   loans in accordance with law, but nonetheless they persist to this day in their secret plan to

10  deprive Plaintiffs of their rights.

11         138.    As a result of the foregoing, Plaintiffs' damages herein are exacerbated by a

12  continuing decline in residential property values and further erosion of their credit records.

13         139.    First the enterprise's concealments as to the pervasive mortgage fraud, and then

14  the ONEWEST Defendants' concealments, both as to the their scheme to profiteer from the

15  mortgage melt-down and as to their purported efforts to resolve loan modifications with

16  Plaintiffs, are substantial factors in causing the harm to Plaintiffs described in this Complaint.

17         140.    Defendants acted outrageously and persistently with actual malice in performing

18  the acts alleged herein and continue to do so.  Accordingly, Plaintiffs are entitled to exemplary

19  and punitive damages in a sum according to proof and to such other relief as is set forth below

20  in the section captioned Prayer for Relief which is by this reference incorporated herein.

21         141.    Inclusive of all compensatory, special and exemplary damages, as well as

22  inclusive of costs and attorneys' fees, each Plaintiff herein is entitled to recover and seeks to

23  recover no more than $70,000 in total.

24                          **SECOND CAUSE OF ACTION**

25  **(By All Plaintiffs –Intentional Misrepresentation – Against the ONEWEST Defendants)**

26         142.    Paragraphs 1 through 141 are hereby incorporated by reference as though fully

27  set forth herein.

28         143.    From 2005 through 2007, the enterprise purchased by the ONEWEST

- 31 -

COMPLAINT

1    Defendants misled the public, including Plaintiffs, by falsely assuring them that the enterprise

2    was primarily a prime quality mortgage lender which had avoided the excesses of its

3    competitors. As described herein with specific examples, affirmative misrepresentations and

4    material omissions permeated the enterprise's website, customer and investor materials,

5    required securities filings and presentations.

6        144.   The enterprise purchased by the ONEWEST Defendants underwent

7    unprecedented expansion by, among other things, aggressively making loans which were

8    unsupported by documents, pushed through impotent loan committees, and taken by unworthy

9    borrowers who were destined to be unable to repay the loans at the time the loans were made.

10       145.   The enterprise purchased by the ONEWEST Defendants never disclosed or

11   explained their aggressive business model which was built on making these loans which were

12   destined to become non-performing assets.

13       146.   The enterprise purchased by the ONEWEST Defendants never made any

14   disclosures in its Forms 10-Q or 10-K for 2005, 2006, or 2007 about the unprecedented

15   expansion of its underwriting guidelines. Instead, the enterprise purchased by the ONEWEST

16   Defendants made public statements from 2005 through 2007 that were intended to mislead

17   Plaintiffs about the increasingly aggressive underwriting at the enterprise and the financial

18   consequences of those widened underwriting guidelines.

19       147.   Nothing disclosed or provided by the enterprise purchased by the ONEWEST

20   Defendants informed Plaintiffs that the enterprise included in its prime category loans with

21   FICO scores below 620. Nor did the enterprise purchased by the ONEWEST Defendants

22   inform Plaintiffs that the "prime non-conforming" category included loan products with

23   increasing amounts of credit risk, such as (1) reduced and/or no documentation loans; (2) stated

24   income loans; or (3) loans with loan to value or combined loan to value ratios of 95% and

25   higher. Finally, the enterprise purchased by the ONEWEST Defendants did not disclose that

26   enterprise's riskiest loan product, the Pay-Option ARM, was classified as a "prime loan."

27       148.   The enterprise purchased by the ONEWEST Defendants made affirmative

28   misleading public statements in addition to those in the periodic filings that were designed to

- 32 -

COMPLAINT

1  falsely reassure Plaintiffs about the nature and quality of the enterprise's underwriting.

2      149.   Specifically, the enterprise purchased by the ONEWEST Defendants repeatedly

3  emphasized the enterprise's underwriting quality in public statements from 2005 through 2007.

4      150.   The growing network of branches, loan offices, and outside originators

5  ("Network") feeding the enterprise purchased by the ONEWEST Defendants participated in

6  making the loans and knowingly and intentionally assisted in drafting the false and misleading

7  statements delivered to the public, including Plaintiffs herein.

8      151.   The foregoing misrepresentations were made with the intention that Plaintiffs

9  rely thereon.  It was important to the enterprise purchased by the ONEWEST Defendants that

10  Plaintiffs rely on its misrepresentations so that Plaintiffs would come to a false understanding

11  as to the nature of the enterprise.  The foregoing misrepresentations were specifically intended

12  to convince Plaintiffs to take mortgages from the enterprise.

13      152.   The campaign of misinformation succeeded.  Plaintiffs relied upon the

14  misrepresentations and entered into mortgages with the enterprise purchased by the ONEWEST

15  Defendants and Plaintiffs have continued to be burdened and to make payments on said

16  mortgages.

17      153.   By reason of the prominence of the enterprise purchased by the ONEWEST

18  Defendants, the campaign of deception as to its business plans and the relationship of trust

19  developed between the enterprise purchased by the ONEWEST Defendants and Plaintiffs,

20  Plaintiffs were justified in relying upon the enterprise's representations.

21      154.   The aforementioned Network supporting the enterprise purchased by the

22  ONEWEST Defendants and other representatives of the enterprise cooperated with each other

23  to plan and implement the scheme described herein.

24      155.   The Network participated in developing the misrepresentations to borrowers,

25  including Plaintiffs herein and to investors.  They shared in the financial benefits of the scheme

26  and ratified and approved of the material steps therefore taken by the other Defendants.

27      156.   Conversely, the Defendants other than the ONEWEST Defendants approved of,

28  ratified and shared in the fees and other revenue received by the Network arising from its

- 33 -

COMPLAINT

participation in the scheme. The ONEWEST Defendants in 2009 approved of, ratified and are now seeking to profit from this same scheme through the acquisition at a discount of tainted mortgages that it is seeking to enforce as if they were not tainted.

157.    As a result of relying upon the foregoing misrepresentations, each Plaintiff entered into a mortgage contract with the enterprise purchased by the ONEWEST Defendants and each Plaintiff has continued to be economically burdened by these mortgage contracts notwithstanding that they have been continually defrauded in entering into the contracts all as set forth above.

158.    In fact, the appraisals were inflated. The enterprise purchased by the ONEWEST Defendants did not utilize quality underwriting processes. The enterprise's financial condition was not sound, but was a house of cards ready to collapse, as the enterprise well knew, but Plaintiffs did not. Further, Plaintiffs' mortgages were not refinanced with fixed rate mortgages and neither the enterprise nor any of the Defendants ever intended that they would be.

159.    As a result of the scheme described herein, Plaintiffs could not afford the mortgages when the variable rate features and/or balloon payments kicked in.

160.    Further, as a result of the scheme, Plaintiffs could not refinance or sell their residence without suffering a loss of their equity investments.

161.    As a result of the foregoing, Plaintiffs have lost all or a substantial portion of the equity invested in their houses and suffered reduced credit ratings and increased borrowing costs, among other damages described herein.

162.    The ONEWEST Defendants seek to enforce the mortgages irrespective of this massive fraud.

163.    The ONEWEST Defendants acquired the mortgages or rights related thereto with knowledge of the fraudulent operations of the enterprise.

164.    The ONEWEST Defendants can have no more rights in the mortgage assets than their predecessors.

165.    Plaintiffs' reliance on the misrepresentations of the enterprise purchased by the

- 34 -
COMPLAINT

1   ONEWEST Defendants, appraisers and the other Defendants, all ratified by the Defendants,

2   was a substantial factor in causing Plaintiffs' harm.

3       166.    The ONEWEST Defendants represented to multiple Plaintiffs that they would be

4   assisted by the ONEWEST Defendants in a loan modification. As described herein, that

5   representation was false. Defendants knew that representation was false when they made it.

6       167.    Because of new laws pertaining to loan modifications and the ONEWEST

7   Defendants' insistence that they had a genuine interest in complying therewith and in keeping

8   borrowers in their homes, Plaintiffs reasonably relied on the representations.

9       168.    By delaying Plaintiffs from pursuing their rights and by increasing Plaintiffs'

10  costs and the continuing erosion of each Plaintiff's credit rating, each Plaintiff's reliance

11  harmed that Plaintiff, further eroding values in furtherance of the ONEWEST Defendants'

12  scheme.

13      169.    Without limiting the damages as described elsewhere in this Complaint,

14  Plaintiffs damages arising from the matters complained of in this Cause of Action also include

15  loss of equity in their houses, costs and expenses related to protecting themselves, reduced

16  credit scores, unavailability of credit, increased costs of credit, reduced availability of goods

17  and services tied to credit ratings, increased costs of those services, as well as fees and costs,

18  including, without limitation, attorneys' fees and costs.

19      170.    Plaintiffs' reliance on the representations made by the enterprise purchased by

20  the ONEWEST Defendants and then by the ONEWEST Defendants was a substantial factor in

21  causing Plaintiffs' harm.

22      171.    Plaintiffs are entitled to such relief as is set forth in this Cause of Action and

23  such further relief as is set forth below in the section captioned Prayer for Relief which is by

24  this reference is incorporated herein as though fully set forth at length. Inclusive of all

25  damages, all costs, all attorneys fees and all exemplary damages, each Plaintiff is entitled to a

26  sum not exceeding $70,000 as compensation for Defendants' wrongful acts.

27

28

- 35 -
COMPLAINT

## THIRD CAUSE OF ACTION

### (By All Plaintiffs – Negligent Misrepresentation – Against All ONEWEST Defendants)

172.    Paragraphs 1 through 171 are hereby incorporated by reference as though fully set forth herein.

173.    Although the enterprise purchased by the ONEWEST Defendants and other members of the Network may have reasonably believed some or all of the representations they made, described in this Complaint, were true, none of them had reasonable grounds for believing such representations to be true at the time: (a) the representations were instructed to be made, as to those Defendants instructing others to make representations, or (b) at the time the representations were made, as to those Defendants making representations and those Defendants instructing others to make the representations, or (c) at the time the representations were otherwise ratified by the Defendants.

174.    Such representations, fully set forth in the First and Second Causes of Action and previous sections of this Complaint, were not true.

175.    The enterprise purchased by the ONEWEST Defendants, including the Defendants making representations, intended that Plaintiffs rely upon those misrepresentations.

176.    As described herein, Plaintiffs reasonably relied on those representations.

177.    By reason of the prominence of the enterprise purchased by the ONEWEST Defendants and the campaign of deception as to its business plans and the relationship of trust developed between the enterprise and Plaintiffs, Plaintiffs were justified in relying upon the enterprise's and Defendants' representations.

178.    As a result of relying upon the foregoing misrepresentations, each Plaintiff entered into a mortgage contract with the enterprise purchased by the ONEWEST Defendants.

179.    As a result of scheme described herein, Plaintiffs could not afford his or her mortgage when its variable rate features and/or balloon payments kicked in.  Further, as a result of the Defendants continuing scheme, Plaintiffs could not refinance or sell his or her residence without suffering a loss of Plaintiff's equity.

- 36 -

COMPLAINT

180.   The ONEWEST Defendants seek to enforce the mortgages irrespective of this massive fraud.

181.   The ONEWEST Defendants acquired the mortgages or rights related thereto with knowledge of the fraudulent operations of the enterprise.

182.   The ONEWEST Defendants can have no more rights in the mortgage assets than their predecessors.

183.   Without limiting the damages as described elsewhere in this Complaint, Plaintiffs damages as a result of the foregoing also include loss of equity in their houses, costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs.

184.   Plaintiffs are entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

185.   Inclusive of all compensatory damages, attorneys' fees and costs, each Plaintiff herein is entitled to and seeks recovery of no more than $70,000 for the acts of Defendants alleged herein.

### FOURTH CAUSE OF ACTION

**(Injunctive Relief for Violation of Cal. Civil Code § 2923.5 – By Plaintiffs  – Against All ONEWEST Defendants)**

186.   Paragraphs 1 through 185 are incorporated by reference as though fully set forth herein.

187.   Pursuant to California Civil Code, § 2923.5, the Defendants – and each of them – are prohibited by statute from recording a Notice of Default against the primary residential property of any Californian without first making contact with that person as required under § 2923.5 and then interacting with that person in the manner set forth in detail under § 2923.5. An exception to this rule of law exists in the event the Defendants are unable with due

- 37 -

COMPLAINT

1    diligence to contact the property owner.

2        188.    Pursuant to laws and ordinances in jurisdictions other than California, which

3    laws or ordinances are similar to California Civil Code, § 2923.5, whereby certain protections

4    are afforded homeowner borrowers,  the Defendants – and each of them – are prohibited by

5    statute from recording a Notice of Default and/or proceeding to institute or initiate foreclosure

6    proceedings against the primary residential property of any homeowner without first making

7    contact with that person as required, and then interacting with that person in the manner set

8    forth in the specific statute or ordinance.

9        189.    With respect to all Plaintiffs in this cause of action, the realty that is the subject

10    hereof was and is their primary residential dwelling.

11        190.    On information and belief, the Defendants, and each of them, caused Notices of

12    Default to be recorded or disseminated against the primary residential properties of the

13    California Plaintiffs named in this cause of action absent compliance with California Civil

14    Code, § 2923.5.  Included in the noncompliance, Defendants, and each of them, caused

15    declarations to be recorded in the public records that were – each of them – false.  This act also

16    violates § 2923.5 and other California laws precluding the filing of false statements.

17        191.    The Defendants, and each of them, caused Notices of Default to be recorded

18    and/or initiated foreclosure proceedings against the primary residential properties of the Non-

19    California Plaintiffs named in this cause of action absent compliance with State specific laws,

20    statutes, or ordinances.  Included in the noncompliance, Defendants, and each of them, caused

21    declarations to be recorded in the public records that were – each of them – false.  This act also

22    violates other laws precluding the filing of false statements

23        192.    Plaintiffs are entitled to such relief as is set forth in this Cause of Action and

24    such further relief as is set forth below in the section captioned Prayer for Relief which is by

25    this reference is incorporated herein as though fully set forth at length.

26

27

28

- 38 -

COMPLAINT

**FIFTH CAUSE OF ACTION**

**(By All Plaintiffs – Unfair Competition – Against All ONEWEST Defendants)**

193.    Paragraphs 1 through 192 are incorporated by reference as though fully set forth herein.

194.    Defendants' actions in implementing, perpetrating and then extending their fraudulent scheme of inducing Plaintiffs to accept mortgages for which they were not qualified based on inflated property valuations and undisclosed disregard of their own underwriting standards and the sale of overpriced collateralized mortgage pools, all the while knowing that the plan would crash and burn, taking the Plaintiffs down and costing them the equity in their homes and other damages, violates numerous federal and state statutes and common law protections enacted for consumer protection, privacy, trade disclosure, and fair trade and commerce.

195.    The enterprise first perpetrated this fraudulent scheme of selling off overpriced loans by making willful and inaccurate credit disclosures regarding borrowers, including Plaintiffs, to third parties. This false credit disclosure was critical to the success of Defendants' continued sales of the massive pools of mortgage loans necessary to perpetuate the scheme.

196.    The ONEWEST Defendants extended this fraud in connection with their scheme to acquire these assets at deflated values, knowing the fraud that had been committed, but with the specific intent to seek to attempt to enforce the mortgages as sound and legitimate instruments.

197.    The enterprise was first aware that if the true credit profiles of the borrowers and the values of their real estate were accurately disclosed, the massive fraudulent scheme would end. As a result, the enterprise repeated, reinforced and embellished their false disclosures.

198.    The ONEWEST Defendants were aware of the fraudulent scheme that had been perpetrated by the enterprise whose assets and operations it was acquiring.

199.    The enterprise knew the borrowers' credit was inadequate to support continued

1   loan payments, absent unsustainable inflation of property values. These pervasive false credit
2   disclosures to third parties (including purchasers of bundled mortgage pools created by the
3   Defendants) constituted false credit reports in violation of the Fair Credit Reporting Act, 15
4   U.S.C. §§ 1681 et seq. and these pervasive false disclosures permitted the Defendants to
5   continue their scheme and victimize the Plaintiffs.

6       200.   These pervasive false disclosures also caused the bubble to burst. Once it
7   became known that some of the information provided by the enterprise was false, the market
8   for the sale of bundled loans dried up. Notwithstanding their knowledge of the fraudulent
9   nature of the assets they were seeking to enforce, the ONEWEST Defendants began to issue
10  foreclosure notices, property values continued to drop, and then, under the weight of deflation
11  in a market that requires inflation, the equity investments made by Plaintiffs and others in their
12  homes was lost. . . . and then Plaintiffs were lost in the greatest economic recession since the
13  1930s.

14      201.   The foregoing violations were in furtherance of the fraud perpetrated on
15  Plaintiffs. In fact, the enterprise could not have told the truth in their public filings without that
16  truth becoming known to Plaintiffs.

17      202.   Conversely, the false filings gave additional credence and support to omissions,
18  concealment, promises and inducements. The ONEWEST Defendants knew of all of these
19  violations of law in acquiring the tainted assets and operations and then in seeking to enforce
20  these mortgage obligations, when the ONEWEST Defendants knew of these meritorious
21  defenses.

22      203.   The forgoing fraudulent concealment, material misstatements, and the
23  intentional violations of state and federal statutes cited herein constitute unlawful, unfair and
24  fraudulent business acts or practices and so constitute unfair business practices within the
25  meaning of the California Unfair Practices Act. Cal. Bus. & Prof. Code §§ 17200, 17500.
26  Sections 17200 et seq. of the California Business & Professions Code provides, in the
27  disjunctive, for liability in the event of any such "unlawful, unfair or fraudulent business act or
28  practice."

204.    The violations described herein are unlawful under numerous state and federal laws forming a reality that the violations are a basis for liability under § 17200 of the Business and Professions Code, as is the unlawful and fraudulent activity described herein.

205.    The actions described herein are unfair and patently fraudulent in that they were conducted for the specific purposes of first perpetuating an unlawful and unsustainable investment scheme and then perpetrating a fraudulent foreclosure and confiscatory scheme.

206.    As a result of the actions, concealment and deceit described herein, each of the Plaintiffs has suffered material financial injury in fact, including as described elsewhere in this Complaint, loss of equity in their houses, costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs.

207.    As a further result of the actions, concealment and deceit described herein, each of the Plaintiffs has lost money or property as a result of such unfair competition.

208.    California Civil Code § 2923.5 requires that each mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to California Civil Code § 2924 until 30 days after initial contact is made as required therein, or 30 days after satisfying the due diligence requirements to contact the mortgage described therein.

209.    Defendants violated the foregoing law by causing a notice of default to be filed against Plaintiffs without the mandatory notice.  Defendants did not diligently endeavor to contact the Plaintiffs as required by § 2923.5(g) and Defendants thereby also violated California Civil Code §§ 2923.5 and 2924.

210.    As a result of the foregoing unlawful conduct, Plaintiffs suffered further injury in fact by the filing of notices of default and as such the Plaintiffs suffered monetary and property loss.

211.    Such injuries and loss included diminished credit scores with a concomitant increase in borrowing costs and diminished access to credit, fees and costs, including, without limitation, attorneys' fees and costs with respect to wrongful notices of default and loss of some

1    or all of the benefits appurtenant to the ownership and possession of real property.

2    212.    The foregoing unlawful activities were pervasive and violate Business and

3    Professions Code §§ 17200 et seq.

4    213.    As a result of Defendants' unfair competition, Plaintiffs are entitled to restitution

5    for all sums received by Defendants with respect to Defendants' unlawful and/or unfair and/or

6    fraudulent conduct, including, without limitation, interest payments made by Plaintiffs, fees

7    paid to Defendants, including, without limitation, the excessive fees paid at Defendants'

8    direction, premiums received upon selling the mortgages at an inflated value and moneys

9    received from government agencies for "losses" incurred by Defendants.

10    214.    Plaintiffs are also entitled to the issuance of a temporary restraining order, a

11    preliminary injunction, and a permanent injunction restraining and enjoining Defendants from

12    any further concealment with respect to the sale or enforcement of notes and mortgages, or any

13    of the other misconduct set forth above.

14    215.    Each of the enterprise whose assets ONEWEST purchased has an affirmative

15    burden to ascertain verify and prove, among other things, the identity, source, character, origin,

16    and legitimacy of the funds which they controlled, handled, and/or facilitated in its

17    transactions.

18    216.    Plaintiffs are informed and believe and hereon allege that none of the enterprise

19    whose assets ONEWEST purchased or can comply with the strict rules imposed by the

20    PATRIOT ACT, that both the enterprise whose assets ONEWEST purchased and the

21    ONEWEST Defendants have acted in direct violation of these laws, and that the ONEWEST

22    Defendants must forfeit any and all claims, liens, encumbrances, debts, or obligations from

23    others in accordance with the provisions of California's unfair competition law.

24    217.    Plaintiffs are entitled to such injunctive and restitutional relief as is set forth in

25    this Cause of Action and such further relief as is set forth below in the section captioned Prayer

26    for Relief which is by this reference incorporated herein as though fully set forth at length.

27                              **SIXTH CAUSE OF ACTION**

28    **(By All Plaintiffs – Breach of Contract – Against All ONEWEST Defendants)**

- 42 -

COMPLAINT

218.   Paragraphs 1 through 217 are incorporated by reference as though fully set forth herein.

219.   Defendants' acceptance of TARP money created an obligation to modify loans outstanding on Plaintiffs' real estate to the extent Defendants were pronouncing rights thereto, to assist borrowers, and to otherwise use the TARP funds for the benefit of, among others, the Plaintiffs herein.

220.   In fact, the Plaintiffs are intended third party beneficiaries of the contracts between ther United States Government, certain intermediaries and the Defendants.

221.   Defendants, and each of them, breached their contractual obligations to Plaintiffs as set forth herein.  Defendants further breached the contractual obligations owing to each Plaintiff in the manners alleged hereinabove.

222.   As a proximate and foreseeable result of said breaches of contract, Plaintiffs have been damaged in a sum according to proof, which – inclusive of all damages, costs, and attorneys' fees – is equal to or less than $70,000 for each Plaintiff herein.

223.   Plaintiffs are entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein as though fully set forth at length.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.   General and special damages according to proof under the First, Second, Third and Sixth Causes of Action, in the sums set forth hereinabove;

2.   Declaratory relief voiding the notes and mortgages of Plaintiffs held or serviced by the Defendants and temporary, preliminary, and permanent injunctive relief under the First, Second, Fourth, Fifth and Sixth Causes of Action.

3.   Statutory relief according to proof under the Fifth Cause of Action;

4.   Restitution according to proof under the Fifth Cause of Action;

- 43 -

COMPLAINT

5. Temporary, preliminary, and permanent injunctive forfeiture relief under all causes of action;

6. On all causes of action, for costs of suit herein;

7. On all causes of action, for pre- and post-judgment interest;

8. On all causes of action for which attorney's fees may be awarded pursuant to the governing contract, by statute or otherwise, reasonable attorneys fees; and

9. On all causes of action, for such other and further relied as this Court may deem just and proper so that each Plaintiff shall recover no more than $70,000 in restitutionary or compensatory damages and so that each Plaintiff shall receive a judicial determination that the mortgage lien alleged to exist against their particular property is null and void *ab initio*.

KRAMER & KASLOW

Dated: December **30**, 2010      By: _____

Philip A. Kramer
Attorneys for Plaintiffs

- 44 -

COMPLAINT

# EXHIBIT 2

Philip A. Kramer    SBN # 113969
KRAMER & KASLOW
23901 Calabasas Road, Suite 2010
Calabasas, CA  91302
Tel: (818) 224-3900
Fax: (818) 224-3911

Attorneys for Plaintiffs

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 1 1 2011

John A. Clarke, Executive Officer/ Clerk
By: Moses Soto, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ANTONIO MARQUETTE, an individual; MARIA G. ANZALDO, an individual; GUILLERMO ANZALDO, an individual; ARTEMO B. ROQUE, JR., an individual; PEDRO HERNANDEZ, an individual; GABRIELA HERNANDEZ, an individual; JERRY HERNANDEZ, an individual; DAT THANH NGO, an individual; ZAVEN ZARDARAYAN, an individual; DANA HORITA, an individual; KEVIN R. WESTOVER, an individual; KATHERINE WESTOVER, an individual; ANNE SIMINUK, an individual; JOSEPH FRANKOWIAK, an individual; RICHARD STEVENS, an individual; GLENN GERARD, an individual; ROBERT MEDEROS, an individual; SEGUNDO TACOAMAN, an individual; CHRISTINA HAYS, an individual; ANDREW MASSINGILL, an individual; GEORGE MARTINEZ, an individual; ZACHARY ENGLEDOW, an individual; LENIN PATINO, an individual; YUREK SIEMIATOWSKI, an individual; ROBERT WHITMORE, an individual; FIONA WHITMORE, an individual; DAVID DRAGANOVSKI, an individual; GUADALUPE VALENZUELA, an individual; MARISA TAME, an individual; CSABA KISS, an individual; HASSAN ALAEDDINE, an individual; KEVIN MOORE, an individual; CAROL SEVERANCE, an individual; CARLOS GRIFFITH, an individual; HANNAH HEART, an individual; DENIS HERNANDEZ, an individual; MARK PITTSENBARGER, an individual; DOUG RICH, an individual; HARTSELL D. THOMAS, an individual; JUDITH | Case No. BC452266<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1.  **FRAUDULENT CONCEALMENT [VIOLATION OF CAL. CIV. CODE §§ 1572, 1709 AND 1710] (INCLUDING DECLARATORY AND INJUNCTIVE RELIEF TO VOID MORTGAGE);**<br>2.  **INTENTIONAL MISREPRESENTATION [VIOLATION OF CAL. CIV. CODE §§ 1572, 1709 AND 1710] (INCLUDING DECLARATORY AND INJUNCTIVE RELIEF TO VOID MORTGAGE);**<br>3.  **NEGLIGENT MISREPRESENTATION [VIOLATION OF CAL. CIV. CODE §§ 1572, 1709 AND 1710] (INCLUDING DECLARATORY AND INJUNCTIVE RELIEF TO VOID MORTGAGE);**<br>4.  **VIOLATION OF CAL. CIVIL CODE § 2923.5;**<br>5.  **UNFAIR COMPETITION [VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200 ET** |

| | |
|---|---|
| 1 | MONTELEONE, an individual; SHIRLISA EDWARDS, an individual; ALAN BURCIA, an individual; KARA DUFFY, an individual; |
| 2 | MOISES SANCHEZ, an individual; WILLIAM SULLIVAN, an individual; |
| 3 | MERY MARBUN, an individual; VENDORA HAWKINS, an individual; |
| 4 | JOAQUIN HAWKINS, an individual; STEVE BARRAZA, an individual; |
| 5 | CLAUDELLE FAUSTIN, an individual; DARRYL HUNT, an individual; GEORGE |
| 6 | MARTINEZ, an individual; ANTONIO TAME, an individual; SIMON MORZIANO, |
| 7 | an individual; MAYRA CAZARES, an individual; SONCERIA MORRIS, an |
| 8 | individual; MICHELLE MACDONALD, an individual; MARIO JIMINEZ, an individual; |
| 9 | MARGARITO PEREZ, an individual; HUGH M. COLLINS, an individual; |
| 10 | CANDIDA SANTANA, an individual; GERMAN TORRES, an individual; |
| 11 | MAHAMALAGE FERNANDO, an individual; ROSE JACQUES, an individual; |
| 12 | GARY RIMARCIK, an individual; EDUARDO CRUZ, an individual; VICTOR |
| 13 | LOPEZ, an individual; TURKER ERGUN, an individual; ERNEST MAYS, an |
| 14 | individual; MIGUEL JUAREZ, an individual; LELAND LYNK, an individual; |
| 15 | FILBERTO PEREZ, an individual; LAURA CAMPOS, an individual; MARIA LEVIN, |
| 16 | an individual; DAVID IOVINO, an individual; ROBERT STERNER, an |
| 17 | individual; ALBERT MORA, an individual; SERGIO BECERRA, an individual; LISA |
| 18 | MCKAY, an individual; WILLIAM KILLHEFFER, an individual; THOMAS |
| 19 | JARRETT, an individual; MIGNON WARREN, an individual; THOMAS |
| 20 | TRIBBLE, an individual; JOHNNY VILELA, an individual; FAZANEH FATA, |
| 21 | an individual; PABLO RESENDIZ, an individual; THERON COOK, an individual; |
| 22 | JACOB HARLOW, an individual; GERARD OGNIBENE, an individual; GREGORY |
| 23 | CANNAN, an individual; JOSE MONTES, an individual; AGUILAR ADOLFO, an |
| 24 | individual; GILBERTO CALDERON, an individual; ERIC JOHNSON, an individual; |
| 25 | CARL POLIZZI, an individual; LOISE MUTHONI KAGIRI, an individual; |
| 26 | ANNETTE GOMEZ, an individual; ROSELINE D'HATI, an individual; DAWN |
| 27 | HARRIS-DEPAOLO, an individual; JULIA |

SEQ.] (INCLUDING INJUNCTIVE RELIEF TO VOID MORTGAGE)

6.    BREACH OF CONTRACT

[JURY TRIAL DEMANDED]

| | |
|---|---|
| 1 | ADAMS, an individual; RONALD WEAKLY, an individual; THOMAS PROUT, an individual; WALLACE |
| 2 | BUTLER, an individual; AIDA MCARTHUR, an individual; JULIA |
| 3 | ADAMS, an individual; ANDREA CHANCELLOR, an individual; JOHN |
| 4 | BOWERS, an individual; MICHELE ST. PIERRE, an individual; JEFFREY EVANS, |
| 5 | an individual; ARCHIBALD SMITH, an individual; JOSE SILVA, an individual; |
| 6 | JASBINDER BRAR, an individual; VIOLA HENRY, an individual; PAMELA |
| 7 | HARRISON, an individual; DOMINICK COVIELLO, an individual; MELBA FORD, |
| 8 | an individual; ERROL LAWRENCE, an individual; GEORGE HERBST, an |
| 9 | individual; ROBERT HALE, an individual; RONNIE TAYLOR, an individual; JET |
| 10 | VILLAVICENCIO, an individual; LARA POWERS, an individual; FADI AWED, an |
| 11 | individual; KALUNGI ASKIA, an individual; CLIFFORD GEWAKE, an |
| 12 | individual; CHERYL SILVEIRA, an individual; JUDITH MUSSELMAN, an |
| 13 | individual; STEVE GUZZETTA, an individual; CRAIG KOROTKO, an |
| 14 | individual; MONIQUE MCCLOSKEY, an individual; LUIS TERRIQUEZ, an |
| 15 | individual; CARL REYNOLDS, an individual; KRISTEN CLASSENS, an |
| 16 | individual; SHARON SCHAEFFER, an individual; MICHAEL LINDER, an |
| 17 | individual; IRMINIA FLORES, an individual; JOHN GRAZIANO, an |
| 18 | individual;  and others similarly situated named herein as ROES 1 through 10,000, |
| 19 | inclusive, |
| 20 | |
| 21 | |
| 22 | Plaintiffs, |
| 23 | |
| 24 | vs. |
| 25 | ONEWEST BANK GROUP LLC, a limited liability company; ONEWEST BANK, FSB, |
| 26 | a Delaware corporation; SCOTT VAN DELLEN, an individual; RICHARD KOON, |
| 27 | an individual; NDEX WEST, LLC, a Limited Liabilty Company; LPS DEFAULT & TITLE |
| 28 | CLOSING, a business entity, form unknown; PRIORITY POSTING & PUBLICATION, a |

COMPLAINT

| | |
|---|---|
| 1 | california corporation; and DOES 1 through 1000, inclusive, |
| 2 | Defendants |

3 ///

4 ///

5 .////

6 ///

7 ///

8 ///

9 ///

10 ///

11 ///

12 ///

13 ///

14 .////

15 .////

16 .////

17 .////

18 .////

19 .////

20 .////

21 .////

22 .////

23 .////

24 .////

25 .////

26 .////

27 .////

28 ///

---

COMPLAINT

Plaintiffs, and each of them, hereby demand a jury trial and allege as follows:

**INTRODUCTION**

1.      This lawsuit arises from, among other things: (i) the deception in inducing Plaintiffs to enter into and continue paying money and considering on loans and mortgages[1] from approximately 2003 through 2007 and which were acquired or are serviced by Defendants; (ii) the fraudulent and illegal use of MERS in connection with those loans and mortgages; (iii) Defendants' failure to perform their obligations required pursuant to accepting TARP funds; (iv) Defendants' breach of Plaintiffs' statutorily protected rights; (v) Defendants' breach and willful violation of numerous consumer and homeowner protection statutes, and willful violations of unfair business practices statues, by, among other things, processing money from unknown sources, in contravention of numerous lawst; (vi) accepting money, transferring alleged assets and foreclosing upon alleged assets in instances where the alleged assets do not exist, and which these Defendants have no right, title, or interest upon which they can act; and (vii) Defendants' continuing tortuous conduct intended to deprive Plaintiffs of their rights and remedies for the foregoing acts, described below. Defendants, among other things, violated laws, breached contracts, and repeatedly and intentionally failed to honor its agreements with borrowers.

2.      Moreover, Defendants, and each of them, wrongfully acted and continue to act as if they are the owner, beneficiary, successor, assignee, servicer, or have some right, title, or interest in Plaintiffs' notes, mortgages, or deeds of trust. In reality, the Defendants, and each of them, are committing and continuing a fraud, by utilizing and foreclosing upon assets that do not exist.

3.      This action seeks, among other things, remedies for the foregoing improper activities, including a massive fraud perpetrated upon Plaintiffs and other borrowers by the Defendants' business that devastated the values of their residences, in most cases resulting in Plaintiffs' loss of all or substantially all of their net worths.

[1] This Complaint uses "mortgage" and "deed of trust" interchangeably. Depending upon the state and other factors, a loan may be secured by either form of security instrument, the deed of trust being the customary instrument in California.

- 1 -

COMPLAINT

**PARTIES**

4.      Plaintiff ANTONIO MARQUETTE is an individual residing in the State of
California, who borrowed money from Defendants or its subsidiaries or affiliates between
January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real
estate. At all times material hereto, Defendants has acted as Servicer or some other control
capacity over processing the loan.

5.      Plaintiff MARIA G. ANZALDO is an individual residing in the State of
California, who borrowed money from Defendants or its subsidiaries or affiliates between
January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real
estate. At all times material hereto, Defendants has acted as Servicer or some other control
capacity over processing the loan.

6.      Plaintiff GUILLERMO ANZALDO is an individual residing in the State of
California, who borrowed money from Defendants or its subsidiaries or affiliates between
January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real
estate. At all times material hereto, Defendants has acted as Servicer or some other control
capacity over processing the loan.

7.      Plaintiff ARTEMO B. ROQUE, JR. is an individual residing in the State of
California, who borrowed money from Defendants or its subsidiaries or affiliates between
January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real
estate. At all times material hereto, Defendants has acted as Servicer or some other control
capacity over processing the loan.

8.      Plaintiff PEDRO HERNANDEZ is an individual residing in the State of
California, who borrowed money from Defendants or its subsidiaries or affiliates between
January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real
estate. At all times material hereto, Defendants has acted as Servicer or some other control
capacity over processing the loan.

9.      Plaintiff GABRIELA HERNANDEZ is an individual residing in the State of
California, who borrowed money from Defendants or its subsidiaries or affiliates between

- 2 -

COMPLAINT

January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

10.    Plaintiff MARGARITO PEREZ is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

11.    Plaintiff JERRY HERNANDEZ is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

12.    Plaintiff DAT THANH NGO is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

13.    Plaintiff ZAVEN ZARDARAYAN is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

14.    Plaintiff DANA HORITA is an individual residing in the State of Washington, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

- 3 -

COMPLAINT

1      15.    Plaintiff KEVIN R. WESTOVER is an individual residing in the State of
2   Arizona, who borrowed money from Defendants or its subsidiaries or affiliates between
3   January 1, 2003 and December 31, 2007, secured by a deed of trust on his real estate.  At all
4   times material hereto, Defendants has acted as Servicer or some other control capacity over
5   processing the loan.

6      16.    Plaintiff KATHERINE WESTOVER is an individual residing in the State of
7   Arizona, who borrowed money from Defendants or its subsidiaries or affiliates between
8   January 1, 2003 and December 31, 2007, secured by a deed of trust on her real estate.  At all
9   times material hereto, Defendants has acted as Servicer or some other control capacity over
10   processing the loan.

11      17.    Plaintiff ANNE SIMINUK is an individual who borrowed money from
12   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,
13   secured by a deed of trust on her real estate.  At all times material hereto, Defendants has acted
14   as Servicer or some other control capacity over processing the loan.

15      18.    Plaintiff JOSEPH FRANKOWIAK is an individual who borrowed money from
16   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,
17   secured by a deed of trust on his real estate.  At all times material hereto, Defendants has acted
18   as Servicer or some other control capacity over processing the loan.

19      19.    Plaintiff RICHARD STEVENS is an individual who borrowed money from
20   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,
21   secured by a deed of trust on his real estate.  At all times material hereto, Defendants has acted
22   as Servicer or some other control capacity over processing the loan.

23      20.    Plaintiff GLENN GERARD is an individual who borrowed money from
24   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,
25   secured by a deed of trust on his real estate.  At all times material hereto, Defendants has acted
26   as Servicer or some other control capacity over processing the loan.

27      21.    Plaintiff ROBERT MEDEROS is an individual who borrowed money from
28   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

- 4 -
COMPLAINT

1    secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

2    as Servicer or some other control capacity over processing the loan.

3         22.    Plaintiff SEGUNDO TACOAMAN is an individual who borrowed money from

4    Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

5    secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

6    as Servicer or some other control capacity over processing the loan.

7         23.    Plaintiff CHRISTINA HAYS is an individual who borrowed money from

8    Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

9    secured by a deed of trust on her real estate. At all times material hereto, Defendants has acted

10   as Servicer or some other control capacity over processing the loan.

11        24.    Plaintiff ANDREW MASSINGILL is an individual who borrowed money from

12   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

13   secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

14   as Servicer or some other control capacity over processing the loan.

15        25.    Plaintiff GEORGE MARTINEZ is an individual who borrowed money from

16   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

17   secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

18   as Servicer or some other control capacity over processing the loan.

19        26.    Plaintiff ZACHARY ENGLEDOW is an individual who borrowed money from

20   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

21   secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

22   as Servicer or some other control capacity over processing the loan.

23        27.    Plaintiff LENIN PATINO is an individual who borrowed money from

24   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

25   secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

26   as Servicer or some other control capacity over processing the loan.

27        28.    Plaintiff YUREK SIEMIATKOWSKI is an individual who borrowed money

28   from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31,

- 5 -

COMPLAINT

2007, secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

29.    Plaintiff ROBERT WHITMORE is an individual who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

30.    Plaintiff FIONA WHITMORE is an individual who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

31.    Plaintiff DAVID DRAGANOVSKI is an individual who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

32.    Plaintiff GUADALUPE VALENZUELA is an individual who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

33.    Plaintiff MARISA TAME is an individual who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

34.    Plaintiff CSABA KISS is an individual who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

35.    Plaintiff HASSAN ALAEDDINE is an individual who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

- 6 -

COMPLAINT

secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted
as Servicer or some other control capacity over processing the loan.

36.    Plaintiff KEVIN MOORE is an individual who borrowed money from
Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,
secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted
as Servicer or some other control capacity over processing the loan.

37.    Plaintiff CAROL SEVERANCE is an individual who borrowed money from
Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,
secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted
as Servicer or some other control capacity over processing the loan.

38.    Plaintiff CARLOS GRIFFITH is an individual who borrowed money from
Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,
secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted
as Servicer or some other control capacity over processing the loan.

39.    Plaintiff HANNAH HEART is an individual who borrowed money from
Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,
secured by a deed of trust on her real estate. At all times material hereto, Defendants has acted
as Servicer or some other control capacity over processing the loan.

40.    Plaintiff DENIS HERNANDEZ is an individual who borrowed money from
Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,
secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted
as Servicer or some other control capacity over processing the loan.

41.    Plaintiff MARK PITTSENBARGER is an individual who borrowed money
from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31,
2007, secured by a deed of trust on his real estate. At all times material hereto, Defendants has
acted as Servicer or some other control capacity over processing the loan.

42.    Plaintiff DOUG RICH is an individual who borrowed money from Defendants
or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a

- 7 -

COMPLAINT

1 | deed of trust on his real estate. At all times material hereto, Defendants has acted as Servicer or

2 | some other control capacity over processing the loan.

3 |      43.    Plaintiff HARTSELL D. THOMAS is an individual who borrowed money from

4 | Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

5 | secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

6 | as Servicer or some other control capacity over processing the loan.

7 |      44.    Plaintiff JUDITH MONTELEONE is an individual who borrowed money from

8 | Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

9 | secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

10 | as Servicer or some other control capacity over processing the loan.

11 |      45.    Plaintiff SHIRLISA EDWARDS is an individual who borrowed money from

12 | Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

13 | secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

14 | as Servicer or some other control capacity over processing the loan.

15 |      46.    Plaintiff ALAN BURCIA is an individual who borrowed money from

16 | Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

17 | secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

18 | as Servicer or some other control capacity over processing the loan.

19 |      47.    Plaintiff KARA DUFFY is an individual who borrowed money from Defendants

20 | or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a

21 | deed of trust on her real estate. At all times material hereto, Defendants has acted as Servicer

22 | or some other control capacity over processing the loan.

23 |      48.    Plaintiff WILLIAM SULLIVAN is an individual who borrowed money from

24 | Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

25 | secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

26 | as Servicer or some other control capacity over processing the loan.

27 |      49.    Plaintiff MERY MARBUN is an individual who borrowed money from

28 | Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

- 8 -

COMPLAINT

1    secured by a deed of trust on her real estate. At all times material hereto, Defendants has acted

2    as Servicer or some other control capacity over processing the loan.

3        50.    Plaintiff VENDORA HAWKINS is an individual who borrowed money from

4    Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

5    secured by a deed of trust on her real estate. At all times material hereto, Defendants has acted

6    as Servicer or some other control capacity over processing the loan.

7        51.    Plaintiff JOAQUIN HAWKINS is an individual who borrowed money from

8    Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

9    secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

10   as Servicer or some other control capacity over processing the loan.

11       52.    Plaintiff MOISES SANCHEZ is an individual who borrowed money from

12   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

13   secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

14   as Servicer or some other control capacity over processing the loan.

15       53.    Plaintiff STEVE BARRAZA is an individual who borrowed money from

16   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

17   secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

18   as Servicer or some other control capacity over processing the loan.

19       54.    Plaintiff CLAUDELLE FAUSTIN is an individual who borrowed money from

20   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

21   secured by a deed of trust on her real estate. At all times material hereto, Defendants has acted

22   as Servicer or some other control capacity over processing the loan.

23       55.    Plaintiff DARRYL HUNT is an individual who borrowed money from

24   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

25   secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

26   as Servicer or some other control capacity over processing the loan.

27       56.    Plaintiff GEORGE MARTINEZ is an individual who borrowed money from

28   Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

- 9 -

COMPLAINT

1  secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

2  as Servicer or some other control capacity over processing the loan.

3      57.    Plaintiff ANTONIO TAME is an individual who borrowed money from

4  Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007,

5  secured by a deed of trust on his real estate. At all times material hereto, Defendants has acted

6  as Servicer or some other control capacity over processing the loan.

7      58.    Plaintiff SIMON MORZIANO is an individual residing in the State of Nevada,

8  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

9  and December 31, 2007, secured by a deed of trust on his Nevada real estate. At all times

10  material hereto, Defendants has acted as Servicer or some other control capacity over

11  processing the loan.

12      59.    Plaintiff MAYRA CAZARES is an individual residing in the State of California,

13  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

14  and December 31, 2007, secured by a deed of trust on her California real estate. At all times

15  material hereto, Defendants has acted as Servicer or some other control capacity over

16  processing the loan.

17      60.    Plaintiff SONCERIA MORRIS is an individual residing in the State of

18  California, who borrowed money from Defendants or its subsidiaries or affiliates between

19  January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real

20  estate. At all times material hereto, Defendants has acted as Servicer or some other control

21  capacity over processing the loan.

22      61.    Plaintiff MICHELLE MACDONALD is an individual residing in the State of

23  California, who borrowed money from Defendants or its subsidiaries or affiliates between

24  January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real

25  estate. At all times material hereto, Defendants has acted as Servicer or some other control

26  capacity over processing the loan.

27      62.    Plaintiff MARIO JIMINEZ is an individual residing in the State of California,

28  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

- 10 -

COMPLAINT

1   and December 31, 2007, secured by a deed of trust on his California real estate. At all times

2   material hereto, Defendants has acted as Servicer or some other control capacity over

3   processing the loan.

4        63.    Plaintiff HUGH M. COLLINS is an individual residing in the State of Hawaii,

5   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

6   and December 31, 2007, secured by a deed of trust on his Hawaii real estate. At all times

7   material hereto, Defendants has acted as Servicer or some other control capacity over

8   processing the loan.

9        64.    Plaintiff CANDIDA SANTANA is an individual residing in the State of New

10  York, who borrowed money from Defendants or its subsidiaries or affiliates between January 1,

11  2003 and December 31, 2007, secured by a deed of trust on her New York real estate. At all

12  times material hereto, Defendants has acted as Servicer or some other control capacity over

13  processing the loan.

14       65.    Plaintiff GERMAN TORRES is an individual residing in the State of Florida,

15  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

16  and December 31, 2007, secured by a deed of trust on his Florida real estate. At all times

17  material hereto, Defendants has acted as Servicer or some other control capacity over

18  processing the loan.

19       66.    Plaintiff MAHAMALAGE FERNANDO is an individual residing in the State of

20  Maryland, who borrowed money from Defendants or its subsidiaries or affiliates between

21  January 1, 2003 and December 31, 2007, secured by a deed of trust on his Maryland real estate.

22  At all times material hereto, Defendants has acted as Servicer or some other control capacity

23  over processing the loan.

24       67.    Plaintiff ROSE JACQUES is an individual residing in the State of Delaware,

25  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

26  and December 31, 2007, secured by a deed of trust on her Delaware real estate. At all times

27  material hereto, Defendants has acted as Servicer or some other control capacity over

28  processing the loan.

- 11 -

COMPLAINT

1      68.    Plaintiff GARY RIMARCIK is an individual residing in the State of Michigan,

2   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

3   and December 31, 2007, secured by a deed of trust on his Michigan real estate. At all times

4   material hereto, Defendants has acted as Servicer or some other control capacity over

5   processing the loan.

6      69.    Plaintiff EDUARDO CRUZ is an individual residing in the State of California,

7   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

8   and December 31, 2007, secured by a deed of trust on his California real estate. At all times

9   material hereto, Defendants has acted as Servicer or some other control capacity over

10   processing the loan.

11      70.    Plaintiff VICTOR LOPEZ is an individual residing in the State of California,

12   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

13   and December 31, 2007, secured by a deed of trust on his California real estate. At all times

14   material hereto, Defendants has acted as Servicer or some other control capacity over

15   processing the loan.

16      71.    Plaintiff TURKER ERGUN is an individual residing in the State of California,

17   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

18   and December 31, 2007, secured by a deed of trust on his California real estate. At all times

19   material hereto, Defendants has acted as Servicer or some other control capacity over

20   processing the loan.

21      72.    Plaintiff ERNEST MAYS is an individual residing in the State of California,

22   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

23   and December 31, 2007, secured by a deed of trust on his California real estate. At all times

24   material hereto, Defendants has acted as Servicer or some other control capacity over

25   processing the loan.

26      73.    Plaintiff MIGUEL JUAREZ is an individual residing in the State of California,

27   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

28   and December 31, 2007, secured by a deed of trust on his California real estate. At all times

- 12 -

COMPLAINT

1    material hereto, Defendants has acted as Servicer or some other control capacity over

2    processing the loan.

3        74.    Plaintiff LELAND LYNK is an individual residing in the State of California,

4    who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

5    and December 31, 2007, secured by a deed of trust on his California real estate. At all times

6    material hereto, Defendants has acted as Servicer or some other control capacity over

7    processing the loan.

8        75.    Plaintiff FILBERTO PEREZ is an individual residing in the State of California,

9    who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

10   and December 31, 2007, secured by a deed of trust on his California real estate. At all times

11   material hereto, Defendants has acted as Servicer or some other control capacity over

12   processing the loan.

13       76.    Plaintiff LAURA CAMPOS is an individual residing in the State of California,

14   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

15   and December 31, 2007, secured by a deed of trust on her California real estate. At all times

16   material hereto, Defendants has acted as Servicer or some other control capacity over

17   processing the loan.

18       77.    Plaintiff MARIA LEVIN is an individual residing in the State of California, who

19   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

20   December 31, 2007, secured by a deed of trust on her California real estate. At all times

21   material hereto, Defendants has acted as Servicer or some other control capacity over

22   processing the loan.

23       78.    Plaintiff DAVID IOVINO is an individual residing in the State of California,

24   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

25   and December 31, 2007, secured by a deed of trust on his California real estate. At all times

26   material hereto, Defendants has acted as Servicer or some other control capacity over

27   processing the loan.

28   ///

- 13 -

COMPLAINT

79.    Plaintiff ROBERT STERNER is an individual residing in the State of
California, who borrowed money from Defendants or its subsidiaries or affiliates between
January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real
estate. At all times material hereto, Defendants has acted as Servicer or some other control
capacity over processing the loan.

80.    Plaintiff ALBERT MORA is an individual residing in the State of California,
who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003
and December 31, 2007, secured by a deed of trust on his California real estate. At all times
material hereto, Defendants has acted as Servicer or some other control capacity over
processing the loan.

81.    Plaintiff SERGIO BECERRA is an individual residing in the State of California,
who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003
and December 31, 2007, secured by a deed of trust on his California real estate. At all times
material hereto, Defendants has acted as Servicer or some other control capacity over
processing the loan.

82.    Plaintiff LISA MCKAY is an individual residing in the State of California, who
borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
December 31, 2007, secured by a deed of trust on his California real estate. At all times
material hereto, Defendants has acted as Servicer or some other control capacity over
processing the loan.

83.    Plaintiff WILLIAM KILLHEFFER is an individual residing in the State of
California, who borrowed money from Defendants or its subsidiaries or affiliates between
January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real
estate. At all times material hereto, Defendants has acted as Servicer or some other control
capacity over processing the loan.

84.    Plaintiff THOMAS JARRETT is an individual residing in the State of
California, who borrowed money from Defendants or its subsidiaries or affiliates between
January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real

- 14 -
COMPLAINT

1  estate. At all times material hereto, Defendants has acted as Servicer or some other control

2  capacity over processing the loan.

3      85.    Plaintiff MIGNON WARREN is an individual residing in the State of

4  California, who borrowed money from Defendants or its subsidiaries or affiliates between

5  January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real

6  estate. At all times material hereto, Defendants has acted as Servicer or some other control

7  capacity over processing the loan.

8      86.    Plaintiff THOMAS TRIBBLE is an individual residing in the State of

9  Washington, who borrowed money from Defendants or its subsidiaries or affiliates between

10  January 1, 2003 and December 31, 2007, secured by a deed of trust on his Washington real

11  estate. At all times material hereto, Defendants has acted as Servicer or some other control

12  capacity over processing the loan.

13      87.    Plaintiff JOHNNY VILELA is an individual residing in the State of California,

14  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

15  and December 31, 2007, secured by a deed of trust on his California real estate. At all times

16  material hereto, Defendants has acted as Servicer or some other control capacity over

17  processing the loan.

18      88.    Plaintiff FAZANEH FATA is an individual residing in the State of North

19  Carolina, who borrowed money from Defendants or its subsidiaries or affiliates between

20  January 1, 2003 and December 31, 2007, secured by a deed of trust on his North Carolina real

21  estate. At all times material hereto, Defendants has acted as Servicer or some other control

22  capacity over processing the loan.

23      89.    Plaintiff PABLO RESENDIZ is an individual residing in the State of California,

24  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

25  and December 31, 2007, secured by a deed of trust on his California real estate. At all times

26  material hereto, Defendants has acted as Servicer or some other control capacity over

27  processing the loan.

28  ///

- 15 -

COMPLAINT

90.     Plaintiff THERON COOK is an individual residing in the State of Pennsylvania, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his Pennsylvania real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

91.     Plaintiff JACOB HARLOW is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

92.     Plaintiff GERARD OGNIBENE is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

93.     Plaintiff GREGORY CANNAN is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

94.     Plaintiff JOSE MONTES is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

95.     Plaintiff AGUILAR ADOLFO is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real

- 16 -
COMPLAINT

1    estate. At all times material hereto, Defendants has acted as Servicer or some other control

2    capacity over processing the loan.

3        96.    Plaintiff GILBERTO CALDERON is an individual residing in the State of

4    California, who borrowed money from Defendants or its subsidiaries or affiliates between

5    January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real

6    estate. At all times material hereto, Defendants has acted as Servicer or some other control

7    capacity over processing the loan.

8        97.    Plaintiff ERIC JOHNSON is an individual residing in the State of California,

9    who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

10   and December 31, 2007, secured by a deed of trust on his California real estate. At all times

11   material hereto, Defendants has acted as Servicer or some other control capacity over

12   processing the loan.

13       98.    Plaintiff CARL POLIZZI is an individual residing in the State of California,

14   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

15   and December 31, 2007, secured by a deed of trust on his California real estate. At all times

16   material hereto, Defendants has acted as Servicer or some other control capacity over

17   processing the loan.

18       99.    Plaintiff LOISE MUTHONI KAGIRI is an individual residing in the State of

19   California, who borrowed money from Defendants or its subsidiaries or affiliates between

20   January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real

21   estate. At all times material hereto, Defendants has acted as Servicer or some other control

22   capacity over processing the loan.

23       100.   Plaintiff ANNETTE GOMEZ is an individual residing in the State of California,

24   who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003

25   and December 31, 2007, secured by a deed of trust on her California real estate. At all times

26   material hereto, Defendants has acted as Servicer or some other control capacity over

27   processing the loan.

28   ///

- 17 -

COMPLAINT

101.    Plaintiff ROSELINE D'HATI is an individual residing in the State of Florida, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her Florida real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

102.    Plaintiff DAWN HARRIS-DEPAOLO is an individual residing in the State of Massachusetts, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her Massachusetts real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

103.    Plaintiff JULIA ADAMS is an individual residing in the State of Missouri, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her Missouri real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

104.    Plaintiff RONALD WEAKLY is an individual residing in the State of New Jersey, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his New Jersey real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

105.    Plaintiff THOMAS PROUT is an individual residing in the State of Maryland, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his Maryland real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

106.    Plaintiff WALLACE BUTLER is an individual residing in the State of Maryland, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his Maryland real estate.

- 18 -

COMPLAINT

At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

107.    Plaintiff AIDA MCARTHUR is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

108.    Plaintiff JULIA ADAMS is an individual residing in the State of Maryland, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her Maryland real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

109.    Plaintiff ANDREA CHANCELLOR is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

110.    Plaintiff JOHN BOWERS is an individual residing in the State of Illinois, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his Illinois real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

111.    Plaintiff MICHELE ST. PIERRE is an individual residing in the State of Washington, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her Washington real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

///

- 19 -

COMPLAINT

112.    Plaintiff JEFFREY EVANS is an individual residing in the State of Oregon, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his Oregon real estate.  At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

113.    Plaintiff ARCHIBALD SMITH is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate.  At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

114.    Plaintiff JOSE SILVA is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate.  At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

115.    Plaintiff JASBINDER BRAR is an individual residing in the State of Washington, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his Washington real estate.  At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

116.    Plaintiff VIOLA HENRY is an individual residing in the State of Florida, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her Florida real estate.  At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

117.    Plaintiff PAMELA HARRISON is an individual residing in the State of Nevada, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his Nevada real estate.  At all times

material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

118.    Plaintiff DOMINICK COVIELLO is an individual residing in the State of New York, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his New York real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

119.    Plaintiff MELBA FORD is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

120.    Plaintiff ERROL LAWRENCE is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

121.    Plaintiff GEORGE HERBST is an individual residing in the State of Nevada, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his Nevada real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

122.    Plaintiff ROBERT HALE is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

///

- 21 -

COMPLAINT

123.    Plaintiff RONNIE TAYLOR is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

124.    Plaintiff JET VILLAVICENCIO is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

125.    Plaintiff LARA POWERS is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

126.    Plaintiff FADI AWED is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

127.    Plaintiff KALUNGI ASKIA is an individual residing in the State of Massachusetts, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his Massachusetts real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

128.    Plaintiff CLIFFORD GEWAKE is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real

- 22 -

COMPLAINT

estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

129.   Plaintiff CHERYL SILVEIRA is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

130.   Plaintiff JUDITH MUSSELMAN is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

131.   Plaintiff STEVE GUZZETTA is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

132.   Plaintiff CRAIG KOROTKO is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

133.   Plaintiff MONIQUE MCCLOSKEY is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

///

- 23 -

COMPLAINT

134.    Plaintiff LUIS TERRIQUEZ is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

135.    Plaintiff CARL REYNOLDS is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

136.    Plaintiff KRISTEN CLASSENS is an individual residing in the State of New York, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her New York real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

137.    Plaintiff SHARON SCHAEFFER is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

138.    Plaintiff MICHAEL LINDER is an individual residing in the State of Oregon, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his Oregon real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

139.    Plaintiff IRMINA FLORES is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on her California real estate. At all times

- 24 -

COMPLAINT

material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

140.    Plaintiff JOHN GRAZIANO is an individual residing in the State of Hawaii, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2007, secured by a deed of trust on his Hawaii real estate. At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

141.    The other Plaintiffs, named as ROES 1 through 10,000, are similarly situated to Plaintiffs identified above in that they too borrowed money from the Defendants (as defined below) between the dates beginning on January 1, 2003 and ending on December 31, 2007, secured by deeds of trust on their California realty. Further, at all times material hereto, Defendants have acted as servicer or in another capacity with respect to loan processing. All of the foregoing secured real estate loans made to Plaintiffs were wrongfully and fraudulently handled and processed by Defendants, resulting in damages.

142.    Plaintiffs' counsel is aware of and has provided services to unnamed Roe plaintiffs, each of whom has sustained actual injury. The unnamed Roes sue under their names fictitiously because they either wish to maintain their privacy or because Plaintiffs' counsel have not completed the due diligence necessary to properly plead their claims as of the filing of this Complaint. From time-to-time, upon conducting the due diligence and learning the information sufficient to add remaining Roe Plaintiffs to this action, Plaintiffs shall seek leave of Court to amend this Complaint to name these additional Roe Plaintiffs, or will follow such other process as is prescribed by the Court.

143.    An additional large number of persons has contacted counsel or their staffs pertaining to the matters complained of herein. In the event Plaintiffs believe it is in furtherance of judicial economy and justice to add all or any of these additional persons to this Complaint, Plaintiffs shall bring a noticed motion to add such parties to this action. In the event Plaintiffs file a separate lawsuit appertaining to all or any of these unnamed persons, or such further number as may exist in view of future developments, Plaintiffs shall file all

- 25 -
COMPLAINT

appropriate Notices of Related Cases in accordance with California law, or as otherwise directed by the Court.

144.    Defendant ONEWEST BANK, FSB ("ONEWEST") is a mortgage lender with its primary headquarters located in Pasadena, California.

145.    Defendant ONEWEST BANK GROUP LLC ("ONEWEST GROUP") is a holding company formed for the purpose of owning and controlling ONEWEST.

146.    Defendants ONE WEST and ONE WEST GROUP acquired certain assets more than 18-months ago which resulted in these defendants claiming to have an interest in, or right to make demands about, the realty of Plaintiffs. Plaintiffs had and have no such right. In furtherance of this scheme to defraud and take money and property, these Defendants ONE WEST and ONE WEST GROUP have acted in concert with, in conspiracy with and in conjunction with the approval of all other Defendants named in this action as set forth in this Complaint. Additionally, ONE WEST and ONE WEST GROUP dominates and controls the affairs of each of the other Defendants such that there is no separateness between any of these Defendants and the ONE WEST defendants with regard to Plaintiffs and their realty and money. Accordingly, hereinafter, all Defendants shall collectively be referred to as "ONE WEST."

147.    It is axiomatic that the ONEWEST Defendants have no greater rights in the assets or money of Plaintiffs than any lawful predecessor of ONEWEST. And, no transfer of mortgages or notes and no intervening party can make mortgages out of assets that were not mortgages in the first place.

148.    The Defendants' business as it relates to this action, commenced in 2001 with $5.1 billion in total assets and eight retail branch offices. The Defendants' business is the origination of residential loans for sale, securitization, and for investment. Residential mortgage lending and mortgage bank activity was its primary focus and remains a principal focus of ONE WEST to this date.

149.    The Defendants' mortgage lending business grew to the point where in 2008 the business had become the seventh largest savings association and ninth largest servicer of

mortgages in the Unites States.  From June 2005 to March 2008, the business had grown from approximately $18.3 billion to $32 billion in assets.  Growth was due largely to an aggressive growth strategy that was relentlessly pursued.  The business operated in all fifty States in the United States of America.

150.    At its peak in 2008, the business had 32 retail branches located and operated in Southern California and 182 loan production offices throughout the United States of America.

151.    Between 2000 and 2006, the Defendants' business of loan production increased from approximately $10 billion to almost $92 billion.

152.    On July 11, 2008, the savings bank that constituted a core of the Defendants' business was closed.  The business was then acquired by the Defendants in March 2009.

153.    Defendant SCOTT VAN DELLEN ("VAN DELLEN") is a resident of the State of California, in the County of Los Angeles.  VAN DELLEN joined the business acquired by ONEWEST in 2001 and served as the President and Chief Executive Officer of one or more of its lending divisions from 2002 until the seizure of the business on July 11, 2008.  VAN DELLEN acted outside the course and scope of any employment or agency in furthering the schemes set forth herein.

154.    Defendant RICHARD KOON ("KOON") is a resident of the State of California, in the County of Los Angeles.  KOON joined the business acquired by ONEWEST in 2001 and served as the Chief Lending Officer of one or more of its lending divisions from 2001 until January 2008.  KOON acted outside the course and scope of any employment or agency in furthering the schemes set forth herein.

155.    Defendant NDEX WEST, LLC("NDEx") is a Limited Liabilty Company, acting on behalf of other Defendants as a debt collector, alleged trustee, alleged substituted trustee, alleged agent for trustee, alleged aghent for the beneficiary, and the alleged servicer of the mortgage, and doing business in the County of Los Angeles, State of California.

156.    Defendant PRIORITY POSTING & PUBLICATION is a California corporation, with its principal place of business in Tustin, California.  The tortious conduct set forth herein was done in the County of Los Angeles, State of California and also statewide.

- 27 -

COMPLAINT

157.    Defendant LPS DEFAULT TITLE & CLOSING is a business entity, form unknown, operating in, among other places, the County of Los Angeles, State of California.

158.    At all times material hereto, the business of Defendants was operated through a common plan and scheme designed to conceal the material facts set forth below from Plaintiffs, from the California public and from regulators, either directly or as successors-in-interest to the business acquired from others.

159.    The concealment was completed, ratified and/or confirmed by each Defendant herein directly or as a successor-in-interest as the acquirer of an entire business, and each Defendant performed or has sought to benefit from the tortious acts set forth herein for its own monetary gain and as a part of a common plan developed and carried out with the other Defendants or as a successor-in-interest to the business that did the foregoing.

160.    The true names and capacities of the Defendants listed herein as DOES 1 through 1,000 are unknown to Plaintiffs who therefore sue these Defendants by such fictitious names. Each of the DOE Defendants was the agent of each of the other Defendants herein, named or unnamed, and thereby participated in all of the wrongdoing set forth herein.

161.    On information and belief, each such Defendant is responsible for the acts, events and concealment set forth herein and is sued for that reason. Upon learning the true names and capacities of the DOE Defendants, Plaintiffs shall amend this Complaint accordingly.

162.    Plaintiffs believe and thereon allege that the agents and co-conspirators through which the named Defendants operated included, without limitation, financial institutions and other firms that originated loans on behalf of the enterprise acquired by the ONEWEST Defendants and the ONEWEST Defendants.

163.    These institutions acted at the behest and direction of the enterprise and the ONEWEST Defendants, or agreed to participate — knowingly or unknowingly - in the fraudulent scheme described in this Complaint.

164.    Those firms originating loans that knowingly participated in the scheme are jointly and severally liable with the Defendants for their acts in devising, directing, knowingly

- 28 -

COMPLAINT

1    benefitting from and ratifring the wrongful acts of the knowing participants.

2        165.    Upon learning the true name of such knowing participants, Plaintiffs shall

3    amend this Complaint to identify such knowing participants as Doe Defendants.

4        166.    For avoidance of doubt, such knowing participants include, without limitation,

5    legal and natural persons owned in whole or in part by the enterprise or Defendants or affiliates

6    thereof; legal and natural persons owning directly or through affiliates financial interests in the

7    enterprise or Defendants; legal and natural persons directly or through affiliates acting pursuant

8    to contracts to share in the benefits of the wrongdoing alleged in this Complaint and knowing

9    to at least some degree committing acts and omissions in support thereof; and legal and natural

10   persons knowing to at least some degree acting in concert with the enterprise or the

11   Defendants.

12       167.    As to those legal and natural persons acting in concert without an express legal

13   relationship with Defendants or their affiliates, on information and belief, the Defendants

14   knowingly induced and encouraged the parallel acts, created circumstances permitting and

15   authorizing the parallel acts and omissions, benefited therefrom and ratified the improper

16   behavior, becoming jointly and severally liable therefore.

17       168.    As to those legal an natural persons whose acts in support of the loan scheme

18   were unwitting, Plaintiffs will consider whether and on what basis such persons might be liable

19   for their acts; however, on information and belief, the Defendants knowingly induced and

20   encouraged the acts and omissions, created circumstances permitting and authorizing the

21   parallel acts and omissions, benefited therefrom and ratified the improper behavior, becoming

22   liable therefore.

23       169.    Defendants' own public disclosures make clear that ONEWEST and ONEWEST

24   GROUP are a common enterprise operating as a greater whole and that ONEWEST and

25   ONEWEST GROUP are the successors-in-interest to the tainted mortgage lending business

26   formerly operated by IndyMac Bank.

27       170.    Indeed, ONEWEST and ONEWEST GROUP were formed for the specific

28   purpose of succeeding to this mortgage lending business and the assets comprising that

---

- 29 -

COMPLAINT

1  business, including the loans made to Plaintiffs.

2      171.   Plaintiffs are informed and believe, and thereon allege, that: (i) ONEWEST

3  GROUP, ONEWEST and their wholly-owned and controlled subsidiaries are liable (to the

4  extent provided in this Complaint) for all wrongful acts relating to their acquired business prior

5  to the date thereof as the successor-in-interest to various other parties, (ii) Defendants directly

6  and through its subsidiaries and other agents sued herein as Does have continued the unlawful

7  mortgage lending and collection practices, including, without limitation thereof, writing

8  fraudulent mortgages as set forth above and concealing wrongful acts that occurred in whole or

9  in part prior thereto, and (iii) Defendants and their subsidiaries are jointly and severally liable

10 as alter egos and as a single, greater unified whole.

11     172.   Hand-in-hand with its fraudulently-obtained mortgages, the Defendants'

12 mortgage lending business implemented a plan to "pool" the foregoing mortgages and sell the

13 pools for inflated value.

14     173.   Rapidly, these two intertwined schemes grew into a brazen plan to disregard

15 underwriting standards and fraudulently inflate property values – county-by-county, city-by-

16 city, person-by-person – in order to take business from legitimate mortgage-providers, and

17 moved on to massive securities fraud hand-in-hand with concealment from, and deception of,

18 Plaintiffs and other mortgagees on an unprecedented scale.

19     174.   From as early as 2004, the senior management of Defendants' mortgage lending

20 business knew the scheme would cause a liquidity crisis that would devastate Plaintiffs' home

21 values and net worths.  But, they didn't care, because their plan was based on insider trading –

22 pumping for as long as they could and then dumping before the truth came out and Plaintiffs'

23 losses were locked in.

24     175.   At the very least, at the time of entering into the notes and deeds of trust

25 referenced herein with respect to each Plaintiff, the Defendants' business, each Defendant

26 originating or participating in the origination of a mortgage, each Defendant in the chain of title

27 of the foregoing mortgages and each Defendant servicing the foregoing mortgages and the

28 successors to each of the foregoing (collectively, the "Defendants") was bound and obligated to

- 30 -
COMPLAINT

1    fully and accurately disclose to each borrower, including each Plaintiff herein, that the

2    mortgage being offered to the Plaintiff was, in fact, part of a massive fraud that Defendants or

3    their business principals knew would result in the loss of the equity invested by Plaintiff in

4    their homes and in severe impairment to Plaintiffs' credit ratings.

5        176.    It is now all too clear that this was the ultimate high-stakes fraudulent

6    investment scheme of the last decade.  Couched in banking and securities jargon, the deceptive

7    gamble with consumers' primary assets – their homes – was nothing more than a financial

8    fraud perpetrated by Defendants' mortgage lending enterprise and others on a scale never

9    before seen.  This scheme led directly to a mortgage meltdown in California that was

10   substantially worse than any economic problems facing the rest of the United States.

11       177.    From 2008 to the present, Californians' home values decreased by considerably

12   more than most other areas in the United States as a direct and proximate result of the

13   Defendants' enterprise scheme set forth herein.  Defendants' enterprise systematically

14   destroyed California home values county-by-county, then State-wide, and ultimately across the

15   entire Country.

16       178.    The business premise of the enterprise the ONEWEST Defendants' acquired was

17   to leave the borrowers, including Plaintiffs, holding the bag once Defendants and their

18   executives had cashed in reaping huge salaries and bonuses and selling securities based on their

19   inside information, while investors were still buying the increasingly overpriced mortgage

20   pools and before the inevitable dénouement.  This massive fraudulent scheme was a disaster

21   both foreseen by Defendants' business and waiting to happen.  The operators of Defendants'

22   business knew it, and yet still induced the Plaintiffs into their scheme without telling them.

23       179.    Almost to add further insult to injury, ONEWEST GROUP and ONEWEST,

24   knowing of this massive fraud, like Civil War carpetbaggers, sought to swoop in and profiteer

25   from the carnage that had been wreaked on Plaintiffs.  The ONEWEST Defendants sought to

26   ignore the responsibility for the results of the massive fraud in the mortgage assets and tainted

27   business they were acquiring by aggressively enforcing the mortgages purchased or serviced.

28   The ONEWEST Defendants did this with calculation and deliberation after over eighteen

- 31 -

COMPLAINT

1    months had elapsed from the failure of the business and in full recognition of the patent frauds

2    that had been perpetrated on Plaintiffs in connection with the mortgages.

3        180.    As a result of all of these actions of Defendants, Plaintiffs lost their equity in

4    their homes, their credit ratings and histories were damaged or destroyed, and Plaintiffs

5    incurred material other costs and expenses, described herein.  At the same time, Defendants

6    took from Plaintiffs and other borrowers billions of dollars in interest payments and fees and

7    generated billions of dollars in profits by selling their loans at inflated values.

8        181.    With government loss-protection in their hip pocket, the ONEWEST

9    Defendants, with a voraciousness that has been chastised by numerous courts, sought to

10   obliterate the last vestiges of value held by Plaintiffs, lock in government fill-up money and flip

11   distressed assets for a profit.  On the heels of an already bad disaster, Defendants piled on after

12   March 2009 to systematically continue the destruction of California home values.

13       182.    Defendants' improper acts are numerous, including, inter alia: (i) issuing Notices

14   of Default in violation of Cal. Civil Code §2923.5; (ii) misrepresenting their intention to

15   arrange loan modifications for Plaintiffs, while in fact creating abusive roadblocks to deprive

16   Plaintiffs of their legal rights; and (iii) and by refusing to respond, in any way, to Plaintiffs'

17   communications.

18       183.    These acts continue to this day with hardball tactics and deception that continue

19   to threaten Plaintiffs' rights and financial security, as well as the economic future of the State of

20   California and the entire United States of America.

21       184.    The carpetbagger business plan of the ONEWEST Defendants is no mystery.  It

22   is evident in their very formation to acquire the mortgage assets to which this action relates.

23   What the Defendants had hoped was that helpless homeowners would not be able to stand up to

24   the Defendants as they eviscerated the Plaintiffs' life's savings, chasing a hoped-for gold rush

25   of government bail-out money to make the Defendants rich in the process, while at the same

26   time positioning the Defendants as vultures to pick on the government-paid-for carcass that

27   would be left over.  Though they were careful not to reveal overtly the piranha-like nature of

28   their business plan, the Defendants' formation for the sole purpose seeking to obtain an

- 32 -

COMPLAINT

1    enormous portfolio of tainted mortgages, enforce them as if they were not tainted, crush the

2    homeowners in the process to profit from government money, and then flipping the "cleansed"

3    portfolio is patently evident.  In this action, Plaintiffs seek to stop this behavior and obtain the

4    redress they are due.

5

6                                    **GENERAL FACTS**

7        185.    The common facts herein include those facts set forth above in the prior sections

8    of this Complaint.

9        186.    There has been considerable press attention, litigation and pending governmental

10    investigations establishing, among other things, that in many instances the Defendants herein

11    do not have in their possession, custody or control the original or an authentic copy of the

12    promissory notes or other indicia of realty rights regarding Plaintiffs.  Based thereon, on

13    information and belief, Plaintiffs hereby allege that Defendants have made demand for payment

14    on the Plaintiffs with respect to Plaintiffs' properties at a time when Defendants are incapable

15    of establishing (and do not have any credible knowledge regarding) who owns the promissory

16    notes Defendants are purportedly servicing.

17        187.    Many of the promissory notes referenced above are secured or controlled by a

18    beneficiary known as Mortgage Electronic Registration Systems, Inc. (MERS).  MERS is

19    sometimes named as the "nominee" or "beneficiary" for unknown lenders representing

20    unsourced money advanced by persons in violation of law.  When a loan is transferred among

21    MERS members, MERS purports to simplify the process by avoiding the requirement to re-

22    record the liens and pay county recorder fees.

23        188.    For the substantial majority of the Plaintiffs herein, MERS claims to be the

24    owner of the security interest indicated by the mortgages transferred by lenders, investors and

25    their loan servicers in the county land records.  MERS claims its process eliminates the need to

26    file assignments in the county land records which lowers costs for lenders and consumers by

27    reducing county recording costs from real estate transfers and provides a central source of

28    information and tracking for mortgage loans.

189.    Based upon published reports, including the MERS website as of the date of this Complaint, on information and belief, MERS does not:  (1) take applications for, underwrite or negotiate mortgage loans; (2) make or originate mortgage loans to consumers; (3) extend credit to consumers; (4) service mortgage loans; or (5) invest in mortgage loans.

190.    MERS has been, and continues to be, used to facilitate the unlawful transfers of mortgages, unlawful pooling of mortgages and the injection into the United States banking industry of unsourced (i.e., unknown) funds, including, without limitation, improper off-shore funds.  Plaintiffs are informed and believe and thereon allege that MERS has been listed as beneficial owner of more than half the mortgages in the United States.

191.    In 2001, Congress found that "money laundering, and the defects in financial transparency on which money launderers rely, are critical to the financing of global terrorism and the provision of funds for terrorist attacks."  Congress specifically found that "money launderers subvert legitimate financial mechanisms and banking relationships by using them as protective covering for the movement of criminal proceeds and the financing of crime and terrorism . . .".

192.    On information and belief, during periods relevant to the other acts complained of herein, Defendants and each of them did not and persist in failing to (1) establish due diligence policies, procedures and controls reasonably designed to detect and report instances of money laundering, (2) establish procedures to take reasonable and practicable measures to verify the identity of those applying for an account with the institution and maintain records of the information used to verify a person's identity, including name, address, and other identifying information, (3) determine and report the sources of funds used for the mortgages they originate and service, as well as the sources of funds used to acquire any mortgages, or (4) disclose to Plaintiffs the identities, address and telephone numbers of transferees of their mortgages.

193.    Upon completion of sufficient discovery, Plaintiffs will seek leave to amend the complaint to supplement the foregoing allegations with respect to additional violations pertaining to the Plaintiffs and additional patterns supporting Plaintiffs' claims herein including

- 34 -

COMPLAINT

1    its claim of Unfair Competition, *infra*.

2    194.    Under California Civil Code § 1709 it is unlawful to willfully deceive another

3    "with intent to induce him to alter his position to his injury or risk."

4    195.    Under California Civil Code § 1710, it a "deceit" to do any one or more of the

5    following: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it

6    to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable

7    ground for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose

8    it, or who gives information of other facts which are likely to mislead for want of

9    communication of that fact; or, (4) a promise, made without any intention of performing it.

10    196.    Under California Civil Code § 1572, the party to a contract further engages in

11    fraud by committing "any other act fitted to deceive."

12    197.    At the time of entering into the notes and deeds of trust referenced herein with

13    respect to each Plaintiff, the enterprise acquired by the ONEWEST Defendants, was bound and

14    obligated to fully and accurately disclose:

15        a.    Who the true lender and mortgagee were.

16        b.    That to induce a Plaintiff to enter into the mortgage, the enterprise caused the

17              appraised value of Plaintiff's home to be overstated.

18        c.    That to disguise the inflated value of Plaintiff's home, the enterprise was

19              orchestrating the over-valuation of homes throughout Plaintiff's community.

20        d.    That to induce a Plaintiff to enter into a mortgage, the enterprise disregarded its

21              underwriting requirements, thereby causing Plaintiff to falsely believe that

22              Plaintiff was financially capable of performing Plaintiff's obligations under the

23              mortgage, when the enterprise knew that was untrue.

24        e.    That the enterprise not only had the right to securitize and sell Plaintiff's

25              mortgage to third-party investors, but that it specifically planned and intended to

26              do so as to virtually all mortgages at highly-inflated and unsustainable values.

27        f.    That as to the intended sales:

28              i.    The sales would include sales to nominees who were not authorized

- 35 -

COMPLAINT

under law at the time to own a mortgage, including, among others, Mortgage Electronic Registration Systems Inc., a/k/a MERSCORP, Inc. ("MERS"), which according to its website was created by mortgage banking industry participants to be only a front or nominee to "streamline" the mortgage re-sale and securitization process;

    ii.  Plaintiff's true financial condition and the true value of Plaintiff's home and mortgage would not be disclosed to investors to whom the mortgage would be sold;

    iii.  The enterprise intended to sell the mortgage together with other mortgages as to which it also intended not to disclose the true financial condition of the borrowers or the true value of their homes or mortgages;

    iv.  The consideration to be sought from investors would be greater than the actual value of the said notes and deeds of trust; and

    v.  The consideration to be sought from investors would be greater than the income stream that could be generated from the instruments even assuming a 0% default rate thereon;

g.  That the mortgage would thereby be used as part of a scheme by which the enterprise would bilk investors by selling collateralized mortgage pools at an inflated value.

h.  That, at the time they did the foregoing, the enterprise knew the foregoing would lead to a liquidity crisis and the likely collapse of the enterprise;

i.  That the enterprise also knew the foregoing would lead to grave damage to each Plaintiff's property value and thereby result in the Plaintiff's loss of the equity Plaintiff invested in the Plaintiffs' house, as well as damaging the Plaintiff's credit rating, thereby causing the Plaintiff additional severe financial damage; and

j.  That the enterprise knew at the time of making each loan, but did not disclose to

- 36 -
COMPLAINT

1  Plaintiffs, that entire communities would become "ghost-town-foreclosure-
2  communities" after a domino effect of foreclosures hit them.

3  198.   When property values started falling – just as the enterprise knew would occur –
4  the enterprise could no longer continue the pretense, concealment and affirmative
5  misrepresentations.  Plaintiffs through their losses, and then also the ultimate banker, the U.S.
6  taxpayer, have footed the bill through TARP and other programs.

7  199.   The ONEWEST Defendants not only continue to ratify the scheme, but they
8  aggressively seek to profiteer from it.

9  200.   With specific aim, ONEWEST GROUP and ONEWEST, knowing of the
10 massive fraud perpetrated by the enterprise they sought to acquire, swooped in to profiteer.
11 Like Civil War carpetbaggers, the ONEWEST Defendants sought to conceal the fraud of which
12 they were aware and which gave legitimate defenses to borrowers and to ramrod through
13 foreclosures.

14 201.   This was all done while the ONEWEST Defendants have put window dressing
15 on their business strategy, seeking to obfuscate their actions by press releases of diametrically
16 opposite actions.  This conspiracy has all been to further crush values, realize losses and collect
17 government bail-out money, and then to take their foot off the neck of the California
18 homeowner market and profiteer from rises in portfolio asset values.

19 202.   However, the ONEWEST Defendants can not improve their position in the
20 mortgages and must stand in the shoes of their predecessor.  As a result, they are subject to the
21 shortcomings of the assets they purchased, and not only those the ONEWEST Defendants can
22 control for their profit.  They are also subject to all defenses to the mortgages.

23 203.   The ONEWEST Defendants' high-pressure and aggressive foreclosure tactics
24 have been designed to push this fraud through and avoid these defenses by sheer weight of a
25 well-financed financial group against individual homeowners.  However, they must accept the
26 burdens as well as the benefits of the mortgage assets contained in the tainted business they
27 acquired.

28 ///

- 37 -

COMPLAINT

204.    The ONEWEST Defendants have hatched their scheme with calm deliberation, including carefully investigating the assets they were acquiring, interviewing executives of the enterprise, and forming their own vehicles to ratify and execute the fraudulent plan. After over eighteen months had elapsed from the failure of the enterprise, after the emergence of government bail-outs and support, including privately negotiated help and TARP assistance, and in full recognition of the patent frauds that had been perpetrated on Plaintiffs in connection with the mortgages, the ONEWEST Defendants stepped into those dirty shoes.

205.    As a result of all of these actions of Defendants, Plaintiffs lost their equity in their homes, their credit ratings and histories were damaged or destroyed, and Plaintiffs incurred material other costs and expenses, described herein. At the same time, Defendants took from Plaintiffs and other borrowers billions of dollars in interest payments and fees and generated billions of dollars in profits by selling their loans at inflated values.

206.    With government loss-protection in their hip pocket, the ONEWEST Defendants, with a voraciousness that has been chastised by numerous courts, have sought to obliterate the last vestiges of value held by Plaintiffs, lock in government fill-up money and flip distressed assets for a profit. On the heels of an already bad disaster, Defendants piled on after 2008 to systematically continue the destruction of California home values.

207.    Defendants cannot aver that the market would have worked its way out of the fraud, because they knew of the liquidity crisis and devastation that the fraud had already created. Notwithstanding this knowledge, the ONEWEST Defendants embarked on a massive campaign to crush the values of homes to feed their profiteering scheme.

208.    The ONEWEST Defendants knew through their investigation that, in violation of their own underwriting guidelines, the enterprise had covertly offered Plaintiffs and others loans at a loan-to-value ratio that was unsustainable and without income verification. The ONEWEST Defendants knew that the enterprise knew this, but concealed from Plaintiffs that they knew, Plaintiffs would soon be unable to afford the loans once introductory discount interest rates ended, and variable interest and balloon payments kicked in. Indeed, the ONEWEST Defendants saw this fraud and the disjoint it had created in the market, and their

- 38 -

COMPLAINT

1  ability to act fast and profiteer from the U.S. taxpayer, as key to their own scheme.

2      209.   As had their enterprise, the ONEWEST Defendants knew that when interest

3  payments increased and balloon payments became due, if not before, Plaintiffs and others

4  would begin defaulting on their mortgages and would suffer grievous losses from mortgages

5  for which they were not qualified.  Indeed, at the time of their acquisition of the tainted assets,

6  this was going on.

7      210.   It was a pivotal confluence of events that the ONEWEST Defendants sought to

8  exploit for gain.  Given the inflated appraised values of their residences, even without a decline

9  in property values, few Plaintiffs would be able to refinance or sell their homes without

10  suffering a significant loss.

11      211.   The Defendants knew that the scale of the lending – based on inflated property

12  values, without income verification and in violation of numerous underwriting guidelines –

13  would lead to widespread declines in property values, thereby putting Plaintiffs and others into

14  extremis through which they would lose the equity invested in their homes and have no means

15  of refinancing or selling, other than at a complete loss.  That is precisely what happened to

16  Plaintiffs herein.

17      212.   The enterprise did not just make misrepresentations and conceal material facts

18  from investors.  First, each of the foregoing misrepresentations was made in public documents

19  or forums given wide communication to the public, including Plaintiffs herein.  Second, the

20  identical affirmative misrepresentations and concealment pertained to the Plaintiffs, and other

21  borrowers.

22      213.   The enterprise had perpetuated its lies by affirmative misrepresentations and by

23  concealing the truth from Plaintiffs and other borrowers because to do otherwise would mean:

24  (a) immediate wash-back into their investor fraud since Plaintiffs and other borrowers are part

25  of the investor public receiving all other investor communications, and (b) decapitation of the

26  source of the supply of mortgages needed for the scheme.  The ONEWEST Defendants knew

27  this when they acquired the tainted assets and then ratified and profited from it in the manner

28  alleged herein.

214.    The concealment of the scheme from borrowers was absolutely essential because the enterprise knew it would soon be delivering Plaintiffs' notes and deeds of trust to investors and their representatives at intentionally inflated values as collateral for Defendants' fraudulent securitized pools. The ONEWEST Defendants knew this when they acquired the tainted assets.

215.    By not disclosing the truth of the inflated appraisals, lax lending standards, deficient loan portfolio, shaky secondary market collateralized securities, and overall scheme to its borrowers, as set forth above, the enterprise not only made them unwitting accomplices, but put them into a no win situation in which the price of taking a mortgage from the enterprise would be – and has been – cascading defaults and foreclosures that have wiped out billions of dollars in equity value, including the equity invested in their homes by Plaintiffs. The ONEWEST Defendants knew this when they acquired the tainted assets and intended at the time, and have in fact, profited from it in violation of law and in a manner of unfair competition toward Plaintiffs.

216.    The ONEWEST Defendants exacerbated this situation by setting off cascading foreclosures in entire cities and counties in California, leading to unemployment and economic turmoil. All Plaintiffs have been damaged by the foregoing.

217.    Despite billions of dollars of taxpayer-funded relief programs, property values continue to fall and unemployment and underemployment remain terribly high. However, this are all key to the ONEWEST Defendants' profiteering scheme. The bigger the carnage now, the more government relief they get, and the more upside that remains in the assets they have confiscated from homeowners.

218.    As defaults increased, the Defendants used it as an opportunity to increase their fees and to punish Plaintiffs and other borrowers.

219.    The enterprise first and later the ONEWEST Defendants concealed and did not accurately or fully disclose to any Plaintiff herein any of the foregoing facts. Further, neither the enterprise nor Defendants disclosed or explained their schemes to Plaintiffs at any time.

220.    They did the foregoing with the intent to deceive Plaintiffs, the investing public and the U.S. taxpayer. Plaintiffs did not know the massive scheme the enterprise had started

- 40 -

COMPLAINT

1   and that the ONEWEST Defendants diabolically enhanced and accelerated.

2       221.    To the contrary, the enterprise affirmatively misrepresented its underwriting

3   processes, the value of its mortgages and the fundamental nature of its business model in its

4   press releases, annual report and securities filings, all of which were widely distributed to the

5   public, including Plaintiffs.  The ONEWEST Defendants knew this as they hatched their own

6   new chapter to the scheme.

7       222.    The enterprise intended the public, including Plaintiffs, to rely upon its

8   misrepresentations and made those misrepresentations to create false confidence in the

9   enterprise and to further its fraud on borrowers and investors.  The ONEWEST Defendants are

10  now playing on this same theme, but they are getting caught in their own creation.

11      223.    Plaintiffs would never have done business with the enterprise or entered into the

12  mortgages or continued to interact with ONE WEST if the scheme had ever been disclosed to

13  them.  Had the Plaintiffs known the facts concealed from them, Plaintiffs would have never

14  entered into bogus and predatory transactions creating the tainted assets acquired by the

15  ONEWEST Defendants, designed only to line the pockets of the lenders and their executives

16  and not to actually and justifiably create value and generate capital from the Plaintiffs' equity

17  investments in their primary residences, and now designed to line the pockets of the

18  ONEWEST Defendants directly through their carpetbagging and through their sucking at the

19  TARP and other government money troughs.

20      224.    If the Plaintiffs had later learned the truth, each Plaintiff would have either (a)

21  rescinded the loan transaction under applicable law and/or (b) refinanced the loan transaction

22  with a reputable institution prior to the decline in mortgage values in late 2008.

23      225.    Instead, each Plaintiff reasonably relied on the deceptions of the enterprise in

24  originating their loans and forbearing from exercising their rights to rescind or refinance their

25  loans.  The ONEWEST Defendants knew of this massive fraud and step into all the infirmities

26  of these mortgages.

27      226.    After entering into the transactions with each Plaintiff herein as alleged herein,

28  the enterprise sold in securities transactions the notes and deeds of trust pertaining to Plaintiffs'

- 41 -

COMPLAINT

properties.  The sales:

    a.  Included sales to nominees who were not authorized under law at the time to own a mortgage, including, among others, MERS;

    b.  Involved misrepresentations by the enterprise to investors and concealment from investors of Plaintiff's true financial condition and the true value of Plaintiff's home and mortgage;

    c.  Involved misrepresentations by the enterprise to investors and concealment from investors of the true financial condition of other borrowers and the true value of their homes and mortgages also included in the pools;

    d.  Were for consideration greater than the actual value of the said notes and deeds of trust;

    e.  Were for consideration greater than the income stream that could be generated from the instruments even assuming a 0% default rate thereon; and

    f.  Were part of a scheme by which the enterprise bilked investors by selling collateralized mortgage pools at an inflated value.

    g.  The ONEWEST Defendants knew all of this when they acquired the tainted assets.

    227.    The enterprise hid from Plaintiffs that Defendants were engaged in an effort to increase market share and sustain revenue generation through unprecedented expansions of its underwriting guidelines, taking on ever-increasing credit risk.  The ONEWEST Defendants knew all of this when they acquired the tainted assets, as it was a critical component of their own scheme to further victimize the Plaintiffs.

    228.    When first the enterprise induced Plaintiffs to enter into mortgages, the enterprise knew their scheme would lead to a liquidity crisis and grave damage to each Plaintiff's property value and thereby result in each Plaintiff's loss of the equity such Plaintiff invested in his house, as well as damaging the Plaintiff's credit rating, thereby causing the Plaintiff additional severe financial damage consisting of the foregoing damages and damages described elsewhere in this Complaint.  The enterprise concealed the foregoing from, among

- 42 -

COMPLAINT

others, Plaintiffs, California consumers and regulators. The ONEWEST Defendants' tainted assets have all the imperfections resulting from these fraudulent actions, and the ONEWEST Defendants knew this when they embarked on their campaign to profiteer off of the mortgage carnage and government bail-out money.

229.    Based upon the enterprise's position as a leading financial institution and the public statements made by representatives of the enterprise, including in its securities or other public filings, the Plaintiffs reasonably relied upon the statements made by the foregoing and reasonably relied that no material information necessary to their decisions would be withheld or incompletely, inaccurately or otherwise improperly disclosed. In so relying, the Plaintiffs were gravely damaged as described herein.

230.    The enterprise initially acted willfully with the intention to conceal and deceive in order to benefit therefrom at the expense of the Plaintiffs. The ONEWEST Defendants thereafter acted deliberately in a massive scheme to crush the last vestiges of wealth from the Plaintiffs, all in a mission to profiteer from the fraud the ONEWEST Defendants had purchased.

231.    The other Defendants followed each other's direction because they are either subsidiaries of each other, directly or indirectly owned, controlled and dominated by each other, or because they are in an unequal economic and/or legal relationship with each other by which they are beholden to each other and are thereby controlled and dominated by each other.

232.    As a proximate and foreseeable result of the sale of the notes and deeds of trust regarding Plaintiffs' properties and others similarly situated for more than the actual value of such instruments, securitization pools lacked the cash flow necessary to maintain the securitization pools in accordance with their indentures.

233.    The unraveling of the fraudulent scheme has materially depressed the price of real estate throughout California, and the entire Country, including the real estate owned by Plaintiffs, resulting in the losses to Plaintiffs described herein. It is precisely this loss of value on which the ONEWEST Defendants now seek to capitalize. They would transfer a material portion of that wealth to themselves or those in collusion with them. This scheme includes

- 43 -

COMPLAINT

1   acquiring the real property at reduced values, collecting U.S. government money for paper

2   losses, and harvesting the future increase on the value of these artificially depressed homes.

3        234.    There has been considerable press attention and litigation in the United States

4   Bankruptcy Courts and state courts establishing, inter alia, that in many instances the

5   Defendants herein do not have in their possession the original or an authentic copy of the

6   promissory notes with respect to the loans they originated and/or purport to service.  Based

7   thereon, based on other litigation of which counsel to Plaintiffs are aware, and based upon

8   Plaintiffs interactions with Defendants, on information and belief, Plaintiffs hereby allege that

9   Defendants have made demand for payment on the Plaintiffs with respect to Plaintiffs'

10  properties at a time when Defendants are incapable of establishing (and do not have any

11  credible knowledge regarding) who owns the promissory notes Defendants are purportedly

12  servicing.

13       235.    MERS operates an electronic registry designed to track servicing rights and the

14  20 ownership of mortgages. MERS is sometimes named as the "nominee" for lenders, and at

15  other times MERS is named as the "beneficiary" of the deed of trust on behalf of unknown

16  persons.  When a loan is transferred among MERS members, MERS purports to simplif,r the

17  process by avoiding the requirement to re-record liens and pay county recorder filing fees.

18       236.    For the substantial majority of the Plaintiffs herein, MERS claims to be the

19  owner of the security interest indicated by the mortgages transferred by lenders, investors and

20  their loan servicers in the county land records. MERS claims its process eliminates the need to

21  file assignments in the county land records which lowers costs for lenders and consumers by

22  reducing county recording revenues from real estate transfers and provides a central source of

23  information and tracking for mortgage loans.

24       237.    Based upon published reports, including the MERS website, on information and

25  belief, MERS does not: (1) take applications for, underwrite or negotiate mortgage loans; (2)

26  make or originate mortgage loans to consumers; (3) extend credit to consumers; (4) service

27  mortgage loans; or (5) invest in mortgage loans.

28  ///

- 44 -

COMPLAINT

238.    MERS has been used to facilitate the unlawful transfers of mortgages, unlawful pooling of mortgages and the injection into the United States banking industry of un-sourced (i.e., unknown) funds, including, without limitation, improper off-shore funds.

239.    Plaintiffs are informed and thereon believe that MERS has been listed as beneficial owner of more than half the mortgages in the United States.

240.    In 2001, Congress found that "money laundering, and the defects in financial transparency on which money launderers rely, are critical to the financing of global terrorism and the provision of funds for terrorist attacks." Congress specifically found that "money launderers subvert legitimate financial mechanisms and banking relationships by using them as protective covering for the movement of criminal proceeds and the financing of crime and terrorism..."

241.    On information and belief, during periods relevant to the other acts complained of in this Complaint, Defendants did not: (1) establish due diligence policies, procedures and controls reasonably designed to detect and report instances of money laundering, (2) establish procedures to take reasonable and practicable measures to verify the identity of those applying for an account with the institution and maintain records of the information used to verify a person's identity, including name, address, and other identifying information, (3) determine and report the sources of funds used for the mortgages they originate and service, as well as the source of funds used to acquire any mortgages, or (4) disclose to Plaintiffs the identities, address and telephone numbers of transferees of their mortgages.

242.    At the same time, Defendants continue to issue notices of default in violation of Cal. Civil Code § 2923.5 and despite assurances that the failures will be remedied, corrective action is dilatory, at best.

243.    The foregoing is indicative of the Defendants' bad acts. Those bad acts include, but are not limited to:

    a.    The intentional efforts to frustrate Plaintiffs and other borrowers seeking information about their mortgages and loan modifications.

    b.    Wanton violations of laws designed to keep unsourced money out of the United

1    States real estate market.

2        c.    Intentional violation of Cal. Civil Code § 2923.5 and dilatory steps to remedy

3            those failures, even when notified thereof.

4    244.    By the foregoing acts, Defendants are intentionally making it difficult or

5    impossible for victims of Defendants' massive mortgage fraud and statutory violations to

6    enforce their rights. This is all in furtherance of Defendants' scheme to profit from the misery

7    of the Plaintiffs.

8    245.    By the foregoing acts, Defendants are intentionally making it difficult or

9    impossible for victims of Defendants' massive mortgage fraud and statutory violations to

10    enforce their rights. This is all in furtherance of Defendants' scheme to profit from the misery

11    of the Plaintiffs. In addition to the foregoing allegations, venue is proper in this County in

12    accordance with Section 395(a) of the California Code of Civil Procedure because, on

13    information and belief, some or all of the Defendants working in California to achieve the

14    unlawful and tortuous objectives set forth herein, reside in and/or do business in this County

15    and committed the torts and unlawful acts alleged herein in this County. This Court has

16    jurisdiction over this action under the California Constitution, Article V, Section 10, because

17    this case is not a cause given by statute to other trial courts. This Court has jurisdiction over

18    the defendants because a substantial portion of the wrongdoing alleged in this Complaint took

19    place in California, the Defendants are authorized to do business here, the Defendants have

20    sufficient minimum contacts with California and/or otherwise intentionally avail themselves of

21    the markets in California through the promotion, marketing, sale, maintenance . . . and now

22    wrongful exercise of real property rights and foreclosure rights – with respect to realty in

23    California, to render the exercise of jurisdiction by California courts permissible under

24    traditional notions of fair play and substantial justice.

25    ///

26    ///

27    ///

28    ///

- 46 -

COMPLAINT

# FIRST CAUSE OF ACTION

## (By All Plaintiffs – Fraudulent Concealment – Against the ONEWEST Defendants)

246.    Paragraphs 1 through 121 are hereby incorporated by reference as though fully set forth herein.

247.    The enterprise purchased by the ONEWEST Defendants had exclusive knowledge not accessible to Plaintiffs of material facts pertaining to its mortgage lending activities that it did not disclose to Plaintiffs at the time it was entering into contracts with Plaintiffs. As more fully alleged herein, these facts included false appraisals, violation of underwriting guidelines, the intent to sell Plaintiffs' mortgages above their actual values to bilk investors and knowledge that the scheme would result in a liquidity crisis that would gravely damage Plaintiffs.

248.    Further, in connection with entering into contracts with Plaintiffs, the enterprise purchased by the ONEWEST Defendants made partial (though materially misleading) statements and other disclosures as to their prominence and underwriting standards in the public releases, on their web site, in their literature and at their branch offices. However, the enterprise purchased by the ONEWEST Defendants suppressed material facts relating thereto as set forth above. The enterprise purchased by the ONEWEST Defendants knew that the mortgages would be "pooled," and "securitized sale."

249.    The enterprise purchased by the ONEWEST Defendants also knew that within a foreseeable period, its investors would discover that the enterprise's mortgagors could not afford their loans and the result would be foreclosures and economic devastation. It was the movie The Sting in real life, with real lives and with people whose homes were often times their only asset.

250.    The enterprise purchased by the ONEWEST Defendants was more dependent than many of their competitors on selling loans it originated into the secondary mortgage market, an important fact it disclosed to investors. The enterprise expected that the deteriorating quality of the loans that the enterprise was writing, and the poor performance over time of those loans, would ultimately curtail the enterprise's ability to sell those loans in the

- 47 -

COMPLAINT

1    secondary mortgage market.

2        251.    The enterprise purchased by the ONEWEST Defendants misled borrowers,

3    potential borrowers and investors by failing to disclose substantial negative information

4    regarding the enterprise's loan products, including:

5            a.    The increasingly lax underwriting guidelines used by the enterprise in

6                  originating loans;

7            b.    The enterprise's pursuit of a "matching strategy" in which it matched the terms

8                  of any loan being offered in the market, even loans offered by primarily

9                  subprime originators;

10           c.    The high percentage of loans it originated that were outside its own already

11                 widened underwriting guidelines due to loans made as exceptions to guidelines;

12           d.    The enterprise's definition of "prime" loans included loans made to borrowers

13                 with FICO scores well below any industry standard definition of prime credit

14                 quality;

15           e.    The high percentage of the enterprise's subprime originations that had a loan to

16                 value ratio of 100%; and

17           f.    The enterprise's subprime loans had significant additional risk factors, beyond

18                 the subprime credit history of the borrower, associated with increased default

19                 rates, including reduced documentation, stated income, piggyback second liens,

20                 and LTVs in excess of 95%.

21       252.    The enterprise knew this negative information from numerous reports they

22   regularly received and from emails and presentations prepared by the enterprise's chief credit

23   risk officer.  The enterprise nevertheless hid this negative information from the Plaintiffs.

24       253.    Plaintiffs did not know the concealed facts, but advanced money to Defendants

25   at the demand of Defendants throughout all periods up to and including the date of this

26   Complaint.

27       254.    The enterprise intended to deceive Plaintiffs.  As described herein, that deception

28   was essential to their overall plan to bilk investors, trade on inside information and otherwise

- 48 -

COMPLAINT

1   pump the value of the enterprise's stock.

2          255.    The enterprise was one of the nation's leading providers of mortgages.  It was

3   highly regarded and by dint of its campaign of deception through securities filings, press

4   releases, web site and branch offices, the enterprise had acquired a reputation for performance

5   and quality underwriting.  As a result, Plaintiffs reasonably relied upon the deception of the

6   enterprise.

7          256.    As a proximate result of the foregoing concealment by the enterprise, California

8   property values have precipitously declined and continue to decline, gravely damaging

9   Plaintiffs by materially reducing the value of their primary residences, depriving them of access

10  to equity lines, second mortgages and other financings previously available based upon

11  ownership of a primary residence in California, in numerous instances leading to payments in

12  excess of the value of their properties, thereby resulting in payments with no consideration and

13  often subjecting them to reduced credit scores (increasing credit card and other borrowing

14  costs) and reduced credit availability.

15         257.    In fact, property values across the United States of America precipitously

16  declined prior to the ONEWEST Defendants acquiring the tainted mortgage assets and the

17  property values continue to decline, gravely damaging Plaintiffs by materially reducing the

18  value of their primary residences, depriving them of access to equity lines, second mortgages

19  and other financings previously available based upon ownership of their primary residences, in

20  numerous instances leading to payments in excess of the value of their properties, thereby

21  resulting in payments with no consideration and often subjecting them to reduced credit scores

22  (increasing credit card and other borrowing costs) and reduced credit availability

23         258.    The ONEWEST Defendants acquired the mortgages or rights related thereto

24  with knowledge of the fraudulent operations of the enterprise.

25         259.    The ONEWEST Defendants can have no more rights in the mortgage assets than

26  their predecessors.

27         260.    Without limiting the damages as described elsewhere in this Complaint,

28  Plaintiffs damages arising from this Cause of Action also include loss of equity in their houses,

COMPLAINT

1  costs and expenses related to protecting themselves, reduced credit scores, unavailability of

2  credit, increased costs of credit, reduced availability of goods and services tied to credit ratings,

3  increased costs of those services, as well as fees and costs, including, without limitation,

4  attorneys' fees and costs.

5       261.   To this day, the ONEWEST Defendants profess willingness to modify Plaintiffs'

6  loans in accordance with law, but nonetheless they persist to this day in their secret plan to

7  deprive Plaintiffs of their rights.

8       262.   As a result of the foregoing, Plaintiffs' damages herein are exacerbated by a

9  continuing decline in residential property values and further erosion of their credit records.

10       263.   First the enterprise's concealments as to the pervasive mortgage fraud, and then

11  the ONEWEST Defendants' concealments, both as to the their scheme to profiteer from the

12  mortgage melt-down and as to their purported efforts to resolve loan modifications with

13  Plaintiffs, are substantial factors in causing the harm to Plaintiffs described in this Complaint.

14       264.   Defendants acted outrageously and persistently with actual malice in performing

15  the acts alleged herein and continue to do so.  Accordingly, Plaintiffs are entitled to exemplary

16  and punitive damages in a sum according to proof and to such other relief as is set forth below

17  in the section captioned Prayer for Relief which is by this reference incorporated herein.

18       265.   Inclusive of all compensatory, special and exemplary damages, as well as

19  inclusive of costs and attorneys' fees, each Plaintiff herein is entitled to recover and seeks to

20  recover no more than $70,000 in total.

21

22  **SECOND CAUSE OF ACTION**

23  **(By All Plaintiffs –Intentional Misrepresentation – Against the ONEWEST Defendants)**

24       266.   Paragraphs 1 through 141 are hereby incorporated by reference as though fully

25  set forth herein.

26       267.   From 2005 through 2007, the enterprise purchased by the ONEWEST

27  Defendants misled the public, including Plaintiffs, by falsely assuring them that the enterprise

28  was primarily a prime quality mortgage lender which had avoided the excesses of its

- 50 -

COMPLAINT

competitors. As described herein with specific examples, affirmative misrepresentations and material omissions permeated the enterprise's website, customer and investor materials, required securities filings and presentations.

268. The enterprise purchased by the ONEWEST Defendants underwent unprecedented expansion by, among other things, aggressively making loans which were unsupported by documents, pushed through impotent loan committees, and taken by unworthy borrowers who were destined to be unable to repay the loans at the time the loans were made.

269. The enterprise purchased by the ONEWEST Defendants never disclosed or explained their aggressive business model which was built on making these loans which were destined to become non-performing assets.

270. The enterprise purchased by the ONEWEST Defendants never made any disclosures in its Forms 10-Q or 10-K for 2005, 2006, or 2007 about the unprecedented expansion of its underwriting guidelines. Instead, the enterprise purchased by the ONEWEST Defendants made public statements from 2005 through 2007 that were intended to mislead Plaintiffs about the increasingly aggressive underwriting at the enterprise and the financial consequences of those widened underwriting guidelines.

271. Nothing disclosed or provided by the enterprise purchased by the ONEWEST Defendants informed Plaintiffs that the enterprise included in its prime category loans with FICO scores below 620. Nor did the enterprise purchased by the ONEWEST Defendants inform Plaintiffs that the "prime non-conforming" category included loan products with increasing amounts of credit risk, such as (1) reduced and/or no documentation loans; (2) stated income loans; or (3) loans with loan to value or combined loan to value ratios of 95% and higher. Finally, the enterprise purchased by the ONEWEST Defendants did not disclose that enterprise's riskiest loan product, the Pay-Option ARM, was classified as a "prime loan."

272. The enterprise purchased by the ONEWEST Defendants made affirmative misleading public statements in addition to those in the periodic filings that were designed to falsely reassure Plaintiffs about the nature and quality of the enterprise's underwriting.

273. Specifically, the enterprise purchased by the ONEWEST Defendants repeatedly

- 51 -

COMPLAINT

1  emphasized the enterprise's underwriting quality in public statements from 2005 through 2007.

2      274.   The growing network of branches, loan offices, and outside originators

3  ("Network") feeding the enterprise purchased by the ONEWEST Defendants participated in

4  making the loans and knowingly and intentionally assisted in drafting the false and misleading

5  statements delivered to the public, including Plaintiffs herein.

6      275.   The foregoing misrepresentations were made with the intention that Plaintiffs

7  rely thereon.  It was important to the enterprise purchased by the ONEWEST Defendants that

8  Plaintiffs rely on its misrepresentations so that Plaintiffs would come to a false understanding

9  as to the nature of the enterprise.  The foregoing misrepresentations were specifically intended

10  to convince Plaintiffs to take mortgages from the enterprise.

11      276.   The campaign of misinformation succeeded.  Plaintiffs relied upon the

12  misrepresentations and entered into mortgages with the enterprise purchased by the ONEWEST

13  Defendants and Plaintiffs have continued to be burdened and to make payments on said

14  mortgages.

15      277.   By reason of the prominence of the enterprise purchased by the ONEWEST

16  Defendants, the campaign of deception as to its business plans and the relationship of trust

17  developed between the enterprise purchased by the ONEWEST Defendants and Plaintiffs,

18  Plaintiffs were justified in relying upon the enterprise's representations.

19      278.   The aforementioned Network supporting the enterprise purchased by the

20  ONEWEST Defendants and other representatives of the enterprise cooperated with each other

21  to plan and implement the scheme described herein.

22      279.   The Network participated in developing the misrepresentations to borrowers,

23  including Plaintiffs herein and to investors.  They shared in the financial benefits of the scheme

24  and ratified and approved of the material steps therefore taken by the other Defendants.

25      280.   Conversely, the Defendants other than the ONEWEST Defendants approved of,

26  ratified and shared in the fees and other revenue received by the Network arising from its

27  participation in the scheme.  The ONEWEST Defendants in 2009 approved of, ratified and are

28  now seeking to profit from this same scheme through the acquisition at a discount of tainted

- 52 -

COMPLAINT

1    mortgages that it is seeking to enforce as if they were not tainted.

2        281.    As a result of relying upon the foregoing misrepresentations, each Plaintiff
3    entered into a mortgage contract with the enterprise purchased by the ONEWEST Defendants
4    and each Plaintiff has continued to be economically burdened by these mortgage contracts
5    notwithstanding that they have been continually defrauded in entering into the contracts all as
6    set forth above.

7        282.    In fact, the appraisals were inflated.  The enterprise purchased by the
8    ONEWEST Defendants did not utilize quality underwriting processes.  The enterprise's
9    financial condition was not sound, but was a house of cards ready to collapse, as the enterprise
10   well knew, but Plaintiffs did not.  Further, Plaintiffs' mortgages were not refinanced with fixed
11   rate mortgages and neither the enterprise nor any of the Defendants ever intended that they
12   would be.

13       283.    As a result of the scheme described herein, Plaintiffs could not afford the
14   mortgages when the variable rate features and/or balloon payments kicked in.

15       284.    Further, as a result of the scheme, Plaintiffs could not refinance or sell their
16   residence without suffering a loss of their equity investments.

17       285.    As a result of the foregoing, Plaintiffs have lost all or a substantial portion of the
18   equity invested in their houses and suffered reduced credit ratings and increased borrowing
19   costs, among other damages described herein.

20       286.    The ONEWEST Defendants seek to enforce the mortgages irrespective of this
21   massive fraud.

22       287.    The ONEWEST Defendants acquired the mortgages or rights related thereto
23   with knowledge of the fraudulent operations of the enterprise.

24       288.    The ONEWEST Defendants can have no more rights in the mortgage assets than
25   their predecessors.

26       289.    Plaintiffs' reliance on the misrepresentations of the enterprise purchased by the
27   ONEWEST Defendants, appraisers and the other Defendants, all ratified by the Defendants,
28   and was a substantial factor in causing Plaintiffs' harm.

- 53 -

COMPLAINT

1   290.   The ONEWEST Defendants represented to multiple Plaintiffs that they would be
2   assisted by the ONEWEST Defendants in a loan modification. As described herein, that
3   representation was false. Defendants knew that representation was false when they made it.
4   291.   Because of new laws pertaining to loan modifications and the ONEWEST
5   Defendants' insistence that they had a genuine interest in complying therewith and in keeping
6   borrowers in their homes, Plaintiffs reasonably relied on the representations.
7   292.   By delaying Plaintiffs from pursuing their rights and by increasing Plaintiffs'
8   costs and the continuing erosion of each Plaintiff's credit rating, each Plaintiff's reliance
9   harmed that Plaintiff, further eroding values in furtherance of the ONEWEST Defendants'
10  scheme.
11  293.   Without limiting the damages as described elsewhere in this Complaint,
12  Plaintiffs damages arising from the matters complained of in this Cause of Action also include
13  loss of equity in their houses, costs and expenses related to protecting themselves, reduced
14  credit scores, unavailability of credit, increased costs of credit, reduced availability of goods
15  and services tied to credit ratings, increased costs of those services, as well as fees and costs,
16  including, without limitation, attorneys' fees and costs.
17  294.   Plaintiffs' reliance on the representations made by the enterprise purchased by
18  the ONEWEST Defendants and then by the ONEWEST Defendants was a substantial factor in
19  causing Plaintiffs' harm.
20  295.   Plaintiffs are entitled to such relief as is set forth in this Cause of Action and
21  such further relief as is set forth below in the section captioned Prayer for Relief which is by
22  this reference is incorporated herein as though fully set forth at length. Inclusive of all
23  damages, all costs, all attorneys fees and all exemplary damages, each Plaintiff is entitled to a
24  sum not exceeding $70,000 as compensation for Defendants' wrongful acts.
25  ///
26  ///
27  ///
28  ///

**THIRD CAUSE OF ACTION**

**(By All Plaintiffs – Negligent Misrepresentation – Against All ONEWEST Defendants)**

296.    Paragraphs 1 through 171 are hereby incorporated by reference as though fully set forth herein.

297.    Although the enterprise purchased by the ONEWEST Defendants and other members of the Network may have reasonably believed some or all of the representations they made, described in this Complaint, were true, none of them had reasonable grounds for believing such representations to be true at the time: (a) the representations were instructed to be made, as to those Defendants instructing others to make representations, or (b) at the time the representations were made, as to those Defendants making representations and those Defendants instructing others to make the representations, or (c) at the time the representations were otherwise ratified by the Defendants.

298.    Such representations, fully set forth in the First and Second Causes of Action and previous sections of this Complaint, were not true.

299.    The enterprise purchased by the ONEWEST Defendants, including the Defendants making representations, intended that Plaintiffs rely upon those misrepresentations.

300.    As described herein, Plaintiffs reasonably relied on those representations.

301.    By reason of the prominence of the enterprise purchased by the ONEWEST Defendants and the campaign of deception as to its business plans and the relationship of trust developed between the enterprise and Plaintiffs, Plaintiffs were justified in relying upon the enterprise's and Defendants' representations.

302.    As a result of relying upon the foregoing misrepresentations, each Plaintiff entered into a mortgage contract with the enterprise purchased by the ONEWEST Defendants.

303.    As a result of scheme described herein, Plaintiffs could not afford his or her mortgage when its variable rate features and/or balloon payments kicked in. Further, as a result of the Defendants continuing scheme, Plaintiffs could not refinance or sell his or her residence without suffering a loss of Plaintiff's equity.

- 55 -

COMPLAINT

1      304.   The ONEWEST Defendants seek to enforce the mortgages irrespective of this

2  massive fraud.

3      305.   The ONEWEST Defendants acquired the mortgages or rights related thereto

4  with knowledge of the fraudulent operations of the enterprise.

5      306.   The ONEWEST Defendants can have no more rights in the mortgage assets than

6  their predecessors.

7      307.   Without limiting the damages as described elsewhere in this Complaint,

8  Plaintiffs damages as a result of the foregoing also include loss of equity in their houses, costs

9  and expenses related to protecting themselves, reduced credit scores, unavailability of credit,

10  increased costs of credit, reduced availability of goods and services tied to credit ratings,

11  increased costs of those services, as well as fees and costs, including, without limitation,

12  attorneys' fees and costs.

13      308.   Plaintiffs are entitled to such relief as is set forth in this Cause of Action and

14  such further relief as is set forth below in the section captioned Prayer for Relief which is by

15  this reference incorporated herein.

16      309.   Inclusive of all compensatory damages, attorneys' fees and costs, each Plaintiff

17  herein is entitled to and seeks recovery of no more than $70,000 for the acts of Defendants

18  alleged herein.

19

20                        **FOURTH CAUSE OF ACTION**

21    **(Injunctive Relief for Violation of Cal. Civil Code § 2923.5 – By Plaintiffs – Against All**

22                            **ONEWEST Defendants)**

23      310.   Paragraphs 1 through 185 are incorporated by reference as though fully set forth

24  herein.

25      311.   Pursuant to California Civil Code, § 2923.5, the Defendants – and each of them

26  – are prohibited by statute from recording a Notice of Default against the primary residential

27  property of any Californian without first making contact with that person as required under §

28  2923.5 and then interacting with that person in the manner set forth in detail under § 2923.5.

1    An exception to this rule of law exists in the event the Defendants are unable with due

2    diligence to contact the property owner.

3    312.    Pursuant to laws and ordinances in jurisdictions other than California, which

4    laws or ordinances are similar to California Civil Code, § 2923.5, whereby certain protections

5    are afforded homeowner borrowers, the Defendants – and each of them – are prohibited by

6    statute from recording a Notice of Default and/or proceeding to institute or initiate foreclosure

7    proceedings against the primary residential property of any homeowner without first making

8    contact with that person as required, and then interacting with that person in the manner set

9    forth in the specific statute or ordinance.

10    313.    With respect to all Plaintiffs in this cause of action, the realty that is the subject

11    hereof was and is their primary residential dwelling.

12    314.    On information and belief, the Defendants, and each of them, caused Notices of

13    Default to be recorded or disseminated against the primary residential properties of the

14    California Plaintiffs named in this cause of action absent compliance with California Civil

15    Code, § 2923.5.  Included in the noncompliance, Defendants, and each of them, caused

16    declarations to be recorded in the public records that were – each of them – false.  This act also

17    violates § 2923.5 and other California laws precluding the filing of false statements.

18    315.    The Defendants, and each of them, caused Notices of Default to be recorded

19    and/or initiated foreclosure proceedings against the primary residential properties of the Non-

20    California Plaintiffs named in this cause of action absent compliance with State specific laws,

21    statutes, or ordinances.  Included in the noncompliance, Defendants, and each of them, caused

22    declarations to be recorded in the public records that were – each of them – false.  This act also

23    violates other laws precluding the filing of false statements

24    316.    Plaintiffs are entitled to such relief as is set forth in this Cause of Action and

25    such further relief as is set forth below in the section captioned Prayer for Relief which is by

26    this reference is incorporated herein as though fully set forth at length.

27    ///

28    ///

COMPLAINT

# FIFTH CAUSE OF ACTION

### (By All Plaintiffs – Unfair Competition – Against All ONEWEST Defendants)

317.    Paragraphs 1 through 192 are incorporated by reference as though fully set forth herein.

318.    Defendants' actions in implementing, perpetrating and then extending their fraudulent scheme of inducing Plaintiffs to accept mortgages for which they were not qualified based on inflated property valuations and undisclosed disregard of their own underwriting standards and the sale of overpriced collateralized mortgage pools, all the while knowing that the plan would crash and burn, taking the Plaintiffs down and costing them the equity in their homes and other damages, violates numerous federal and state statutes and common law protections enacted for consumer protection, privacy, trade disclosure, and fair trade and commerce.

319.    The enterprise first perpetrated this fraudulent scheme of selling off overpriced loans by making willful and inaccurate credit disclosures regarding borrowers, including Plaintiffs, to third parties.  This false credit disclosure was critical to the success of Defendants' continued sales of the massive pools of mortgage loans necessary to perpetuate the scheme.

320.    The ONEWEST Defendants extended this fraud in connection with their scheme to acquire these assets at deflated values, knowing the fraud that had been committed, but with the specific intent to seek to attempt to enforce the mortgages as sound and legitimate instruments.

321.    The enterprise was first aware that if the true credit profiles of the borrowers and the values of their real estate were accurately disclosed, the massive fraudulent scheme would end.  As a result, the enterprise repeated, reinforced and embellished their false disclosures.

322.    The ONEWEST Defendants were aware of the fraudulent scheme that had been perpetrated by the enterprise whose assets and operations it was acquiring.

323.    The enterprise knew the borrowers' credit was inadequate to support continued loan payments, absent unsustainable inflation of property values.  These pervasive false credit disclosures to third parties (including purchasers of bundled mortgage pools created by the

- 58 -

COMPLAINT

1  Defendants) constituted false credit reports in violation of the Fair Credit Reporting Act, 15

2  U.S.C. §§ 1681 et seq. and these pervasive false disclosures permitted the Defendants to

3  continue their scheme and victimize the Plaintiffs.

4       324.    These pervasive false disclosures also caused the bubble to burst.  Once it

5  became known that some of the information provided by the enterprise was false, the market

6  for the sale of bundled loans dried up.  Notwithstanding their knowledge of the fraudulent

7  nature of the assets they were seeking to enforce, the ONEWEST Defendants began to issue

8  foreclosure notices, property values continued to drop, and then, under the weight of deflation

9  in a market that requires inflation, the equity investments made by Plaintiffs and others in their

10  homes was lost. . . . and then Plaintiffs were lost in the greatest economic recession since the

11  1930s.

12       325.    The foregoing violations were in furtherance of the fraud perpetrated on

13  Plaintiffs.  In fact, the enterprise could not have told the truth in their public filings without that

14  truth becoming known to Plaintiffs.

15       326.    Conversely, the false filings gave additional credence and support to omissions,

16  concealment, promises and inducements.  The ONEWEST Defendants knew of all of these

17  violations of law in acquiring the tainted assets and operations and then in seeking to enforce

18  these mortgage obligations, when the ONEWEST Defendants knew of these meritorious

19  defenses.

20       327.    The forgoing fraudulent concealment, material misstatements, and the

21  intentional violations of state and federal statutes cited herein constitute unlawful, unfair and

22  fraudulent business acts or practices and so constitute unfair business practices within the

23  meaning of the California Unfair Practices Act.  Cal. Bus. & Prof. Code §§ 17200, 17500.

24  Sections 17200 et seq. of the California Business & Professions Code provides, in the

25  disjunctive, for liability in the event of any such "unlawful, unfair or fraudulent business act or

26  practice."

27       328.    The violations described herein are unlawful under numerous state and federal

28  laws forming a reality that the violations are a basis for liability under § 17200 of the Business

- 59 -

COMPLAINT

1    and Professions Code, as is the unlawful and fraudulent activity described herein.

2        329.    The actions described herein are unfair and patently fraudulent in that they were

3    conducted for the specific purposes of first perpetuating an unlawful and unsustainable

4    investment scheme and then perpetrating a fraudulent foreclosure and confiscatory scheme.

5        330.    As a result of the actions, concealment and deceit described herein, each of the

6    Plaintiffs has suffered material financial injury in fact, including as described elsewhere in this

7    Complaint, loss of equity in their houses, costs and expenses related to protecting themselves,

8    reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of

9    goods and services tied to credit ratings, increased costs of those services, as well as fees and

10   costs, including, without limitation, attorneys' fees and costs.

11       331.    As a further result of the actions, concealment and deceit described herein, each

12   of the Plaintiffs has lost money or property as a result of such unfair competition.

13       332.    California Civil Code § 2923.5 requires that each mortgagee, trustee,

14   beneficiary, or authorized agent may not file a notice of default pursuant to California Civil

15   Code § 2924 until 30 days after initial contact is made as required therein, or 30 days after

16   satisfying the due diligence requirements to contact the mortgage described therein.

17       333.    Defendants violated the foregoing law by causing a notice of default to be filed

18   against Plaintiffs without the mandatory notice.  Defendants did not diligently endeavor to

19   contact the Plaintiffs as required by § 2923.5(g) and Defendants thereby also violated

20   California Civil Code §§ 2923.5 and 2924.

21       334.    As a result of the foregoing unlawful conduct, Plaintiffs suffered further injury

22   in fact by the filing of notices of default and as such the Plaintiffs suffered monetary and

23   property loss.

24       335.    Such injuries and loss included diminished credit scores with a concomitant

25   increase in borrowing costs and diminished access to credit, fees and costs, including, without

26   limitation, attorneys' fees and costs with respect to wrongful notices of default and loss of some

27   or all of the benefits appurtenant to the ownership and possession of real property.

28       336.    The foregoing unlawful activities were pervasive and violate Business and

- 60 -

COMPLAINT

Professions Code §§ 17200 et seq.

337.   As a result of Defendants' unfair competition, Plaintiffs are entitled to restitution for all sums received by Defendants with respect to Defendants' unlawful and/or unfair and/or fraudulent conduct, including, without limitation, interest payments made by Plaintiffs, fees paid to Defendants, including, without limitation, the excessive fees paid at Defendants' direction, premiums received upon selling the mortgages at an inflated value and moneys received from government agencies for "losses" incurred by Defendants.

338.   Plaintiffs are also entitled to the issuance of a temporary restraining order, a preliminary injunction, and a permanent injunction restraining and enjoining Defendants from any further concealment with respect to the sale or enforcement of notes and mortgages, or any of the other misconduct set forth above.

339.   Each of the enterprise whose assets ONEWEST purchased has an affirmative burden to ascertain verify and prove, among other things, the identity, source, character, origin, and legitimacy of the funds which they controlled, handled, and/or facilitated in its transactions.

340.   Plaintiffs are informed and believe and hereon allege that none of the enterprise whose assets ONEWEST purchased or can comply with the strict rules imposed by the PATRIOT ACT, that both the enterprise whose assets ONEWEST purchased and the ONEWEST Defendants have acted in direct violation of these laws, and that the ONEWEST Defendants must forfeit any and all claims, liens, encumbrances, debts, or obligations from others in accordance with the provisions of California's unfair competition law.

341.   Plaintiffs are entitled to such injunctive and restitutional relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein as though fully set forth at length.

///

///

///

///

- 61 -

COMPLAINT

**SIXTH CAUSE OF ACTION**

**(By All Plaintiffs – Breach of Contract – Against All ONEWEST Defendants)**

218. Paragraphs 1 through 217 are incorporated by reference as though fully set forth herein.

219. Defendants' acceptance of TARP money created an obligation to modify loans outstanding on Plaintiffs' real estate to the extent Defendants were pronouncing rights thereto, to assist borrowers, and to otherwise use the TARP funds for the benefit of, among others, the Plaintiffs herein.

220. In fact, the Plaintiffs are intended third party beneficiaries of the contracts between ther United States Government, certain intermediaries and the Defendants.

221. Defendants, and each of them, breached their contractual obligations to Plaintiffs as set forth herein. Defendants further breached the contractual obligations owing to each Plaintiff in the manners alleged hereinabove.

222. As a proximate and foreseeable result of said breaches of contract, Plaintiffs have been damaged in a sum according to proof, which – inclusive of all damages, costs, and attorneys' fees – is equal to or less than $70,000 for each Plaintiff herein.

223. Plaintiffs are entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein as though fully set forth at length.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1. General and special damages according to proof under the First, Second, Third and Sixth Causes of Action, in the sums set forth hereinabove;

2. Declaratory relief voiding the notes and mortgages of Plaintiffs held or serviced by the Defendants and temporary, preliminary, and permanent injunctive relief under the First, Second, Fourth, Fifth and Sixth Causes of Action.

3.    Statutory relief according to proof under the Fifth Cause of Action;

4.    Restitution according to proof under the Fifth Cause of Action;

5.    Temporary, preliminary, and permanent injunctive forfeiture relief under all causes of action;

6.    On all causes of action, for costs of suit herein;

7.    On all causes of action, for pre- and post-judgment interest;

8.    On all causes of action for which attorney's fees may be awarded pursuant to the governing contract, by statute or otherwise, reasonable attorneys fees; and

9.    On all causes of action, for such other and further relied as this Court may deem just and proper so that each Plaintiff shall recover no more than $70,000 in restitutionary or compensatory damages and so that each Plaintiff shall receive a judicial determination that the mortgage lien alleged to exist against their particular property is null and void *ab initio*.

Dated: March ___, 2011        By: _____

Philip A. Kramer
KRAMER & KASLOW
Attorneys for Plaintiffs

- 63 -

COMPLAINT

# EXHIBIT 3

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

FEB 24 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
KRYSTAL KIZER

|  |  |
|---|---|
| ANTONIO MARQUETTE, ET AL. | Case No.:  BC452266 |
| Plaintiffs | **INITIAL STATUS CONFERENCE ORDER** |
| VS. | Complex Litigation Program |
| ONEWEST BANK GROUP LLC, ET AL. | The Honorable William F. Highberger |
| Defendants | Department 307 |

An Initial Status Conference is set for <u>March 25, 2011</u> at <u>10:00 a.m.</u> in Department 307, Central Civil West Courthouse, located at 600 S. Commonwealth Avenue, Los Angeles, CA 90005.  Counsel for all parties are ordered to attend the Initial Status Conference.

To facilitate the orderly conduct of discovery and motions brought before this court, no responsive pleadings or motions may be filed prior to the Initial Status Conference and all discovery (including the time to respond to pending discovery demands) is stayed.  This stay is not intended to preclude the parties from exchanging documents and information informally to assist the initial evaluation process. Parties should file a Notice of Appearance in lieu of an answer or other responsive pleading.  Nothing herein stays the time for filing an affidavit of prejudice pursuant to Code of Civil Procedure Section 170.6.

Prior to the Initial Status Conference, counsel for all parties are ordered to meet and confer in person (no later than ten (10) days before the Conference) and discuss the following areas. Additionally, counsel shall be prepared to discuss these issues with this court at the Initial Status Conference.

- 1 –

INITIAL STATUS CONFERENCE ORDER

1.    Parties and the addition of parties;

2.    Claims and defenses;

3.    Consideration of any issues of recusal or disqualifications;

4.    Issues of law that, if considered by the court, may simplify or further resolution of the case;

5.    Appropriate alternative dispute resolution (ADR) mechanisms (e.g., mediation, mandatory settlement conference, arbitration, mini-trial, etc.);

6.    A plan for preservation of evidence;

7.    A plan for disclosure and discovery;

8.    Whether it is possible to plan "staged discovery" so that information needed to conduct meaningful ADR is obtained early in the case, allowing the option to complete discovery if the ADR effort is unsuccessful;

9.    A target trial date;

10.   Whether a structure of representation such as liaison/lead counsel is appropriate for the case in light of multiple plaintiffs and/or multiple defendants;

11.   Procedures for the drafting of a Case Management Order, if appropriate;

12.   Any issues involving the protection of evidence and confidentiality;

13.   The handling of any potential publicity issues;

14.   The creation of a single master file for the litigation to eliminate the need for multiple filings of similar documents when related cases have common parties; and

15.   Whether it is appropriate to reduce the number of parties upon whom service of documents must be made.

Counsel for plaintiff is to take the lead in preparing a Joint Initial Status Conference Report to be filed three (3) court days prior to the Initial Status Conference.  It shall address:

1.    A list of all parties and counsel;

- 2 -

INITIAL STATUS CONFERENCE ORDER

2.    A statement as to whether additional parties are likely to be added and a proposed date by which all parties much be served;

3.    An outline of the claims and cross-claims and the parties against whom each claim is asserted;

4.    Service lists and procedures for efficient service filing;

5.    Whether any issues of jurisdiction or venue exist that might affect this court's ability to proceed with this case;

6.    Applicability and enforceability of arbitration clauses;

7.    A list of all related litigation pending in other courts, a brief description of any such litigation, and a statement as to whether any additional related litigation is anticipated;

8.    A description of core factual and legal issues;

9.    A description of legal issues that, if decided by the court, may simplify or further resolution of the case;

10.    Whether discovery should be conducted in phases or limited; and if so, the order of phasing or types of limitations on discovery;

11.    Any issues which need to be addressed regarding discovery of electronically stored information;

12.    Whether particular documents relevant to the case can be exchanged by agreement of the parties.  Whether information concerning relevant witnesses can be exchanged by agreement of the parties.

13.    The parties' tentative views on an ADR mechanism and how such mechanism might be integrated into the course of the litigation;

14.    For insurance coverage cases and construction defect cases, an insurance coverage chart listing all insurance, including the names of the insured and insurance company, effective dates of the policy, policy limits, amount of monies

- 3 -

INITIAL STATUS CONFERENCE ORDER

1    previously paid out on the policy, whether the policy limits have been exhausted,

2    and whether the policy is primary, umbrella, etc;

3    15.    A proposed discovery cut-off date; and

4    16.    A target date and a time estimate for trial.

5    To the extent the parties are unable to agree, the positions of each party or of various

6    parties shall be set forth separately in the Joint Report.

7    Counsel are reminded of their responsibility to file a notice of related cases pursuant to

8    California Rule of Court 3.300(b) and Los Angeles County Superior Court Rule 7.3(f).  Related

9    cases include cases pending in other counties and in Federal Court.  (*See* California Rule of

10    Court 3.300(b).)  These rules establish a duty that continues throughout the course of the

11    litigation.  (*See, e.g.,* California Rule of Court  3.300(f).)

12

13    IT IS SO ORDERED.

14                                                    WILLIAM F. HIGHBERGER

15    DATED: 2/24/11                    _____

16                                                    WILLIAM F. HIGHBERGER
                                                     Judge of the Superior Court

17

18

19

20

21

22

23

24

25

- 4 -

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/24/11                                                        DEPT. 307

HONORABLE WILLIAM F. HIGHBERGER   JUDGE   K. KRYSTKIEWICZ   DEPUTY CLERK

HONORABLE                         JUDGE PRO TEM   ELECTRONIC RECORDING MONITOR
#10
        R. SANCHEZ, C.A.   Deputy Sheriff   NONE                     Reporter

3:30 pm | BC452266                    Plaintiff
                                      Counsel
         ANTONIO MARQUETTE ET AL                  NO APPEARANCES
         VS                           Defendant
         ONEWEST BANK GROUP LLC ET AL Counsel

         R/T (LEAD CASE) BC452262,BC4522
         (DEEMED COMPLEX) 1/18/11

---

**NATURE OF PROCEEDINGS:**

COURT ORDER RE RELATED CASES;

COURT ORDER SETTING INITIAL STATUS CONFERENCE

After review of the files, the Court finds that
Los Angeles Superior Court cases:

(1)  BC452262   (Carlson, et al. vs. JP Morgan Chase
                 Bank, N.A., et al.)

(2)  BC452263   (Locker, et al. vs. Ally Bank, N.A., {remanded}
                 et al.)

(3)  BC452264   (Nelson, et al. vs. Wells Fargo Bank,
                 N.A., et al.)

(4)  BC452265   (Wagner, et al. vs. Citibank
                 Corporation, et al.)

(5)  BC452266   (Marquette, et al. vs. OneWest Bank
                 Group LLC, et al.)

are all related within the meaning of Los Angeles
Superior Court Local Rule 7.3(f), with BC452262
designated as the lead case.

Newly related cases BC452262, BC452263, BC452264,
BC452265 and BC452266 have been previously designated

                   Page  1 of  3   DEPT. 307

┌─────────────────────────┐
│ **MINUTES ENTERED**     │
│ 02/24/11                │
│ **COUNTY CLERK**        │
└─────────────────────────┘

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | | |
|---|---|---|---|
| DATE: 02/24/11 | | | **DEPT.** 307 |
| HONORABLE WILLIAM F. HIGHBERGER | JUDGE | K. KRYSTKIEWICZ | DEPUTY CLERK |
| HONORABLE #10 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| R. SANCHEZ, C.A. | Deputy Sheriff | NONE | Reporter |

| | | | |
|---|---|---|---|
| 3:30 pm | BC452266 | Plaintiff Counsel | NO APPEARANCES |
| | ANTONIO MARQUETTE ET AL VS ONEWEST BANK GROUP LLC ET AL | Defendant Counsel | |
| | R/T (LEAD CASE) BC452262,BC4522 (DEEMED COMPLEX) 1/18/11 | | |

**NATURE OF PROCEEDINGS:**

complex and are ordered transferred and reassigned to Judge William F. Highberger in Department 307, Central Civil West Courthouse, for all further purposes.

Pursuant to Government Code section 70616(c), each party is ordered to pay $550.00 for complex fees, payable to Los Angeles Superior Court within ten (10) calendar days from this date.

All hearings previously set in Departments 28, 19, 54, 45 and 62 Stanley Mosk Courthouse, are advanced to this date and vacated.

This Court sets an Initial Status Conference on March 25, 2011, at 10:00 a.m. in Department 307.

The Court makes further orders pursuant to the "Initial Status Conference Order" as signed and filed this date.

Counsel for plaintiffs is to serve a copy of this minute order as well as the attached "Initial Status Conference Order" on all parties and file proof thereof directly in Department 307.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the

Page   2 of   3   DEPT. 307

MINUTES ENTERED
02/24/11
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 02/24/11 | **DEPT.** 307 |

| | | | |
|---|---|---|---|
| HONORABLE WILLIAM F. HIGHBERGER | JUDGE | K. KRYSTKIEWICZ | DEPUTY CLERK |
| HONORABLE #10 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| R. SANCHEZ, C.A. | Deputy Sheriff | NONE | Reporter |

| | | | |
|---|---|---|---|
| 3:30 pm | BC452266<br><br>ANTONIO MARQUETTE ET AL<br>VS<br>ONEWEST BANK GROUP LLC ET AL<br><br>R/T (LEAD CASE) BC452262,BC4522<br>(DEEMED COMPLEX) 1/18/11 | Plaintiff<br>Counsel<br><br>Defendant<br>Counsel | NO APPEARANCES |

**NATURE OF PROCEEDINGS:**

above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
02/24/11 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: February 24, 2011

John A. Clarke, Executive Officer/Clerk


By: _____
    K. Krystkiewicz, Deputy


PHILIP A. KRAMER, ESQ.
KRAMER & KASLOW               2010
23901 CALABASAS ROAD, SUITE ████
CALABASAS, CA  91302


Page   3 of  3   DEPT. 307

```
MINUTES ENTERED
02/24/11
COUNTY CLERK
```

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Philip A. Kramer 113969<br>KRAMER & KASLOW<br>23901 Calabasas Road, Suite 2010<br>Calabasas, California 91302<br><br>TELEPHONE NO.:(818) 224-3900    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* ANTONIO MARQUETTE, et al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS:600 South Commonwealth Avenue
MAILING ADDRESS:
CITY AND ZIP CODE:Los Angeles, 90005
BRANCH NAME:Central Courthouse West

PETITIONER/PLAINTIFF:ANTONIO MARQUETTE, et al.

RESPONDENT/DEFENDANT:ONEWEST BANK GROUP, LLC, et al.

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER:<br>BC452266 |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1.  I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2.  My residence or business address is:
    23901 Calabasas Road, Suite 2006
    Calabasas, California 91302

3.  On *(date):*3/25/2011    I mailed from *(city and state):* Calabasas, California
    the following **documents** *(specify):*
    Initial Status Conference Order
    Minute Order

    ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4.  I served the documents by enclosing them in an envelope and *(check one):*
    a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
    b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5.  The envelope was addressed and mailed as follows:
    a. **Name** of person served:J. Kevin Snyder, DYKEMA GOSSETT LLP
    b. **Address** of person served:
        333 South Grand Avenue, Suite 2100
        Los Angeles, California 90071

    ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3/25/2011

Seth P. Cox
_____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)

▶ _____
(SIGNATURE OF PERSON COMPLETING THIS FORM)

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-030 [New January 1, 2005] | **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**<br>**(Proof of Service)** | Code of Civil Procedure, §§ 1013, 1013a<br>*www.courtinfo.ca.gov* |
|---|---|---|

ORIGINAL

1          EDWARD A. TREDER
             State Bar No. 116307
2     BARRETT DAFFIN FRAPPIER
         TREDER & WEISS, LLP
3   20955 Pathfinder Road, Suite 300
      Diamond Bar, California 91765
4       (626) 915-5714 – Phone
         (626) 915-0289 – Fax
5       EdwardT@BDFGroup.com
6      File No. 20090159910880

7   Attorneys for Defendant NDeX WEST, LLC

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 14 2011

John A. Clarke, Executive Officer/Clerk
BY _Linda Delos Santos_, Deputy
L. Delos Santos

8      SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             COUNTY OF LOS ANGELES

10

11   ANTONIO MARQUETTE, an individual;
     MARIA G. ANZALDO, an individual;
12   GUILLERMO ANZALDO, an individual;
     ARTEMO B. ROQUE, JR, an individual; PEDRO
13   HERNANDEZ, an individual; GABRIELA
     HERNANDEZ, an individual; MARGARITO
14   PEREZ, an individual; JERRY HERNANDEZ, an
     individual; DAT THANH NGO, an individual;
15   ZAVEN ZARDARAYAN, an individual; DANA
     HORITA, an individual; KEVIN R. WESTOVER,
16   an individual; KATHERINE WESTOVER, an
     individual; and others similarly situated named
17   herein as ROES 1 through 10,000, inclusive,
18
19                    Plaintiffs,
20     vs.
21   ONEWEST BANK GROUP LLC, a limited
     liability company; ONEWEST BANK, FSB, a
22   Delaware corporation; SCOTT VAN DELLEN, an
     individual; RICHARD KOON, an individual;
23   NDEX WEST LLC, a Limited Liability Company;
     LPS DEFAULT & TITLE CLOSING, a business
24   entity form unknown; PRIORITY POSTING &
     PUBLICATION, a California corporation; and
25   DOES 1-1000, inclusive,
26
27                   Defendants.
28

CASE NO. BC452266

UNLIMITED CIVIL

ASSIGNED FOR ALL PURPOSES TO:
HON. WILLIAM F. HIGHBERGER, DEPT. 307

NOTICE OF FILING OF DECLARATION
OF NON-MONETARY STATUS

*(Cal. Civ. Code §2924l)*

TO:    ALL INTERESTED PARTIES; AND

TO:    THEIR ATTORNEYS OF RECORD:

YOU ARE HEREBY NOTIFIED that Defendant NDeX WEST, LLC has filed a Declaration of Non-Monetary Status in the above-captioned action or proceeding as authorized by *California Civil Code §2924l(a)*. A true and correct copy of its Declaration of Non-Monetary Status is attached hereto as Exhibit "1" and incorporated herein by this reference.

YOU ARE FURTHER NOTIFIED that, in accordance with *California Civil Code §2924l(c)*, any parties who have appeared in the above-captioned action or proceeding shall have fifteen (15) days from the service of the Declaration of Non-Monetary Status in which to file and serve written objections to the non-monetary status of said defendant. Any written objections shall set forth the factual basis on which the objections are based and shall be served upon the undersigned counsel for said defendant. During the time for filing written objections, the time within which Defendant NDeX WEST, LLC is required to file a responsive pleading to Plaintiffs' Complaint shall be tolled in accordance with the provisions of *California Civil Code §2924l(f)*.

YOU ARE FURTHER NOTIFIED that, in accordance with *California Civil Code §2924l(d)*, if no timely written objections are filed and served, Defendant NDeX WEST, LLC shall not be subject to any monetary awards as and for damages, attorneys fees or costs, shall be required to respond to any discovery requests as a nonparty and shall be bound by any court order relating to the deed of trust that is the subject of the action or proceeding.

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP

Dated: March 11, 2011                    By: _____
                                         EDWARD A. TREDER, Attorneys for
                                         Defendant NDeX WEST, LLC

# EXHIBIT 1

1

EDWARD A. TREDER
State Bar No. 116307
BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP
20955 Pathfinder Road, Suite 300
Diamond Bar, California 91765
(626) 915-5714 – Phone
(626) 915-0289 – Fax
EdwardT@BDFGroup.com
File No. 20090159910880

2

3

4

5

6

7

Attorneys for Defendant NDeX WEST, LLC

8

SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

COUNTY OF LOS ANGELES

10

11

ANTONIO MARQUETTE, an individual;
MARIA G. ANZALDO, an individual;
GUILLERMO ANZALDO, an individual;
ARTEMO B. ROQUE, JR, an individual; PEDRO
HERNANDEZ, an individual; GABRIELA
HERNANDEZ, an individual; MARGARITO
PEREZ, an individual; JERRY HERNANDEZ, an
individual; DAT THANH NGO, an individual;
ZAVEN ZARDARAYAN, an individual; DANA
HORITA, an individual; KEVIN R. WESTOVER,
an individual; KATHERINE WESTOVER, an
individual; and others similarly situated named
herein as ROES 1 through 10,000, inclusive,

12

13

14

15

16

17

18

19

Plaintiffs,

20

vs.

21

ONEWEST BANK GROUP LLC, a limited
liability company; ONEWEST BANK, FSB, a
Delaware corporation; SCOTT VAN DELLEN, an
individual; RICHARD KOON, an individual;
NDEX WEST LLC, a Limited Liability Company;
LPS DEFAULT & TITLE CLOSING, a business
entity form unknown; PRIORITY POSTING &
PUBLICATION, a California corporation; and
DOES 1-1000, inclusive,

22

23

24

25

26

Defendants.

27

28

CASE NO. BC452266

UNLIMITED CIVIL

ASSIGNED FOR ALL PURPOSES TO:
HON. WILLIAM HIGHBERGER, DEPT. 307

DECLARATION OF NON-MONETARY
STATUS

*(Cal. Civ. Code §2924l)*

I, EDWARD A. TREDER, declare as follows:

1.     I am an attorney at law, duly admitted to practice before all courts in the State of California, and I am the managing partner of Barrett Daffin Frappier Treder & Weiss, LLP, attorneys for Defendant NDeX WEST, LLC, a named defendant in the above-captioned matter.

2.     By written instrument recorded on August 13, 2008, as Instrument No. 2008-000384644 in the Office of the Orange County Recorder, Defendant NDeX WEST, LLC was duly substituted as foreclosure trustee under that certain Deed of Trust executed by ANTONIO MARQUETTE, a single man, to secure a debt in the original sum of $376,000.00 in favor of Paramount Residential Mortgage Group, Inc., and recorded on June 1, 2006, as Instrument No. 2006000370568, Official Records of Orange County, California.  Said Deed of Trust created a first priority security interest with power of sale against the real property described therein and commonly known as 13838 La Jolla Plaza, Garden Grove, California 92844.

3.     I have reviewed the claims alleged in Plaintiffs' Complaint and the relief requested as to Defendant NDeX WEST, LLC.  Based thereon, Defendant NDeX WEST, LLC knows or maintains a reasonable belief that it has been named as a defendant in the above-captioned action or proceeding solely in its capacity as a foreclosure trustee under said Deed of Trust and that Plaintiffs do not assert any claims for monetary relief against Defendant NDeX WEST, LLC.

4.     Defendant NDeX WEST, LLC reasonably believes that it has not been named as a defendant in the above-captioned action or proceeding due to any acts or omissions on its part in the performance of its duties as foreclosure trustee because the facts alleged in the Complaint relate primarily to a loan origination and/or loan servicing dispute between Plaintiffs, the original mortgage lender, its successor(s)-in-interest and/or the loan servicing agent(s) for such mortgage lender(s).

1  Except for its handling of the non-judicial foreclosure, Defendant NDeX WEST, LLC was <u>not</u>

2  involved in the origination or servicing of the subject mortgage loan.

3

4        5.        Defendant NDeX WEST, LLC agrees to be bound by any non-monetary order or

5  judgment that may be issued by the court regarding said Deed of Trust.

6

7        6.        I have personal knowledge of the foregoing facts, and if called as a witness, I would

8  testify competently thereto.

9

10       I declare under penalty of perjury under the laws of the State of California that the foregoing

11  facts are true and correct.

12       Executed this 11th day of March, 2011 at Diamond Bar, California

13

14

15                                      EDWARD A. TREDER

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE BY MAIL (C.C.P. 1013a, 2015.5)

2

3    STATE OF CALIFORNIA            )
                                    )
4    COUNTY OF LOS ANGELES          )

5

6        I, Ariana Ayala, declare as follows:

7
         I am employed in Los Angeles County, I am over the age of eighteen years and am not a party
8    to the within entitled action; my business address is 20955 Pathfinder Road, Suite 300, Diamond Bar,
     California 91765.
9
         On March 11, 2011, I served the following:
10

11       **NOTICE OF FILING OF DECLARATION OF NON-MONETARY STATUS**

12   on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

13       PHILIP A. KRAMER, ESQ.                    ATTORNEYS FOR PLAINTIFFS
         KRAMER & KASLOW
14       23901 CALABASAS ROAD, SUITE 2013
         CALABASAS, CA. 91302
15

16       I am "readily familiar" with the firm's practice of collection and processing of
     correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service
17   on that same day with postage thereon fully prepaid at Diamond Bar, California, in the ordinary
     course of business. I am aware that on motion of the party served, service is presumed invalid if
18   postal cancellation date or postage meter date is more than one day after the date of deposit for
     mailing affidavit/declaration.
19

20       I declare under penalty of perjury and the laws of the State of California that the foregoing is
     true and correct.
21

22       Executed on March 11, 2011, at Diamond Bar, California.

23

24                                      _____
                                              ARIANA AYALA
25

26

27

28



1      EDWARD A. TREDER
        State Bar No. 116307
2      BARRETT DAFFIN FRAPPIER
        TREDER & WEISS, LLP
3     20955 Pathfinder Road, Suite 300
      Diamond Bar, California 91765
4       (626) 915-5714 – Phone
5        (626) 915-0289 – Fax
       EdwardT@BDFGroup.com
6      File No. 20090159910880

7   Attorneys for Defendant NDeX WEST, LLC

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 14 2011

John A. Clarke, Executive Officer/Clerk
BY *Linda Delos Santos*, Deputy
     L. Delos Santos

8        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF LOS ANGELES

10

11  ANTONIO MARQUETTE, an individual;
     MARIA G. ANZALDO, an individual;
12  GUILLERMO ANZALDO, an individual;
     ARTEMO B. ROQUE, JR, an individual; PEDRO
13  HERNANDEZ, an individual; GABRIELA
     HERNANDEZ, an individual; MARGARITO
14  PEREZ, an individual; JERRY HERNANDEZ, an
     individual; DAT THANH NGO, an individual;
15  ZAVEN ZARDARAYAN, an individual; DANA
     HORITA, an individual; KEVIN R. WESTOVER,
16  an individual; KATHERINE WESTOVER, an
     individual; and others similarly situated named
17  herein as ROES 1 through 10,000, inclusive,

18

19                  Plaintiffs,

20    vs.

21  ONEWEST BANK GROUP LLC, a limited
     liability company; ONEWEST BANK, FSB, a
22  Delaware corporation; SCOTT VAN DELLEN, an
     individual; RICHARD KOON, an individual;
23  NDEX WEST LLC, a Limited Liability Company;
     LPS DEFAULT & TITLE CLOSING, a business
24  entity form unknown; PRIORITY POSTING &
     PUBLICATION, a California corporation; and
25  DOES 1-1000, inclusive,

26

27                  Defendants.

28

CASE NO. BC452266

UNLIMITED CIVIL

ASSIGNED FOR ALL PURPOSES TO:
HON. WILLIAM HIGHBERGER, DEPT. 307

DECLARATION OF NON-MONETARY
STATUS

*(Cal. Civ. Code §2924l)*

I, EDWARD A. TREDER, declare as follows:

1.      I am an attorney at law, duly admitted to practice before all courts in the State of California, and I am the managing partner of Barrett Daffin Frappier Treder & Weiss, LLP, attorneys for Defendant NDeX WEST, LLC, a named defendant in the above-captioned matter.

2.      By written instrument recorded on August 13, 2008, as Instrument No. 2008-000384644 in the Office of the Orange County Recorder, Defendant NDeX WEST, LLC was duly substituted as foreclosure trustee under that certain Deed of Trust executed by ANTONIO MARQUETTE, a single man, to secure a debt in the original sum of $376,000.00 in favor of Paramount Residential Mortgage Group, Inc., and recorded on June 1, 2006, as Instrument No. 2006000370568, Official Records of Orange County, California.  Said Deed of Trust created a first priority security interest with power of sale against the real property described therein and commonly known as 13838 La Jolla Plaza, Garden Grove, California 92844.

3.      I have reviewed the claims alleged in Plaintiffs' Complaint and the relief requested as to Defendant NDeX WEST, LLC.  Based thereon, Defendant NDeX WEST, LLC knows or maintains a reasonable belief that it has been named as a defendant in the above-captioned action or proceeding solely in its capacity as a foreclosure trustee under said Deed of Trust and that Plaintiffs do not assert any claims for monetary relief against Defendant NDeX WEST, LLC.

4.      Defendant NDeX WEST, LLC reasonably believes that it has not been named as a defendant in the above-captioned action or proceeding due to any acts or omissions on its part in the performance of its duties as foreclosure trustee because the facts alleged in the Complaint relate primarily to a loan origination and/or loan servicing dispute between Plaintiffs, the original mortgage lender, its successor(s)-in-interest and/or the loan servicing agent(s) for such mortgage lender(s).

1    Except for its handling of the non-judicial foreclosure, Defendant NDeX WEST, LLC was <u>not</u>

2    involved in the origination or servicing of the subject mortgage loan.

3

4        5.      Defendant NDeX WEST, LLC agrees to be bound by any non-monetary order or

5    judgment that may be issued by the court regarding said Deed of Trust.

6

7        6.      I have personal knowledge of the foregoing facts, and if called as a witness, I would

8    testify competently thereto.

9

10    I declare under penalty of perjury under the laws of the State of California that the foregoing

11    facts are true and correct.

12

13    Executed this 11th day of March, 2011 at Diamond Bar, California

14

15

16                EDWARD A. TREDER

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE BY MAIL (C.C.P. 1013a, 2015.5)

2

3    STATE OF CALIFORNIA          )
                                  )
4    COUNTY OF LOS ANGELES        )

5

6        I, Ariana Ayala, declare as follows:

7
         I am employed in Los Angeles County, I am over the age of eighteen years and am not a party
8    to the within entitled action; my business address is 20955 Pathfinder Road, Suite 300, Diamond Bar,
     California 91765.
9
         On March 11, 2011, I served the following:
10

11              ## DECLARATION OF NON-MONETARY STATUS

12   on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

13       PHILIP A. KRAMER, ESQ.                   ATTORNEYS FOR PLAINTIFFS
         KRAMER & KASLOW
14       23901 CALABASAS ROAD, SUITE 2013
         CALABASAS, CA. 91302
15

16       I am "readily familiar" with the firm's practice of collection and processing of
     correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service
17   on that same day with postage thereon fully prepaid at Diamond Bar, California, in the ordinary
     course of business. I am aware that on motion of the party served, service is presumed invalid if
18   postal cancellation date or postage meter date is more than one day after the date of deposit for
     mailing affidavit/declaration.
19

20       I declare under penalty of perjury and the laws of the State of California that the foregoing is
     true and correct.
21

22              Executed on March 11, 2011, at Diamond Bar, California.

23

24                                        ARIANA AYALA

25

26

27

28

ORIGINAL

1   **McCARTHY & HOLTHUS, LLP**
    James Hester, Esq. (SBN: 122133)
2   Melissa Robbins Coutts, Esq. (SBN: 246723)
    M. Benjamin Susman, Esq. (SBN: 275232)
3   1770 Fourth Avenue
    San Diego, CA 92101
4   Telephone:    (619) 685-4800
    Facsimile:    (619) 685-4811
5   Email:        bsusman@McCarthyHolthus.com

6   Attorneys for Defendant,
    LPS Default Title and Closing, a division of
7   LSI Title Agency, Inc., a subsidary of LSI Title Company,
    Erroneously Sued as LPS Default & Title Closing

8
                **FILED**
                LOS ANGELES SUPERIOR COURT
                MAR 23 2011
                JOHN A. CLARKE, CLERK
                BY R. SANCHEZ, DEPUTY

9           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10          **COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| 11 ANTONIO MARQUETTE, an individual; MARIA G. ANZALDO, an individual; | Case No. BC452266 |
| 12 GUILLERMO ANZALDO, an individual; ARTEMO B. ROQUE, JR., an individual; | |
| 13 PEDRO HERNANDEZ, an individual; GABRIELA HERNANDEZ, an individual; | **PROOF OF SERVICE** |
| 14 MARGARITO PEREZ, an individual; JERRY HERNANDEZ, an individual; DAT | |
| 15 THANINGO, an individual; ZAVEN ZARDARYAN, an individual; DANA | |
| 16 HORITA, an individual; KEVIN R. WESTOVER, an individual; KATHERINE | |
| 17 WESTOVER, an individual; and others similarly situated named herein as ROES 1 | |
| 18 through 10,000, inclusive, | |
| 19                   Plaintiffs, | |
| v. | |
| 20 ONEWEST BANK GROUP LLC, a limited liability company; ONEWEST BANK, FSB, a | |
| 21 Delaware corporation; SCOTT VAN DELLEN, an individual; NDEX WEST, LLC, a Limited | |
| 22 Liability Company; LPS DEFAULT & TITLE CLOSING, a business entity, form, unknwon; | |
| 23 PRIORITY POSTING & PUBLICATION, a california corporation; and DOES 1 through | |
| 24 1000, inclusive, | |
| 25                   Defendants.. | |

By Fax

25          **DECLARATION OF SERVICE**

26

27      I, Brenda Martin, declare:

28

(Left vertical margin:) McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
1770 FOURTH AVENUE
SAN DIEGO, CALIFORNIA, 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4810

1   I am a citizen of the United States and I am employed in the County of San Diego, State of

2   California; I am over the age of 18 years and not a party to this action; my business address is

3   1770 Fourth Avenue, San Diego, California 92101.

4   I further declare that I am readily familiar with the business practice of McCarthy &

5   Holthus, LLP for service of documents, that documents served by facsimile are transmitted in and

6   the original deposited with the United States Postal Service in our ordinary course of business on

7   the same day, the documents served by mail are deposited with the United States Postal Service in

8   the ordinary course of business the same day and that documents served personally are delivered

9   the same day.

10   On March 22, 2011, I served the following document(s):

11   • **LPS DEFAULT TITLE AND CLOSING'S DECLARATION OF NONMONETARY**

12   **STATUS;**

13   • **DECLARATION OF SHERYL L. NEWMAN IN SUPPORT OF LPS DEFAULT**

14   **TITLE AND CLOSING's DECLARATION OF NONMONETARY STATUS.**

15   Philip A. Kramer (SBN# 113969)
Kramer & Kaslow
16   23901 Calabasas Road, Suite 2013
Calabasas, CA 91302

17

18   *[Attorney for Plaintiff]*

19   in the following manner of service (check appropriate):

20   _____XX_____   **BY MAIL:**  I placed a true copy in a sealed envelope addressed as

21   indicated above.  I am readily familiar with the firm's practice of collection and processing

22   correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the

23   ordinary course of business.  I am aware that on a motion of party served, service is presumed

24   invalid if postal cancellation date or postage meter date is more than one date after date of deposit

25   for mailing in affidavit.

26   _____   **BY FACSIMILE:**  I transmitted all documents to all parties in this action

27   by facsimile at the telephone number(s) indicated above and thereafter placed each such sealed

28

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
1770 FOURTH AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4810

1 | envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at the

2 | Law Offices of McCarthy & Holthus, LLP, San Diego, California.

3 | _____  **BY PERSONAL SERVICE:**  I caused such envelope to be delivered by

4 | hand to the addressee(s) above.

5 | I declare under penalty of perjury under the laws of the State of California, that the

6 | foregoing is true and correct.  Executed on March 22, 2011 at San Diego, California.

7 | By:

8 | Brenda Martin

1    **McCARTHY & HOLTHUS, LLP**
     James Hester, Esq. (SBN: 122133)
2    Melissa Robbins Coutts, Esq. (SBN: 246723)
     M. Benjamin Susman, Esq. (SBN: 275232)
3    1770 Fourth Avenue
     San Diego, CA 92101
4    Telephone:    (619) 685-4800
     Facsimile:    (619) 685-4811
5    Email:    bsusman@McCarthyHolthus.com

6    Attorneys for Defendant,
     LPS Default Title and Closing, a division of
7    LSI Title Agency, Inc., a subsidary of LSI Title Company,
     Erroneously Sued as LPS Default & Title Closing

8
                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9
                **COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE**
10

| | |
|---|---|
| 11   ANTONIO MARQUETTE, an individual; MARIA G. ANZALDO, an individual; GUILLERMO ANZALDO, an individual; ARTEMO B. ROQUE, JR., an individual; PEDRO HERNANDEZ, an individual; GABRIELA HERNANDEZ, an individual; MARGARITO PEREZ, an individual; JERRY HERNANDEZ, an individual; DAT THANINGO, an individual; ZAVEN ZARDARYAN, an individual; DANA HORITA, an individual; KEVIN R. WESTOVER, an individual; KATHERINE WESTOVER, an individual; and others similarly situated named herein as ROES 1 through 10,000, inclusive, | Case No. BC452266 **DECLARATION OF SHERYL L. NEWMAN IN SUPPORT OF LPS DEFAULT TITLE AND CLOSING'S DECLARATION OF NONMONETARY STATUS** |

                                Plaintiffs,

v.

ONEWEST BANK GROUP LLC, a limited liability company; ONEWEST BANK, FSB, a Delaware corporation; SCOTT VAN DELLEN, an individual; NDEX WEST, LLC, a Limited Liability Company; LPS DEFAULT & TITLE CLOSING, a business entity, form, unknwon; PRIORITY POSTING & PUBLICATION, a california corporation; and DOES 1 through 1000, inclusive,

                                Defendants.

        I, Sheryl L. Newman, declare as follows:

        1.    I am the Senior Vice President and Deputy General Counsel for Defendant LPS

DEFAULT TITLE AND CLOSING, a division of LSI TITLE AGENCY, INC., a subsidiary of

                                                1
    DECLARATION OF SHERYL L. NEWMAN IN SUPPORT OF LPS' NONMONETARY STATUS

LSI TITLE COMPANY, a California corporation, erroneously sued as LPS DEFAULT & TITLE

CLOSING (collectively "LPS"). I make the following Declaration in support of its Nonmonetary

Status.

1.     If called to testify as a witness thereon, I could and would competently testify as to

all the facts stated in this Declaration.

2.     This Declaration is made pursuant to California Civil Code section 2924*i*.

3.     LPS is the agent for the Trustee, NDEX West, LLC ("NDEX"), for the Deed of

Trust dated May 26, 2006.  Said Deed of Trust is a secured lien on real property commonly

known as 13838 La Jolla Plaza, Garden Grove, CA  92844, and was recorded on June 1, 2006 in

the Orange County Recorder's Office as Instrument Number 2006000370568.

4.     LPS is named as a Defendant in this action solely in its capacity as the agent of the

Trustee under the Subject Deed of Trust.  Further, it is LPS' reasonable belief that it has not been

named as a Defendant because of any acts or omissions on its part in the performance of its duties

as Trustee.

5.  The Complaint seeks causes of action believed to be directed at co-Defendants and not the

agent on behalf of the Trustee.  LPS believes it has been named simply as a nominal Defendant

and that Plaintiffs are not seeking any monetary or other relief against it, other than as a necessary

party for the purposes of verifying acts taken and/or carrying out any necessary acts in accordance

with its position as the agent for the Trustee under the Deed of Trust.  Specifically, the thrust of

Plaintiffs' Complaint references the circumstances surrounding the loan origination.  As agent for

the Trustee, LPS only became involved after Plaintiffs had defaulted on their loan.  The legal

framework governing non-judicial foreclosures is codified in California Civil Code §§ 2924-

2924*i*. When an agent for the Trustee such as LPS records a Notice of Default at the direction of

the Beneficiary, the Trustee incurs no liability for the amount provided by the Beneficiary.

Plaintiffs' theory on who may or may not advance a Trustee's sale or what they have to do prior

to initiating a Trustee's sale are outside of the scope of Civil Code § 2924 et. seq.

////

////

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
1770 FOURTH AVENUE
SAN DIEGO, CALIFORNIA  92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4810

2

**DECLARATION OF SHERYL L. NEWMAN IN SUPPORT OF LPS' NONMONETARY STATUS**

1    6.    LPS agrees to be bound by whatever order or judgment is issued by this Court

2   regarding the Trustee, provided such order or judgment is nonmonetary relief only.

3        I declare under penalty of perjury under the laws of the State of California, that the

4   foregoing its true and correct. Executed on March 22, 2011 at Jacksonville, FL.

5

6                  By: _____

                          Sheryl L. Newman

7                          Senior Vice President and Deputy General

                          Counsel for LPS Default Title and Closing, a

8                          division of LSI Title Agency, Inc., a subsidiary

                          of LSI Title Company, a California corporation

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
1770 FOURTH AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4810

3

**DECLARATION OF SHERYL L. NEWMAN IN SUPPORT OF LPS' NONMONETARY STATUS**

ORIGINAL

1  **McCARTHY & HOLTHUS, LLP**
   James Hester, Esq. (SBN: 122133)
2  Melissa Robbins Coutts, Esq. (SBN: 246723)
   M. Benjamin Susman, Esq. (SBN: 275232)
3  1770 Fourth Avenue
   San Diego, CA 92101
4  Telephone:      (619) 685-4800
   Facsimile:      (619) 685-4811
5  Email:          bsusman@McCarthyHolthus.com

6  Attorneys for Defendant,
   LPS Default Title and Closing, a division of
7  LSI Title Agency, Inc., a subsidiary of LSI Title Company,
   Erroneously Sued as LPS Default & Title Closing

**FILED**
LOS ANGELES SUPERIOR COURT

MAR 23 2011

JOHN A. CLARKE, CLERK
BY R. SANCHEZ, DEPUTY

8

9         SUPERIOR COURT OF THE STATE OF CALIFORNIA

10       COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE

| | |
|---|---|
| 11 ANTONIO MARQUETTE, an individual; MARIA G. ANZALDO, an individual; GUILLERMO ANZALDO, an individual; ARTEMO B. ROQUE, JR., an individual; PEDRO HERNANDEZ, an individual; GABRIELA HERNANDEZ, an individual; MARGARITO PEREZ, an individual; JERRY HERNANDEZ, an individual; DAT THANINGO, an individual; ZAVEN ZARDARYAN, an individual; DANA HORITA, an individual; KEVIN R. WESTOVER, an individual; KATHERINE WESTOVER, an individual; and others similarly situated named herein as ROES 1 through 10,000, inclusive, | Case No. BC452266 **B F X** **LPS DEFAULT TITLE AND CLOSING'S DECLARATION IN SUPPORT OF ITS NONMONETARY STATUS [Civil Code §29241]** |

18

19                                                Plaintiffs,
   v.

20  ONEWEST BANK GROUP LLC, a limited
   liability company; ONEWEST BANK, FSB, a
21  Delaware corporation; SCOTT VAN DELLEN,
   an individual; NDEX WEST, LLC, a Limited
22  Liability Company; LPS DEFAULT & TITLE
   CLOSING, a business entity, form, unknwon;
23  PRIORITY POSTING & PUBLICATION, a
   california corporation; and DOES 1 through
24  1000, inclusive,
                                                Defendants.

25

26      TO THIS HONORABLE COURT, TO ALL PARTIES AND TO THEIR ATTORNEYS

27  OF RECORD:

28

NOTICE IS HEREBY GIVEN THAT Defendant LPS DEFAULT TITLE AND CLOSING, a division of LSI TITLE AGENCY, INC., a subsidiary of LSI TITLE COMPANY, a California corporation, erroneously sued as LPS DEFAULT & TITLE CLOSING ("LPS"), hereby submits the attached Declaration of Trustee's Nonmonetary status pursuant to California Civil Code §2924*l*.

Section 2924*l* provides in the pertinent part that:

> "[I]n the event that the trustee maintains a reasonable belief that it has been named in the action or proceeding solely in its capacity as trustee, and not arising out of any wrongful acts or omissions on its part in the performance of its duties as trustee then at any time, the trustee may file a declaration of nonmonetary status."

1.   LPS acted as the agent on behalf of the Trustee, NDEX WEST, LLC ("NDEX") under the Deed of Trust, which is the subject of the instant action;

2.   LPS believes that it has been named in the above-entitled action solely in its capacity as the agent of the Trustee under the Deed of Trust, which is the subject of this action, executed by Plaintiff against the real property commonly known as 8805 Cypress Avenue, Fontana, California 92335. Said Deed of Trust was recorded on or about March 14, 2006, in the Los Angeles County Recorder's Office as Instrument Number 2006-0171882. Such belief is based upon a reading of the Complaint which fails to specifically enumerate any act or acts by LPS which would imply any liability on its part even if true. See attached Declaration of Sheryl Newman;

3.   LPS agrees to be bound by whatever order of judgment is issued by the Court regarding the subject Deed of Trust.

Dated: March 22, 2011

                              Respectfully submitted,
                              **McCARTHY & HOLTHUS, LLP**

                              By: _____
                              M. Benjamin Susman, Esq.
                              Attorneys for Defendant,
                              LPS Default Title & Closing

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
1770 FOURTH AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4810

2

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

Reserved for Clerk's File Stamp

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 14 2011

John A. Clarke, Executive Officer/Clerk
BY _Linda Delos Santos_, Deputy
Delos Santos

COURTHOUSE ADDRESS: 600 S. Commonwealth Ave Los Angeles, Ca 90005

PLAINTIFF: Antonio Marquette Et Al

DEFENDANT: Onewest Bank Group LLC Et Al

**CIVIL DEPOSIT**

CASE NUMBER: **BC452266**

Clerk: Prepare a form for each depositor paying separately.

PLEASE REPORT TO THE CLERK'S OFFICE/CASHIER:
☐ Room 102, Central Civil   ☐ Clerk's Office, Room _____   ☑ Department Number **307**

| √ | Distribution Codes | | Amt. Due | √ | Distribution Codes | | Amt. Due |
|---|---|---|---|---|---|---|---|
| | 251 | DAILY JURY FEES  Dates ____  # of day(s) ____ X $ ____ | | | 74 | DEPOSIT IN TRUST | |
| | 72 | JURY FEES  Trial Date: ____  (Initial Deposit) $ ____ | | | 101 | FIRST PAPERS (General Jurisdiction) | |
| | | REPORTER'S FEES  Dates ____  # of ½ day(s) ____ X $ ____ | | ✓ | 101  141  130 | FIRST PAPERS Limited over $10,000  With declaration Limited to $10,000 (Per B&P 6322.1(a))  Limited to $10,000. | **$395.00** |
| | 253 | Half day | | | | | |
| | 252 | Full Day | | | | | |
| | 721 | SANCTIONS ORDERED ON  Date: ____ | | | 211 | RECLASSIFICATION FEE | |
| | 213 | MOTION/APPLICATION TO CONTINUE HEARING | | | 150 | COMPLEX LITIGATION TRIAL/Plaintiff | |
| | 200 | MOTION/APPLICATION TO CONTINUE TRIAL | | | 151 | COMPLEX LITIGATION//Defendant | |
| | | Other: | | | | | |

To be paid via: ☐ Cash  ☑ Check  ☐ Certified Check/Money Order  ☐ Credit Card

☐ On or before: ____  ☐ Forthwith

Payment will be made by ☐ Plaintiff ____  ☑ Defendant **NDeX West LLC**

DATED: **3-14-11**

JOHN A. CLARKE, Executive Officer/Clerk
BY: **L. Delos Santos**
Deputy Clerk

**TO BE COMPLETED BY DEPOSITOR**

Depositor's Name: **Treder & Weiss LLP**

☐ Plaintiff in Pro Per  ☐ Defendant in Pro Per

☑ Counsel for ☐ Plaintiff ____
Name of Party

☑ Defendant **NDeX West LLC**
Name of Party

Address of depositor **20955 Pathfinder Rd, Suite 300**
Street

**Diamond Bar, Ca 91765**
City/State/Zip

**CASHIER'S VALIDATION**

CITY/CASE: BC452266 LEA/DEPT#:
RECEIPT #: CCR467719003
DATE PAID: 03/14/11 12:30:05 PM
PAYMENT: $395.00
RECEIVED:
CHECK: 395.00
CASH:
CHANGE:
CARD:
0210

LACIV 083 (Rev. 07/06)
LASC Approved 03-04

**CIVIL DEPOSIT**
Distribution: Original – Case File   Copy – Customer

page 149

POS-030

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Philip A. Kramer                                                    113969<br>KRAMER & KASLOW<br>23901 Calabasas Road, Suite 2010<br>Calabasas, California 91302<br><br>TELEPHONE NO.: (818) 224-3900     FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* ANTONIO MARQUETTE, et al. | **FOR COURT USE ONLY**<br><br>**FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>APR 22 2011<br><br>John A. Clarke, Executive Officer/Clerk<br>BY *Linda Delos Santos*, Deputy<br>L. Delos Santos |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: ~~111 North Hill Street~~ 600 S. Commonwealth Ave.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles ~~90012~~ 90005
BRANCH NAME: ~~Stanley Mosk Courthouse~~ CCW

PETITIONER/PLAINTIFF: ANTONIO MARQUETTE, et al.

RESPONDENT/DEFENDANT: ONEWEST BANK GROUP, LLC, et al.

| | |
|---|---|
| **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL** | CASE NUMBER:<br>~~GL~~ BC452266 |

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   23901 Calabasas Road, Suite 2010
   Calabasas, California 91302

3. On *(date)*: 4/20/2011         I mailed from *(city and state):* Calabasas, California
   the following **documents** *(specify):*
   1. Notice of Pendency of Action

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served:
   b. **Address** of person served:

   ☑ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 4/20/2011

Seth P. Cox
_____         ▶         _____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)                    (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use<br>Judicial Council of California<br>POS-030 [New January 1, 2005]

**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(Proof of Service)**

Code of Civil Procedure, §§ 1013, 1013a<br>www.courtinfo.ca.gov

page 150

POS-030(P)

| SHORT TITLE: Marquette, et al. v. OneWest Bank Group, LLC, et al. | CASE NUMBER: BC452266 |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
|---|---|
| Ed Treder | 20955 Pathfinder Road, Suite 300 Diamond Bar, CA 91765 |
| Tom Haacker | 17501 Irvine Blvd., Ste. 1 Tustin, CA 92780 |
| Corporation Service Company | 2730 Gateway Oaks Dr., Ste. 100 Sacramento, CA 95833 |
| McCarthy & Holthus, LLP | 1770 4th Avenue San Diego, CA 92101 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Form Approved for Optional Use Judicial Council of California POS-030(P) [New January 1, 2005]     ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED) (Proof of Service)     Page 1 of 1

page 151

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Philip A. Kramer                                              113969 <br> KRAMER & KASLOW <br> 23901 Calabasas Road, Suite 2010 <br> Calabasas, California 91302 <br><br> TELEPHONE NO.:(818) 224-3900        FAX NO. *(Optional)*: <br> E-MAIL ADDRESS *(Optional)*: <br> ATTORNEY FOR *(Name)*: ANTONIO MARQUETTE, et al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
 STREET ADDRESS:600 South Commonwealth Avenue
 MAILING ADDRESS:
 CITY AND ZIP CODE:Los Angeles, 90005
 BRANCH NAME:Central Courthouse West

PETITIONER/PLAINTIFF:ANTONIO MARQUETTE, et al.

RESPONDENT/DEFENDANT:ONEWEST BANK GROUP, LLC, et al.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

APR 1 5 2011

John A. Clarke, Executive Officer/Clerk
BY *Linda Delos Santos*, Deputy
L. Delos Santos

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER: <br> BC452266 |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   23901 Calabasas Road, Suite 2006
   Calabasas, California 91302

3. On *(date)*:3/25/2011        I mailed from *(city and state)*: Calabasas, California
   the following **documents** *(specify)*:
   Initial Status Conference Order
   Court Order Re: Related Cases
   Court Order Re: Complex Determination
   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one)*:
   a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served: Ed Treder, counsel of record for NDEX West LLC
   b. **Address** of person served:
      20955 Pathfinder Road
      Suite 300
      Diamond Bar, California 91765

   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 4/13//2011

▶

Seth P. Cox
_____        _____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)        (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1, 2005]                    **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
(Proof of Service)                    Code of Civil Procedure, §§ 1013, 1013a
*www.courtinfo.ca.gov*

page 152

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Philip A. Kramer                                    113969
KRAMER & KASLOW
23901 Calabasas Road, Suite 2010
Calabasas, California 91302

TELEPHONE NO.: (818) 224-3900          FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: ANTONIO MARQUETTE, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 600 South Commonwealth Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90005
BRANCH NAME: Central Courthouse West

PETITIONER/PLAINTIFF: ANTONIO MARQUETTE, et al.

RESPONDENT/DEFENDANT: ONEWEST BANK GROUP, LLC, et al.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

APR 15 2011

John A. Clarke, Executive Officer/Clerk
BY _Linda Delos Santos_, Deputy
L. Delos Santos

PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL

CASE NUMBER:
BC452266

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   23901 Calabasas Road, Suite 2006
   Calabasas, California 91302

3. On *(date):* 3/25/2011          I mailed from *(city and state):* Calabasas, California
   the following **documents** *(specify):*
   Initial Status Conference Order
   Court Order Re: Related Cases
   Court Order Re: Complex Determination
   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served: McCarthy & Holthus LLP
   b. **Address** of person served:
      1770 4th Avenue
      San Diego, California 92101

   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 4/13//2011

Seth P. Cox
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)          (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1, 2005]

**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(Proof of Service)**

Code of Civil Procedure, §§ 1013, 1013a
www.courtinfo.ca.gov

page 153

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Philip A. Kramer          113969 <br> KRAMER & KASLOW <br> 23901 Calabasas Road, Suite 2010 <br> Calabasas, California 91302 <br><br> TELEPHONE NO.: (818) 224-3900    FAX NO. *(Optional):* <br> E-MAIL ADDRESS *(Optional):* <br> ATTORNEY FOR *(Name):* ANTONIO MARQUETTE, et al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 600 South Commonwealth Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90005
BRANCH NAME: Central Courthouse West

PETITIONER/PLAINTIFF: ANTONIO MARQUETTE, et al.

RESPONDENT/DEFENDANT: ONEWEST BANK GROUP, LLC, et al.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

APR 1 5 2011

John A. Clarke, Executive Officer/Clerk
BY *Linda Delos Santos*, Deputy
L. Delos Santos

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER: <br> BC452266 |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   23901 Calabasas Road, Suite 2006
   Calabasas, California 91302

3. On *(date):* 3/25/2011     I mailed from *(city and state):* Calabasas, California
   the following **documents** *(specify):*
   Initial Status Conference Order
   Court Order Re: Related Cases
   Court Order Re: Complex Determination
   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served: Tom Haacker
   b. **Address** of person served:
      17501 Irvine Blvd., Ste. 1
      Tustin, California 92780

   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 4/13//2011

Seth P. Cox
_____       ▶       _____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)       (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use <br> Judicial Council of California <br> POS-030 [New January 1, 2005]

**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(Proof of Service)**

Code of Civil Procedure, §§ 1013, 1013a
www.courtinfo.ca.gov

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Philip A. Kramer  113969<br>KRAMER & KASLOW<br>23901 Calabasas Road, Suite 2010<br>Calabasas, California 91302<br><br>TELEPHONE NO.:(818) 224-3900    FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*:ANTONIO MARQUETTE, et al. | **FILED**<br>LOS ANGELES SUPERIOR **COURT**<br>MAR 28 2011<br>JOHN A. CLARKE, CLERK<br>BY R. SANCHEZ, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS:600 South Commonwealth Avenue
MAILING ADDRESS:
CITY AND ZIP CODE:Los Angeles, 90005
BRANCH NAME:Central Courthouse West

PETITIONER/PLAINTIFF:ANTONIO MARQUETTE, et al.

RESPONDENT/DEFENDANT:ONEWEST BANK GROUP, LLC, et al.

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER:<br>BC452266 |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   23901 Calabasas Road, Suite 2006
   Calabasas, California 91302

3. On *(date)*:3/25/2011   I mailed from *(city and state)*: Calabasas, California
   the following **documents** *(specify)*:
   Initial Status Conference Order
   Minute Order

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one)*:
   a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served: J. Kevin Snyder, DYKEMA GOSSETT LLP
   b. **Address** of person served:
      333 South Grand Avenue, Suite 2100
      Los Angeles, California 90071

   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3/25/2011

Seth P. Cox
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)          (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1, 2005]

**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(Proof of Service)**

Code of Civil Procedure, §§ 1013, 1013a
www.courtinfo.ca.gov

**PROOF OF SERVICE**

(Code Civ. Proc. §§ 1013 and 2015.5)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 333 South Grand Avenue, #2100, Los Angeles, California 90071.

On May 12, 2011, I served the foregoing documents described as **NOTICE OF REMOVAL BY ONEWEST BANK GROUP, LLC AND ONEWEST BANK, FSB** on all interested parties in this action as follows:

**See Attached List.**

☒ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing on affidavit.

☐ **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.

☐ **(BY OVERNIGHT SERVICE)** Via Federal Express

☐ **(BY FACSIMILE)** By transmitting in true copy thereof by facsimile from facsimile number (213) 457-1850 to the facsimile number(s) shown above.

☒ (State) I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed on May 12, 2011, at Los Angeles, California.

_____
Caroline Acossano

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1       ANTONIO MARQUETTE vs. ONEWEST BANK GROUP, LLC, ET AL.

2                     LASC CASE NO.: BC 452266
               USDC, CENTRAL DISTRICT CASE NO. PENDING

3

| Philip A. Kramer, Esq.<br>KRAMER & KASLOW<br>23901 Calabasas road, Suite 2013<br>CALABASAS, CALIFORNIA 91302<br><br>Tel: (818) 224-3900<br>Fax: (818) 224-3911 | Attorney for Plaintiff<br>ANTONIO MARQUETTE |
|---|---|

PAS01\203962.1
ID\JKS - 105636/0116

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

PROOF OF SERVICE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV11- 4115 R (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

====================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)       NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ANTONIO MARQUETTE, ET AL.

**DEFENDANTS**
ONEWEST BANK GROUP, LLC,; ONEWEST BANK, FSB, ET AL.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Philip A. Kramer, SBN: 113969
KRAMER & KASLOW
23901 Calabasas road, Suite 2013
Calabasas, california 91302
Tel: (818) 224-3900
Fax: (818) 224-3911

Attorneys (If Known)
J. Kevin Snyder, SBN: 107509
DYKEMA GOSSETT LLP
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
(213) 457-1800 - Telephone
(213) 457-1850 - Facsimile

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)
☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Fraud, Intentional and Negligent Misrepresentation, Violation of Cal. Civil Code 2923.5, Unfair Competition, and Breach of Contract

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL INJURY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☒ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus- Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS - Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: CV11-4115
AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

VIII(a).   **IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No [ ] Yes
If yes, list case number(s):   SACV 11-0576-AG

VIII(b).   **RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [ ] No [X] Yes
If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   [X]   A. Arise from the same or closely related transactions, happenings, or events; or
   [X]   B. Call for determination of the same or substantially related or similar questions of law and fact; or
   [X]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   [ ]   D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX.  **VENUE:** (When completing the following information, use an additional sheet if necessary.)
(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
   [ ]  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Washington, Arizona, Nevada, Hawaii, Florida, Maryland, Delaware, N. Carolina, Massachusetts, Missouri, New Jersey, Illinois, Oregon, New York |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
   [ ]  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Washington, Arizona, Nevada, Hawaii, Florida, Maryland, Delaware, N. Carolina, Massachusetts, Missouri, New Jersey, Illinois, Oregon, New York |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):   _____   Date May 12, 2011
   J. Kevin Snyder

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

**PROOF OF SERVICE**

(Code Civ. Proc. §§ 1013 and 2015.5)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 333 South Grand Avenue, #2100, Los Angeles, California 90071.

On May 12, 2011, I served the foregoing documents described as **CIVIL COVER SHEET** on all interested parties in this action as follows:

**See Attached List.**

☒ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing on affidavit.

☐ **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.

☐ **(BY OVERNIGHT SERVICE)** Via Federal Express

☐ **(BY FACSIMILE)** By transmitting in true copy thereof by facsimile from facsimile number (213) 457-1850 to the facsimile number(s) shown above.

☒ (State) I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed on May 12, 2011, at Los Angeles, California.

_____
Caroline Acossano

---

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1
PROOF OF SERVICE

ANTONIO MARQUETTE vs. ONEWEST BANK GROUP, LLC, ET AL.

LASC CASE NO.: BC 452266
USDC, CENTRAL DISTRICT CASE NO. PENDING

| | |
|---|---|
| Philip A. Kramer, Esq.<br>KRAMER & KASLOW<br>23901 Calabasas road, Suite 2013<br>CALABASAS, CALIFORNIA 91302<br><br>Tel: (818) 224-3900<br>Fax: (818) 224-3911 | Attorney for Plaintiff<br>ANTONIO MARQUETTE |

PAS01\203962.1
ID\JKS - 105636/0116

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

PROOF OF SERVICE